Honorable Christopher M. Alston
Hearing date: April 10, 2025; 9:30 a.m.
Hearing Place: Room 7206, 700 Stewart Street, Seattle, WA 98101
Responses due by: April 9, 2025

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Bankruptcy No. 24-10218-CMA |
| MELANIE A. SMITH, | ) | |
| a/k/a M. A. Smith, a/k/a M. Smith, | ) | DECLARATION OF MICHAEL P. KLEIN |
| | ) | IN SUPPORT OF TRUSTEE'S MOTION |
| | ) | FOR AN ORDER AUTHORIZING SALE |
| Debtor(s). | ) | OF REAL PROPERTY OF THE ESTATE |
| | ) | FREE AND CLEAR OF LIENS AND |
| | ) | ENCUMBRANCES OR, IN THE |
| | ) | ALTERNATIVE, ABANDONING |
| | ) | PROPERTY |

The undersigned makes the following statement under penalty of perjury:

1.      I am over 18 years of age, am competent to testify to the statements herein and make the statements herein based on facts personally known to me.

2.      I am the Chapter 7 trustee in the above-captioned bankruptcy.

3.      Attached hereto is a copy of the purchase and sale agreement entered into between the trustee and Stephen M. Fry for the real property located at 3057 - 42nd Avenue West, Seattle, Washington 98199 ("the Property").  The sale price is $1,280,000.

4.      I have reviewed the claim of Deutsche Bank National Trust Company, as indenture trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-8, asset-backed securities, Series 2006-8 ("Deutsche Bank"), the creditor with the second deed of trust against the Property. It appears that a sizeable portion of the claim is made up of payments due more than six years before the filing of the bankruptcy petition.  This gives rise to a defense of the statute of limitations to at

DECLARATION OF MICHAEL P. KLEIN
IN SUPPORT OF TRUSTEE'S MOTION
250324fDec   Page 1

THE LIVESEY LAW FIRM
2033 Sixth Avenue, Suite 900
Seattle, WA 98121
(206) 441-0826

Case 24-10218-CMA    Doc 127    Filed 03/26/25    Ent. 03/26/25 09:35:54    Pg. 1 of 32

1　least a portion of the claim.  It also raises the possibility that a portion of the debt can be preserved

2　for the estate.

3　　　　5.　　　The third obligation potentially secured by the Property is to the Federal National

4　Mortgage Association.  This appears to be a duplication of the first deed of trust, the U.S. Bank debt.

5　　　　6.　　　The debtor has claimed a homestead exemption in the Property.  However, the

6　recorded encumbrances exceed the sale price.  I believe there will eventually be money for the

7　homestead, but that needs to wait until the encumbrances are decided.  Distribution to the debtor is

8　subject to further order of the Court.

9　　　　7.　　　Should the Court not approve the sale, I am requesting as alternative relief an order

10　abandoning the Property.  The debtor has a very low tax basis in the Property.  The sale or the

11　foreclosure could generate a large tax claim.  If the Property is sold, there will be money available

12　to pay the tax.  If the Property is lost to foreclosure, the sale could generate a tax obligation with no

13　funds to pay it.

14　　　　DATED this 25th day of March, 2025.

15

16

17　　　　　　　　　　　　　　　/S/ *Michael P. Klein*

18　　　　　　　　　　　　　　　Michael P. Klein

19

20

21

22

23

24

25

**DECLARATION OF MICHAEL P. KLEIN**
**IN SUPPORT OF TRUSTEE'S MOTION**
250324fDec   Page 2

THE LIVESEY LAW FIRM
2033 Sixth Avenue, Suite 900
Seattle, WA 98121
(206) 441-0826

# Instructions for offering on this property

## Submit all offers to offers@ssapprovals.com or fax to 206.299.3131

The purchase contract is specific to the bankruptcy, and the trustee will not sign any addendum that conflicts with the purchase contract. If there are specific items that you want covered in the purchase and sale, or your office requires specific addendums please discuss with our team prior to offer submission. **All sales are as- is/where-is.**

Errors and Changes to the offer must be kept to a minimum. Too many changes will slow the process with the lien holder. You may be asked to resubmit a clean offer if too many changes are present. Please follow these instructions carefully do not abbreviate the seller name on any page.

**Seller Name to be written as:** <u>Michael P. Klein, Ch 7 Bankruptcy Trustee For Melanie Smith 24-10218</u>

**Per Lien holder: Offer <u>must</u> be INK signed  Yes** ☐  **No** ☑

## Required for an offer:
1. Bankruptcy Trustee purchase contract-Attached
2. Carve-out/As is/Utilities addendum-Attached, do not add any other language
3. Form 17 is attached. Buyer must sign waiver of right to receive a completed form 17-Attached
4. Legal Description-Attached
5. Pre-approval letter Dated in last 30 Days (if contingent on financing)
6. Proof of funds Dated in Last 30 Days (**down payment, BK fee and closing costs**)
7. Copy of EM check made out to Escrow listed on page 5 paragraph 16 of Purchase and Sale

## Also may be included
1. If buyer wishes to purchase extended title coverage at their own expense, this may be addressed on a separate Addendum.
2. 22J-Lead Paint-as needed
3. 22K-Utilities- may be included
4. 22SS-Short Sale-(Must be included if this is a short sale) with inspection and deposit of EM beginning at mutual.
5. 22T-Title Contingency

Included in the List Price is the Carve-out (or buyer's premium) that must be paid. This amount is 5.5% of the purchase price or $20,000 whichever is higher. On properties less than $215,000 the amount of the carve-out is 5.5% of the purchase price or $15,000 whichever is higher. In a short sale, that amount cannot be included in the contract purchase price, this fee will appear on the HUD and both the lienholder and buyers lender are aware of the fee. In order to qualify to purchase one of these homes, the buyer must have available 1) their down payment funds 2) carve out bankruptcy fee and 3) their closing costs. Proof of these funds being available at the time the offer is made is a requirement. The Lien Holder may agree to pay up to 3% in closing costs on FHA, VA, and USDA Loans.

**Please do NOT specify that fixtures or built in appliances must be included. The trustee will not sign anything specifically stating that they are included.**

Buyer Initial: _SMA_  Buyer Initial: _____  Selling Broker (Agent) Initial: _MR_ _JS_
Date: 03/09/25  Date: _____  Date: 03/09/25  03/08/25

Audclesign Envelope ID: F8F959F408F4C54A76-9B62-53C01C717418

We have been appointed by the Chapter 7 Trustee to sell this home. Pursuant to section 541 of the bankruptcy code all property of the Debtor at the time of filing becomes property of the bankruptcy estate to be administered by the Court Appointed Trustee. The real property was owned at the time of filing the bankruptcy proceedings and is therefore, property of the estate to be administered by the Trustee pursuant to orders of the Bankruptcy Court. The trustee is the one who will sign all offers. This decision is based on recovering as much money as possible for the bankruptcy estate.

## Offer process.

In a multiple offer situation, the trustee will review offers as soon as a reasonable amount of time has elapsed to allow all interested parties to view the home. Please present your highest and best offer in a multiple offer situation because the trustee does not counter. As long as proof of funds was provided, trustee will be looking at price and strength of commitment to the process. **All sales are as is/where is**. The trustee is not available on weekends, and is in court a couple days a week, so sometimes it can be a couple days before offers are responded to.

## Inspection

Once we have a ratified contract, the buyer's 15 day inspection contingency commences. **This is pass/fail only**. The trustee will not complete repairs, offer a credit or reduce the price. If the buyer terminates or waives inspection, this can be done using a NWMLS form 90 Notice. It is the buyer's responsibility to determine whether utilities are on and/or available. The utilities are to be turned on in the buyer's name and at buyer's expense. If the home is winterized, the buyer is responsible for the actual costs to activate, deactivate and re-winterize the property. Contractor must be approved by listing team.

## Court approval process
**This Process begins at the discretion of the trustee, based on progress with the Lien Holder.**

The trustee must provide notice to all creditors on the bankruptcy that the home (part of the bankruptcy estate) is being sold. The creditors have 21 days to object to the sale. During this time period, the sale is still subject to back up/bump offers. After the time period has passed the trustee presents the proposed sale order to the court. If approved, the MLS status will be changed to Pending (from pending backup) and back up offers are no longer solicited.

## Back up/bump offers
Prior to the final court approval, the transaction is ALWAYS subject to back up/bump offers. If your buyer is in first position, they have the option of matching any back up/bump offer. Back up/bump offers have to beat the first position offer by at least 1% of the purchase price or $5,000 dollars, whichever is greater, and they must also waive any contingencies that have already been waived by the first position buyer at the time of writing.

## Short sale process
Concurrent to the court approval, we will be seeking lienholder approval. It is our goal to update you regularly with the progress on that end. Please direct any inquires to the negotiator assigned to you after mutual acceptance.

Please let us know if you have additional questions not covered in this explanation.

Buyer Initial: _SMF_  Buyer Initial: _____  Selling Broker (Agent) Initial _MR_ _JS_
Date: _03/09/25_  Date: _____  Date: _03/09/25_  _03/08/25_

Audesign: EnVelope ID: F8F559F41BP4C47A76-9B62-53C01C717418

**OFFER SUMMARY FOR RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**

DATE of OFFER __3/4/25__

MLS #__2332357__     SELLING BROKER LAG# __110761__ __122114__     SELLING OFFICE ID __6534__

BASE OFFER PRICE $ ~~$1,100,000~~     $1,213,270.14     03/12/25    3/17/2025  |  4:23 PM
(Enter this amount on Page 1)

+

BUYERS PREMIUM/CARVE OUT $ ~~60,500~~     $66,729.86    03/12/25

=

TOTAL PURCHASE PRICE $ ~~1,160,500~~     $1,280,000.00

3/17/2025  |  4:23 PM PDT

BUYER CLOSING COST REQUESTED $_____
(MUST BE APPROVED BY LIEN HOLDER)

REQUIRED ADDENDA:
1. Bankruptcy Purchase and Sale--Attached
2. Carve out/As Is/Utilities addendum--Attached
3. Form 17, waived--Attached
4. Legal description--Attached
5. Pre-approval dated in last 30 days
6. Proof of funds dated in last 30 days
7. Copy of EM Check-made out to escrow listed on page 5 paragraph 16 of Purchase and Sale

OPTIONAL ADDENDA –CHECK IF INCLUDED

1. ✓ MLS FORM 22J-Lead Paint-As Needed
2. ✓ MLS FORM 22K-Utilities
3. ✓ MLS FORM 22SS-Short Sale (Must be included if this is a short sale)
4. ✓ MLS FORM 22T-Title Contingency
5. ✓ Additional addenda (please list) __22E__   42A  35W  90_____

Buyer(s) exact names and how they will take title:

Stephen M Fry

_____

Buyer Initial: __SMF__     Buyer Initial: _____
Date: __03/09/25__         Date: _____

Seller Initial: __MPKT__
Date: __3/17/2025  |  4:23 PM PDT__

### RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT

### U.S. BANKRUPTCY COURT, WESTERN DIST. OF WASHINGTON AT SEATTLE

THIS AGREEMENT is entered into by and between the below named Buyer and the below named Seller, in his or her capacity as a United States Bankruptcy Trustee for the below named bankruptcy estate. The Buyer agrees to purchase and the Seller agrees to sell the described property pursuant to the following terms and conditions:

BUYER(S): Stephen M Fry

ADDRESS: 688 110th Ave NE S1410

CITY, STATE & ZIP CODE: Bellevue, WA  98004

PHONE: 612 619-2299

EMAIL: stephenmfry@gmail.com

SELLER: Michael P. Klein, Ch 7 Bankruptcy Trustee For Melanie Smith 24-10218

PROPERTY STREET ADDRESS: 3057 42nd Ave W

CITY, STATE & ZIP CODE: Seattle , WA 98199                    03/12/25

LEGAL DESCRIPTION: Attached on Exhibit "A" hereto

PURCHASE PRICE: (Base offer Price)   $1,100,000    $1,213,270.14        3/17/2025 | 4:23 P

DATE OF CLOSING:        Within 45 days of Bankruptcy Court or lender approval, whichever is later

SELLING FIRM: Windermere Real Estate Magnolia                 MLS OFFICE NO 6534

SELLING FIRM ADDRESS:        3214 W McGraw St Ste 201

CITY, STATE & ZIP CODE: Seattle, WA  98199

SELLING BROKER: Matt Reynolds and Jennifer Sandmeyer           MLS LAG 122114

PHONE AND FAX:     206 779-4722

EMAIL: jennisandmeyer@windermere.com

LISTING FIRM:    RE/MAX Eastside Brokers Kai Rainey 34930        Title is Open with First American
                 11555 SE 8th St. Bellevue, WA 98004            Title # 4209-4148179
                 206-681-9670 (main line) 206-299-3131 (fax)
                 offers@ssapprovals.com
                                                 WIRE TRANSFER ____  PROMISSORY NOTE ____

EARNEST MONEY AMOUNT: $65,000.00    FORM: CASH ____ PERSONAL CHECK ____ CASHIERS CHECK ____

Buyer Initial: _Smf_    Buyer Initial: _____         Seller Initial: _Mpkt_

Date: 03/09/25    Date: _____         Date: 3/17/2025 | 4:23 PM PDT

Authentisign ID: F8F959F4-8F4C-4A76-9B62-53C01C717418
DocuSign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

1. **No Representations or Warranties**. The Seller is a bankruptcy trustee and therefore he/she has no personal knowledge regarding the property. There are no representations or warranties regarding the property or its condition. All sales are "as is, where is" and without any representations or warranties of any kind express or implied.

2. **Earnest Money Forfeiture**. In the event the Buyer fails, without legal excuse, to complete the purchase of the property, the earnest money deposit made by the Buyer shall be forfeited to the Seller as the sole and exclusive remedy available to the Seller for such failure. If the earnest money deposit is greater than five percent of the purchase price, only that portion of the earnest money deposit equal to five percent of the purchase price shall be forfeited to the Seller. By their initials below, Buyer and Seller specifically acknowledge that they have read the preceding provision regarding forfeiture of the earnest money and understand and agree to it.

   Buyer Initial: _*SMf*_     Buyer Initial: _____     Seller Initial: _*MPkt*_
   Date: _03/09/25_     Date: _____     Date: _3/17/2025 | 4:23 PM PDT_

3. **Financing**. This offer [ ] is [✓] is not conditioned upon Buyer obtaining a [ ] Conventional [ ] FHA [ ] VA [ ] USDA [ ] FHA 203k [ ] Other: _____

   Buyer Does_____/Does Not _✓_ request that seller pay up to _____ in closing and other allowable costs (must be agreed to by lienholder).

4. **Down Payment/Loan Application**. Buyer agrees to pay_____ down, and to make an application, in good faith, within seven days after approval of this Agreement, for a market rate loan to pay the balance of the purchase price. If application is not made within 7 (seven) days of approval, Seller may retain the earnest money and Agreement may terminate.

5. **Proof of Funds**. In the event buyer fails to provide proof of all necessary funds to close; including down payment, closing costs and bankruptcy fee within 48 hours of Sellers acceptance of offer, then this agreement may be terminated by notice from the seller to the buyer and earnest money shall be returned to the buyer.

6. **Financing Deadline/Seller Termination Notice**. If Buyer has not within 30 days after initial signing of this Agreement, given notice that Buyer has obtained financing or waived the financing condition, then this Agreement may terminate upon the expiration of the 30th day after initial signing. If termination occurs, Seller shall remit the earnest money to the Buyer.

Buyer Initial: _*SMf*_     Buyer Initial: _____     Seller Initial: _*MPkt*_
Date: _03/09/25_     Date: _____     Date: _3/17/2025 | 4:23 PM PDT_

DocuSign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

7. **Loan Costs**. Seller will not be responsible for any loan costs, unless agreed to upon mutual acceptance, except (I) such portion of Buyer's costs that Buyer is prohibited from paying pursuant to applicable FHA regulations; and (2) if this sale Is financed by a VA loan, the Seller agrees to pay those closing costs Buyer is prohibited from paying pursuant to applicable VA regulations.

8. **Inspections**. The Buyer has fifteen (15) days from the date of mutual with the trustee to inspect the premises. Inspection contingency shall be deemed waived, unless the Buyer provides Seller with written notice within said fifteen (15) days that the inspection contingency has <u>not</u> been waived and earnest money shall be returned to the buyer.

Buyer Initial: _*SMf*_       Buyer Initial: _____
       Date: __03/09/25__       Date: _____

Notwithstanding the foregoing, if the financing institution requires an additional inspection, Seller agrees to permit such inspection. The Buyer will pay all costs and fees associated with such inspections and Seller shall have no liability therefor. Buyer will return the property to its original condition after said inspection or test. The Buyer will hold the Seller, its officers, agents and attorneys harmless from all claims arising out of Buyers inspection or testing of the property.

9. **Defects.** Buyer represents to the Seller that Buyer will fully inspect the property and Buyer assumes the responsibility and risks of all defects and conditions, including such defects and conditions, if any, that cannot be observed by casual inspection. Seller makes no representation or warranties expressed or implied of any kind with respect to, among other things; (a) the dimension, size or acreage of the premises; (b) any applicable governmental laws or regulations; (c) availability of water, sewer or other utilities: (d) the environmental condition of the property; or (e) the existence or non-existence of urea-formaldehyde or asbestos.

10. **Personal Property**. The Seller is a bankruptcy trustee and has no knowledge of whether or not there is any leased personal property on the premises. It shall be up to the Buyer to make an appropriate investigation to determine whether or not there is any leased property on the premises which in any case is not included in the sale. The debtor(s) may claim personal property on the premises, such as non-built-in appliances, drapes, curtains, etc., as exempt property. In such instance that personal property is not included in the sale.

11. **Feasibility Study**. If the Purchase and Sale Agreement is subject to a feasibility study and the sale does not close because of any contingency which the Buyer does not waive, then prior to returning any earnest money or promissory note the Buyer shall provide the Seller with a copy of every study, report, analysis or appraisal regarding the property.

Buyer Initial: _*SMf*_       Buyer Initial: _____       Seller Initial: _*Mpkt*_
Date: __03/09/25__       Date: _____       Date: __3/17/2025 | 4:23 PM PDT__

DocuSign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

12. **SHORT SALE DISCLOSURE** This sale is [✓] is not [ ] a short sale. If this is a short sale the following shall apply:

    **a.** This agreement is contingent upon the seller obtaining written consent from the lienholder(s) within <u>30</u> days (60 days if not filled in, must match days entered on NWMLS form 22SS) of mutual acceptance. Seller shall notify buyer of lienholder approval by providing buyer a copy of the lienholder approval letter. If seller fails to reach agreement with lienholder, this agreement shall terminate and earnest money will be refunded to the buyer.

    **b.** Buyer acknowledges that lienholder may have additional addendums and clauses that will be integrated into this agreement. Buyer agrees to return all lienholder required documents within 2 calendar days of receipt. If buyer fails to return required documents, this transaction may be cancelled by the seller and earnest money shall be returned to the buyer.

Buyer Initial: _SMJ_     Buyer Initial: _____
Date: 03/09/25     Date: _____

    **c.** Buyer acknowledges that cost for items such as septic inspection and pumping, well certification, HOA liens, utility liens and appraisal required repairs **may not be agreed to by lienholder**. Buyer agrees to pay for all costs not agreed to by lienholder in order to close. These items are subject to buyer review, buyer may terminate this agreement if items are deemed too costly and earnest money shall be refunded to the buyer.

Buyer Initial: _SMJ_     Buyer Initial: _____
Date: 03/09/25     Date: _____

13. **Hazardous Waste.** The Seller, as a bankruptcy trustee, has no actual personal knowledge of the presence of any hazardous waste on the property, including, but not limited to, petroleum products and asbestos, and has no actual personal knowledge of the violation of any environmental law, regulation or ordinance with respect to the property. Buyer understands and agrees that any knowledge about the condition of the property of other parties including the trustee's real estate agent, debtor, the debtor's employees and agents, or any other persons or entitles shall not be imputed to the trustee or the estate. Buyer hereby assumes all risk and costs related to the presence of hazardous waste and the environmental condition of the property. Buyer hereby waives any and all rights of contribution, indemnity and/or reimbursement with respect to any and all defects, including but not limited to, hazardous waste and environmental condition.

14. **Possession.** Buyer shall be entitled to possession upon closing.

15. **Closing.** "Closing" means the date on which all documents are recorded and the sales proceeds are available to Seller. Seller does not agree to clean the interiors or exteriors of any structures. The sale is "as is, where is".

Buyer Initial: _SMJ_     Buyer Initial: _____            Seller Initial: _MPkT_
Date: 03/09/25     Date: _____            Date: 3/17/2025 | 4:23 PM PDT

16. **Escrow Agent.** The transaction shall be escrowed by the following:

> First American Title Insurance || Team Sandy Do
> Address: 11400 SE 8th St., STE 250, Bellevue, WA 987004
> Limited Practice Officer Contact: Sandy Do
> email: teamsandy@firstam.com
> phone: 425.732.4822

17. **Condition of Title.** Unless otherwise specified in this Agreement, title to the property shall be marketable at closing. The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions presently of record and general to the area, including but not limited to zoning; easements and encroachments not materially affecting the value of or unduly interfering with Buyer's intended use of the property; and reserved oil and/or mineral rights. Monetary encumbrances not assumed by the Buyer shall be removed from the title by the Seller on or before closing. If for any reason the Seller is unable to transfer marketable title to the Buyer then this Agreement Is null and void, the Buyer's earnest money, if any, shall be returned and the Seller shall be released of all obligations hereunder.

18. **Title Insurance.** Seller shall provide a standard form of title insurance from a title insurance company of Sellers choice. Seller authorizes lender or closing agent, at Seller's expense, to apply for a standard form buyer's policy of title insurance with homeowner's additional protection and inflation protection endorsement if available at no additional cost. If buyer elects to purchase a homeowner or extended title policy, the difference in premium shall be a buyer expense. The preliminary commitment therefor, and the policy to be issued, shall contain no exceptions other than general exclusions and exceptions in said standard form. If title cannot be made so insurable prior to closing, the earnest money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in paragraph 24 hereof, and this Agreement shall thereupon be terminated.

19. **Title Transfer.** Title shall be transferred by the bankruptcy trustee's quit claim deed.

20. **Buyer's Funds to Close.** Buyer represents Buyer has sufficient funds to close this sale in accordance with this Agreement, and is not relying on any contingent source of funds or gifts unless expressly set forth elsewhere in this Agreement.

21. **Closing Costs and Pro-Rations.** Buyer and Seller shall each pay one-half of the escrow fee. Seller shall pay excise tax. Taxes for the current year shall be pro-rated. Buyer shall pay for oil in the oil tank.

Buyer Initial: _SMf_
Date: _03/09/25_

Buyer Initial: _____
Date: _____

Seller Initial: _MPkt_
Date: _3/17/2025 | 4:23 PM PDT_

Au...DocuSign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

22. **Sale Information.** After approval by the United States Bankruptcy Court, selling agent is authorized to report this Agreement (including price and all terms) to the Northwest Multiple Listing Associations or such other applicable listing association that publishes it to its members, financing institutions, appraisers and anyone else related to the sale. Buyer and Seller authorize all lenders, closing agents, appraisers, title insurance companies and other parties related to the sale, to furnish the listing and/or selling agents, on request, any and all information, and copies of documents concerning the status, progress and final disposition of financing, appraisal, closing, title condition, and any other matter concerning this sale, including buyer's credit report.

23. **Notices**. Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including any addenda hereto) must be in writing, signed by any one Buyer or Seller (including either husband or wife) and received by selling agent who, for this limited purpose, shall be the agent of both parties. Any time limit in or applicable to a notice shall commence on the date following receipt of the notice by the selling agent, unless that is a Saturday, Sunday or holiday, in which event it will commence on the next following business day. Buyer must keep selling agent advised of their whereabouts to receive prompt notification of receipt of a notice. Selling agent has no responsibility to advise of receipt of a notice beyond either phoning the party or causing a copy of the notice to be delivered to the party's address on this Agreement.

24. **Earnest Money Receipt and Disbursement**. Selling agent acknowledges receipt from Buyer of the earnest money as set forth above in the form indicated to be held in Closing Agent's pooled trust account (with interest paid to the Washington Housing Fund or such other relevant fund in accordance with applicable laws). Agent shall not deposit any check until Buyer and Seller both have completed initial signing of this Agreement. Any unpaid loan or sale costs incurred for the Buyer, including credit report, appraisal fee, and escrow cancellation fee, may be paid from the earnest money prior to its disbursement.

25. **Seller Conditions.** This Agreement is subject to approval by the Bankruptcy Court. The trustee does not always have access to a title report or information with respect to the tax consequences of a sale when a purchase offer is made. Accordingly, the purchase agreement is conditioned on: (1) the trustee obtaining an opinion from an accountant that the proposed sale will not result in adverse tax consequences and (2) if the trustee in his or her sole discretion deems it appropriate, the court authorizing an award to the estate of reasonable fees and expenses pursuant to 11 U.S.C. Section 506(c) if there are liens against the property.

Buyer Initial: _SMf_      Buyer Initial: _____

Date: 03/09/25           Date: _____

Seller Initial: _MPkT_

Date: _3/17/2025 | 4:23 PM PDT_

AuDocusign Envelope ID: F8F959F43BF4C54A76-9B62-53C01C717418

26. **Subsequent Offers**. All purchase agreements are subject to approval and order of the U. S. Bankruptcy Court, and there cannot be mutual acceptance until final approval by the Bankruptcy Court. The Seller will apply to the Bankruptcy Court for approval of the sale as set forth herein as soon as reasonably practicable. Mutual acceptance occurs upon final approval by the Bankruptcy Court. Further, if the trustee receives a better offer on the property prior to or at the Bankruptcy Court hearing, the trustee may accept such offer contingent upon approval of the Bankruptcy Court and request that the court accept the better offer. This clause is an explanation of the law and removal of this clause from this Agreement will not change the law. The trustee agrees, however, to follow the procedure set forth in the next paragraph allowing for Buyer to attempt to match an opportunity competing offer.

27. **Competing Bids**. If this agreement is the first agreement the Seller has signed regarding the subject property, the Seller, subject to court approval, hereby agrees that the Buyer may match the proposed purchase price of any third party offer. In order to bring this paragraph into effect, Buyer must notify the Seller of its intent to match the third party's offer within 48 hours of receipt from the Seller of written notice of the third party's offer. The Seller's notice shall be in writing and state that the Buyer needs to meet or exceed the third party's price and other terms. Price increases must be in increments of not less than one percent of the offer price or $5,000 dollars, whichever is greater. If an offer is received within 24 hours of the court hearing date, the court may have the proposed purchasers submit in writing their last, highest, and best offers at or following the hearing to approve the sale.

28. **Agreement to Purchase and Time Limit for Acceptance**. Buyer offers to purchase the property on the above terms and conditions. The initial signing is not effective until a signed copy hereof is actually received by the office of the selling agent. If this offer is not so signed, it shall lapse and selling agent shall refund the earnest money to Buyer.

29. **Counteroffers**. If a party makes a counteroffer the other party shall have until 9:00 p.m. on the second day following receipt of the counteroffer to sign it. Signing is only effective by delivering the signed counteroffer to the office of the selling broker.

30. **Commission**. A real estate commission will be paid at closing in accordance with the listing agreement and pursuant to an order of the Bankruptcy Court.

31. **Resale Certificate**. If the subject real property is a condominium, Buyer shall purchase a Resale Certificate within ten (10) days after written lien holder approval. Buyer shall be conclusively deemed to have approved said Resale Certificate unless within fifteen (15) days following lienholder approval, Buyer gives notice of disapproval of the Resale Certificate. If Buyer disapproves said Resale Certificate this Agreement shall terminate and the earnest money shall be refunded to Buyer.

Buyer Initial: _SMf_

Date: 03/09/25

Buyer Initial: _____

Date: _____

Seller Initial: _MPkt_

Date: 3/17/2025 | 4:23 PM PDT

32. **Disclosure Statement**. The Seller is a bankruptcy trustee and therefore exempt from providing a real property transfer disclosure statement and therefore no such statement will be provided.

33. **Earnest Money Deposit.** Selling Broker will deposit any check to be held by Selling Broker as earnest money within three (3) days after receipt or initial signing, whichever occurs later. If the earnest money is held by Selling Broker and Is over $10,000.00 it shall be deposited into an interest bearing trust account in Selling Broker's name provided that Buyer completes an IRS Form W-9. Interest, if any, after deduction of bank charges and fees will be paid to Buyer. Buyer agrees to reimburse Selling Broker for bank charges and fees in excess of the interest earned, if any. If the Buyer does not complete an IRS Form W-9 before Selling Broker must deposit the earnest money or if the earnest money is $10,000.00 or less, the earnest money shall be deposited into the Housing Trust Fund Account. Selling Broker may transfer the earnest money to Closing Agent. Buyer agrees to pay financing and purchase costs incurred by buyer. If all or part of the earnest money is to be refunded to Buyer and any such costs remain unpaid, the Selling Broker or Closing Agent may deduct and pay them therefrom.

34. **Lead Paint.** Many used homes, especially those constructed before 1978, contain lead paint. Lead paint is poisonous, especially for children. The Seller has no knowledge with respect to the presence or absence of lead paint in the subject property. The Buyer shall undertake such investigation as he or she deems prudent in the circumstances. The Buyer shall conduct an initial inspection for the presence of lead paint within the fifteen day time frame set forth in paragraph 8 herein. However, provided that the Buyer obtains specimens for analysis within the original inspection period and delivers them to a laboratory, upon written notice to the Seller within the original fifteen (15) day period, the Buyer may have an additional ten (10) days to obtain the results of a laboratory analysis for the presence of lead. If the Buyer does not obtain such laboratory samples, deliver them to a laboratory and provide the Seller with notice within fifteen (15) days of initial signing, this contingency will be deemed to be waived on the close of business fifteen days from Initial signing. Unless the Buyer notifies the Seller within such additional ten (10) day period that the property is not acceptable due to the presence of an unsafe levels of lead paint, then this contingency will be deemed waived.

35. **Agency Disclosure and Receipt of Agency Pamphlet.** Seller acknowledges receipt of the pamphlet entitled The Law of Real Estate Agency. The Northwest Multiple Listing Association requires all Real Estate licensees (agents) to disclose to the Buyer and Seller in a real estate transaction whether the licensee represents the Seller, the Buyer, both the Seller and the Buyer, or neither. The listing licensee represents the Seller. The selling licensee represents:

[   ] Seller   [ ✓ ] Buyer   [   ] Neither   [   ] Both.

Selling Licensee Initial: _JS_ _MR_    Buyer Initial: _SMf_    Buyer Initial: _____
Date: _03/09/25_    Date: _03/09/25_    Date: _____
_03/08/25_

Buyer Initial: _SMf_    Buyer Initial: _____    Seller Initial: _MPkt_
Date: _03/09/25_    Date: _____    Date: _3/17/2025 | 4:23 PM PDT_

36. **Addenda**. The following addenda are attached hereto and made a part of this Agreement:

[ ] NONE    [ ✔ ] <u>22E   35  42A</u>

37. **Facsimile and E-mail Transmission**. Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will confirm facsimile transmitted signatures by signing an original document. E-mail transmission of any signed original document, and retransmission of any such e-mail, shall be the same as delivery of an original, provided that the e-mail is sent to both Selling Broker and Selling Firm or both Listing Broker and Listing Firm at the e-mail addresses Listed below. At the request of either party, or the Closing Agent, the parties will confirm e-mail transmitted signatures by signing an original document.

Selling Broker Email Address

<u>jennisandmeyer@windermere.com</u>

<u>mattreynolds@windermere.com</u>
Selling Firm Document Email Address

<u>wremagnolia@windermere.com</u>

Listing Broker Email Address

<u>offers@ssapprovals.com</u>

Listing Firm Document Email Address

<u>eastsidebrokers@metroeastside.com</u>

38. **Integration and Electronic Signatures**. This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

SELLER SIGNATURE: *Michael P Klein, Trustee*    DATE: 3/17/2025 | 4:23 PM PDT

SELLER: Michael P. Klein, Ch 7 Bankruptcy Trustee For Melanie Smith 24-10218

BUYER SIGNATURE: *Stephen M Fry*    DATE: 03/09/25

BUYER PRINT: Stephen M Fry

BUYER SIGNATURE: _____ DATE: _____

BUYER PRINT: _____

Buyer Initial: [SMF]
Date: 03/09/25

Buyer Initial: _____
Date: _____

Seller Initial: [MPK]
Date: 3/17/2025 | 4:23 PM PDT

AuDocuSign Envelope ID: F8F959F418F4C4A76-9B62-53C01C717418

Form 22SS
Short Sale Addendum
Rev. 5/14
Page 1 of 1

**SHORT SALE ADDENDUM TO
PURCHASE & SALE AGREEMENT**

©Copyright 2014
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated <u>3/4/25</u>                          1

between <u>Stephen M Fry</u>                                      ("Buyer")   2
            Buyer                                  Buyer

and <u>Michael P. Klein, Ch 7 Bankruptcy Trustee For Melanie Smith 24-10218</u> ("Seller")  3
     Seller                                        Seller

concerning <u>3057 42nd Ave W</u>                <u>Seattle</u> , <u>WA</u> <u>98199</u>     (the "Property").  4
           Address                         City          State   Zip

1. **SHORT SALE.** A "Short Sale" is a transaction that depends on Seller's creditor(s)' agreement to accept less than   5
the amount secured by the Property in order to satisfy Seller's obligations at Closing. Buyer and Seller   6
acknowledge that the purchase price is insufficient to cover Seller's obligations at Closing and that this Agreement   7
constitutes a Short Sale.   8

2. **SHORT SALE CONTINGENCY.** This Agreement is contingent upon Seller obtaining written consent from Seller's   9
creditor(s) for the Short Sale and Seller's acceptance of any conditions imposed by Seller's creditor(s) ("Lender   10
Consent"). Seller shall have <u>30</u>      days (60 days, if not filled in) after mutual acceptance to obtain Lender   11
Consent. If Seller timely gives notice of Lender Consent to Buyer ("Notice of Lender Consent"), then this   12
contingency shall be deemed satisfied. If Seller fails to timely give Notice of Lender Consent to Buyer, then this   13
Agreement shall terminate and the Earnest Money, if deposited, shall be refunded to Buyer. If Seller becomes   14
aware that Seller's creditor(s) did not consent to the Agreement or if Seller decides not to accept the conditions   15
imposed by Seller's creditor(s), Seller shall give notice to Buyer of that fact within 2 days and upon Seller's notice,   16
this Agreement shall terminate and the Earnest Money, if deposited, shall be refunded to Buyer. Buyer and Seller   17
acknowledge that Seller has limited control over whether Seller's creditor(s) will consent to the sale and when   18
such consent is given.   19

3. **OFFERS FROM OTHER BUYERS.** Seller may accept offers from other buyers to purchase the Property to   20
submit to Seller's creditor(s). The parties are advised that some creditors may require that Seller submit multiple   21
offers in order to satisfy Seller's obligations to its creditors. Buyer acknowledges that this Agreement does not   22
have any priority over agreements with or offers from other buyers. Seller has limited control over which   23
agreement Seller's creditor(s) may approve, and Seller may continue to market the Property. At the time of the   24
offer, Buyer is advised to inquire about other offers that Seller may have already accepted.   25

   If, after mutual acceptance, Seller submits an offer from another buyer to Seller's creditor(s), Seller must give   26
notice to Buyer of that fact within 2 days of each such offer ("Notice of Additional Offer"). Buyer may terminate this   27
Agreement within 3 days of receiving any Notice of Additional Offer, in which case, the Earnest Money, if   28
deposited, shall be refunded to Buyer.   29

4. **TERMINATION BY BUYER.** Buyer ❏ may; ❏ may not (may, if not filled in) terminate this Agreement at any time   30
prior to Notice of Lender Consent. Buyer maintains the right to terminate the Agreement under any other condition   31
or contingency in the Agreement prior to Notice of Lender Consent. If Buyer terminates this Agreement under this   32
Section, the Earnest Money, if deposited, shall be refunded to Buyer.   33

5. **COMPUTATION OF TIME.** For the purposes of computing time only (except for paragraph 2 above and the   34
specific items checked below), all timelines in this Agreement shall begin on the date of Notice of Lender   35
Consent. The timelines for the following items, if checked, shall instead begin on mutual acceptance:   36

| | |
|---|---|
| ❏ Deposit of Earnest Money | ❏ Inspection Addendum (Form 35) |
| ❏ Financing Addendum (Form 22A) | ❏ Title Contingency Addendum (Form 22T) |
| ❏ Buyer's Sale of Property Contingency Add. (Form 22B) | ❏ Septic Addendum (Form 22S) |
| ❏ Homeowner's Assoc. Review Period (Form 22D) | ❏ Neighborhood Review (Form 35 or 35N) |
| ❏ Other _____ | ❏ Other _____ |

                                                                37
 38
 39
 40
 41

6. **CLOSING.** The Closing Date shall be _____ days (30 days, if not filled in) after Notice of Lender Consent,   42
which date shall supersede the Closing Date otherwise provided for in this Agreement.   43

7. **IMPLICATIONS OF A SHORT SALE.** The parties acknowledge that this Addendum does not fully explain all of   44
the implications of a Short Sale. The parties are advised to seek the advice of third party professionals regarding   45
this Agreement and the consequences of this Addendum. Seller acknowledges receipt of the Short Sale Seller   46
Advisory pamphlet prepared by Washington Departments of Licensing and Financial Institutions.   47

8. **NOTICES.** NWMLS Form 90SS (Notice Pursuant to Short Sale Addendum) shall be used for any notice required   48
by this Addendum.   49

| | | | |
|---|---|---|---|
| _SMF_  03/09/25 | _____ | _MPkt_  3/17/2025 \| 4:23 PM PDT | _____ |
| Buyer's Initials  Date | Buyer's Initials  Date | Seller's Initials  Date | Seller's Initials  Date |

Case 24-10218-CMA   Doc 127   Filed 03/26/25   Ent. 03/26/25 09:35:54   Pg. 15 of 32

DocuSign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated ___3-4-25_____ 1

between _____ ("Buyer") 2
Stephen M Fry

and __Michael P. Klein, Ch 7 Bankruptcy Trustee For Melanie Smith 24-10218__ ("Seller") 3

concerning __3057 42nd Ave W_____ __Seattle__ , __WA 98199____ (the "Property"). 4

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:                           5
                                                                                6
**1. No Representations or Warranties. The Seller is a bankruptcy trustee and therefore he/she has**   7
**no personal knowledge regarding the property. There are no representations or warranties**   8
**regarding the property or its condition. All sales are "as is, where is" and without any**   9
**representations or warranties of any kind express or implied.**              10
                                                                                11
**2. Buyer acknowledges that cost for items such as septic inspection and pumping, well certification, HOA**   12
**liens, utility liens and appraisal required repairs may not be agreed to by lienholder. Buyer agrees to pay for**   13
**all costs not agreed to by lienholder in order to close. These items are subject to buyer review, buyer may**   14
**terminate this agreement if items are deemed too costly and earnest money shall be refunded to the buyer.**   15
                                                                                16
**3. Buyer agrees to pay up to 5.5% of purchase price or as outlined below (check one below) whichever is**   17
**greater, at closing as a buyers premium to the estate. This fee must be paid in full at closing and cannot be**   18
**included in the loan amount. Fee will appear on HUD as Buyer Bankruptcy Fee. Buyer represents that these**   19
**funds are available and agrees to provide proof of funds with offer when submitted.**   20
                                                                                21
**Base offer Price $0-215,000** ☐ **$15,000 BK Fee**                          22
                                                                                23
**Base offer Price $215,001-$364,000** ☐ **$20,000 BK Fee**    03/18/25       24
                                                                                25
**Base offer Price $364,001 and up** ☑ **5.5% BK Fee**    *SMF*               26
                                                                                27

```
Sale is subject to a successful rescission of previous    MPK
contract dated 2/4/2025 between Everose LLC and Trustee    28
Michael P Klein                                            29
                                                          30
```

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged.            31

Initials: BUYER: *SMF* 03/09/25  Date: _____  SELLER: *MPK* Date: _____ 3/17/2025 | 4:23 PM P

BUYER: _____ Date: _____  SELLER: _____ Date: _____

DocuSign Envelope ID: F8F959F418F4C4A76-9B62-53C01C717418

Form 22K
Identification of Utilities Addendum
Rev. 3/21
Page 1 of 1

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**IDENTIFICATION OF UTILITIES**
**ADDENDUM TO PURCHASE AND SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated _____ 1

between _____ Stephen M Fry _____ ("Buyer") 2
                                                    Buyer                                    Buyer

and ____ Michael P. Klein, Ch 7 Bankruptcy Trustee For Melanie Smith 24-10218 ____ ("Seller") 3
              Seller                                                                      Seller

concerning ___ 3057 42nd Ave W _____ **Seattle , WA 98199** ____ (the "Property'). 4
                        Address                              City                    State    Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds 5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities 6
providing service to the Property and having lien rights are as follows: 7

WATER DISTRICT:          ___ Seatttle Public Utilities _____ 8
                                        Name                                        e-mail or website (optional)
                                                                                                                              9
                                        Address
                                                                                                                              10
                                        City, State, Zip                                  Fax. No. (optional)

SEWER DISTRICT:          Seattle Public Utilities _____ 11
                                        Name                                        e-mail or website (optional)
                                                                                                                              12
                                        Address
                                                                                                                              13
                                        City, State, Zip                                  Fax. No. (optional)

IRRIGATION DISTRICT:                                                                                                          14
                                        Name                                        e-mail or website (optional)
                                                                                                                              15
                                        Address
                                                                                                                              16
                                        City, State, Zip                                  Fax. No. (optional)

GARBAGE:                 ___ Seattle Public Utilities _____ 17
                                        Name                                        e-mail or website (optional)
                                                                                                                              18
                                        Address
                                                                                                                              19
                                        City, State, Zip                                  Fax. No. (optional)

ELECTRICITY:             ___ Seattle Public Utilities _____ 20
                                        Name                                        e-mail or website (optional)
                                                                                                                              21
                                        Address
                                                                                                                              22
                                        City, State, Zip                                  Fax. No. (optional)

GAS:                     ___ Puget Sound Energy _____ 23
                                        Name                                        e-mail or website (optional)
                                                                                                                              24
                                        Address
                                                                                                                              25
                                        City, State, Zip                                  Fax. No. (optional)

SPECIAL DISTRICT(S):                                                                                                          26
(local improvement districts or              Name                                        e-mail or website (optional)
utility local improvement districts)                                                                                         27
                                        Address
                                                                                                                              28
                                        City, State, Zip                                  Fax. No. (optional)

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1) 29
within _____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing 30
Broker or Buyer Broker with the names and addresses of all utility providers having lien rights affecting the Property 31
and (2) Buyer and Seller authorize Listing Broker or Buyer Broker to insert into this Addendum the names and 32
addresses of the utility providers identified by Seller. 33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges 34
(including unbilled charges). Buyer understands that the Listing Broker and Buyer Broker are not responsible for, or 35
to insure payment of, Seller's utility charges. 36

| _SMF_ | 03/09/25 | | | _MPkↆ_ | 3/17/2025 \| 4:23 PM PDT | | |
|---|---|---|---|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

AuDocuSign Envelope ID: F8F950F423F4C4A76-9B62-53C01C717418

Form 22E
FIRPTA Certification
Rev. 7/19
Page 1 of 1

**FIRPTA CERTIFICATION**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The Foreign Investment in Real Property Tax Act ("FIRPTA"), 26 U.S.C. 1445, provides that a buyer of a U.S. real property interest must withhold tax if Seller is a foreign person, unless one of the exceptions in the Act applies. The following will inform Buyer and Closing Agent whether tax withholding is required. [1] [2] [3]

Note: The above law applies to foreign corporations, partnerships, trusts, estates and other foreign entities, as well as to foreign individuals. If Seller is a corporation, partnership, trust, estate or other entity, the terms "I" and "my" as used below means the corporation or other entity. A "real property interest" includes full or part ownership of land and/or improvements thereon; leaseholds; options to acquire any of the foregoing; and an interest in foreign corporations, partnerships, trusts or other entities holding U.S. real estate. [4] [5] [6] [7] [8]

---

**SELLER CERTIFICATION.** Seller hereby certifies the following: [9]

**PROPERTY.** I am the Seller of real property ☑ at: [10]

3057 42nd Ave W      **Seattle , WA 98199** [11]

Address     City     State     Zip

or ☑ (if no street address) legally described on the attached. [12]

**CITIZENSHIP STATUS.** I ☐ AM ☑ AM NOT a non-resident alien (or a foreign corporation, foreign partnership, foreign trust, foreign estate or other foreign business entity) for purposes of U.S. income taxation. [13] [14]

**TAXPAYER I.D. NUMBER.** [15]
My U.S. taxpayer identification number (e.g. social security number) is _____. [16]
(Tax I.D. number to be provided by Seller at Closing)

**ADDRESS.** [17]
My home address is 330 Madison Ave. S., Suite 110 Bainbridge Island, WA 98110 [18]
Address     City     State     Zip

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief it is true, correct and complete. I understand that this Certification may be disclosed to the Internal Revenue Service ("IRS") and that any false statement I have made here could be punished by fine, imprisonment, or both. [19] [20] [21]

[22]

| | | | |
|---|---|---|---|
| Seller | Date | Seller | Date |

---

**BUYER CERTIFICATION** (Only applicable if Seller is a non-resident alien). [23]

If Seller is a non-resident alien, and has not obtained a release from the IRS, then Closing Agent must withhold 15% of the amount realized from the sale and pay it to the IRS, unless Buyer certifies that the selected statement below is correct: [24] [25] [26]

☐ **Amount Realized ($300,000 or less) and Family Residence = No Tax.** (a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other consideration to Seller, does not exceed $300,000; and (b) I certify that I or a member of my family* have definite plans to reside on the property for at least 50% of the time that the property is used by any person during each of the first two twelve month periods following the date of this sale. If Buyer certifies these statements, there is no tax. [27] [28] [29] [30] [31]

☐ **Amount Realized (more than $300,000, but not exceeding $1,000,000) and Family Residence = 10% Tax.** (a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other consideration to Seller, exceeds $300,000, but does not exceed $1,000,000; and (b) I certify that I or a member of my family* have definite plans to reside on the property for at least 50% of the time that the property is used by any person during each of the first two twelve month periods following the date of this sale. If Buyer certifies these statements, then Closing Agent must withhold 10% of the amount realized from the sale and pay it to the IRS. [32] [33] [34] [35] [36] [37] [38]

* (Defined in 11 U.S.C. 267(c)(4). It includes brothers, sisters, spouse, ancestors and lineal descendants). [39]

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief both statements are true, correct and complete. I understand that this Certification may be disclosed to the IRS and that any false statement I have made here could be punished by fine, imprisonment, or both. [40] [41] [42]

*Stephen M Fry*    03/09/25

| | | | |
|---|---|---|---|
| Buyer | Date | Buyer | Date |

[43]

Docusign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418



Real estate buyers and sellers are targets for wire fraud and many have lost hundreds of thousands of dollars because they failed to take **two simple steps**:

 Obtain the phone number of your real estate broker and your escrow agent at your first meeting;

 Call the known phone number to speak directly with your broker or escrow officer to confirm wire instructions PRIOR to wiring.

*SMK* 03/09/25

_____     _____
Broker's Name                                    Broker's Phone

_____     _____
Escrow Officer's Name                         Escrow Officer's Phone

My real estate broker or escrow officer reviewed this pamphlet with me.


DocuSigned by:
*Michael P Klein, Trustee*
Sign
FFBD3F5B5C4E7...

3/17/2025  |  4:23 PM PDT

Date

# CALL BEFORE YOU WIRE

## Beware of the following scam:

1. An email account is hacked (this could be broker's, escrow's, or consumer's email).

2. Hacker monitors the account, waiting for the time when consumer must wire funds. Broker, escrow, and consumer have no knowledge they are being monitored.

3. Hacker, impersonating broker or escrow, instructs consumer to wire funds immediately.  The wire instructions are for an account controlled by hacker.  These instructions often create a sense of urgency and often explain that the broker or escrow officer cannot be reached by phone so any follow-up must be by email.  When consumer replies to this email, consumer's email is diverted to hacker.

4. Consumer wires the funds which are stolen by hacker with no recourse for consumer.

      

**Never wire funds without first calling the known phone number for broker or escrow and confirming the wire instructions.  Do not rely upon e-mail communications.**

Audantis Enfielope fil: F8F959F43E74CE47A76-9B62-53C01C717418

Form 22J
Lead Based Paint Disclosure
Rev. 7/23
Page 1 of 2

**DISCLOSURE OF INFORMATION ON**
**LEAD-BASED PAINT AND**
**LEAD-BASED PAINT HAZARDS**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated _____2/17/2025_____  1

between ___Stephen M Fry_____ ("Buyer")  2
      Buyer                    Buyer

and ___Michael P. Klein, Ch 7 Bankruptcy Trustee For Melanie Smith 24-10218___ ("Seller")  3
   Seller                   Seller

concerning ___3057 42nd Ave W_____ __Seattle__ , __WA__ __98199__ (the "Property").  4
     Address              City        State  Zip

**Lead Warning Statement**  5

    Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is  6
notified that such property may present exposure to lead from lead-based paint that may place young children at  7
risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage,  8
including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead  9
poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is  10
required to provide the buyer with any information on lead-based paint hazards from risk assessments or  11
inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk  12
assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.  13

**NOTE:** In the event of pre-closing possession of more than 100 days by Buyer, the term Buyer also means Tenant.  14
   15

**Seller's Disclosure**  16

   (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):  17

      ❑ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).  18
   19
   20

      ☑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.  21

   (b) Records and reports available to the Seller (check one below):  22

      ❑ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint and/or lead-  23
        based paint hazards in the housing (list documents below).  24
   25
   26

      ☑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.  27

Seller has reviewed the information above and certifies, to the best of Seller's knowledge, that the statements made  28
and information provided by Seller are true and accurate.  29

_Michael P klein, Trustee_    3/17/2025 | 4:23 PM PDT               30
Seller           Date          Seller            Date

_SMF_   03/09/25             _MPkt_   3/17/2025 | 4:23 PM PDT
Buyer Initials  Date      Buyer Initials  Date      Seller Initials  Date      Seller Initials  Date    03/09/25

Audocusign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

**DISCLOSURE OF INFORMATION ON
LEAD-BASED PAINT AND
LEAD-BASED PAINT HAZARDS**
*Continued*

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**Buyer's Acknowledgment** 31

(c) Buyer has received the above Seller's Disclosure and all documents (if any). *SMF* 32

Buyer Initials   Buyer Initials

(d) Buyer has received the pamphlet *Protect Your Family from Lead in Your Home*. *SMF* 33
03/09/25
Buyer Initials   Buyer Initials

(e) Buyer has (check one below): 34

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint 35
and/or lead-based paint hazards. 36

☐ Accepted an opportunity to conduct a risk assessment or inspection for the presence of lead-based paint 37
and/or lead-based paint hazards on the following terms and conditions: 38

This Agreement is conditioned upon a risk assessment or inspection of the Property for the presence of lead- 39
based paint and/or lead-based paint hazards, to be performed by a risk assessor or inspector at Buyer's 40
expense. (Intact lead-based paint that is in good condition is not necessarily a hazard.) 41

This contingency shall conclusively be deemed satisfied (waived) unless Buyer gives written notice of 42
disapproval of the risk assessment or inspection to Seller within _____ (10 days if not filled in) after 43
receiving this Disclosure. Buyer's notice must identify the specific existing deficiencies and corrections 44
needed and must include a copy of the inspection and/or risk assessment report. 45

Seller may, at Seller's option, within _____ days (3 days if not filled in) after Seller's receipt of Buyer's 46
disapproval notice, give written notice that Seller will correct the conditions identified by Buyer. If Seller 47
agrees to correct the conditions identified by Buyer, then it shall be accomplished at Seller's expense prior 48
to the Closing Date, and Seller shall provide Buyer with certification from a risk assessor or inspector 49
demonstrating that the condition(s) has been remedied prior to the Closing Date. In lieu of correction, the 50
parties may agree on any other remedy for the disapproved condition(s), including but not limited to 51
adjustments to the Purchase Price. If an agreement on non-repair remedies is secured in writing before the 52
expiration of the time period set forth in this subparagraph, then this contingency will be deemed satisfied. 53

If Seller does not give notice that Seller will correct the conditions identified in Buyer's risk assessment or 54
inspection, or if the parties cannot reach an agreement on alternative remedies, then Buyer may elect to give 55
notice of termination of this Agreement within _____ days (3 days if not filled in) after expiration of the 56
time limit or delivery of Seller's notice pursuant to the preceding paragraph, whichever occurs first. The 57
Earnest Money shall then be returned to Buyer and the parties shall have no further obligations to each other. 58
Buyer's failure to give a written notice of termination means that Buyer will be required to purchase the 59
Property without Seller having corrected the conditions identified in Buyer's risk assessment or inspection 60
and without any alternative remedy for those conditions. 61

Buyer has reviewed the information above and certifies, to the best of Buyer's knowledge, that the statements made 62
by Buyer are true and accurate. 63

*Stephen M Fry*   03/09/25 _____ 64
Buyer            Date          Buyer                        Date

**Brokers' Acknowledgment** 65

Brokers have informed Seller of Seller's obligations under 42 U.S.C. 4852(d) and are aware of their responsibility 66
to ensure compliance. 67

*Matt Reynolds*   03/09/25      Signed by: *Heather Kailee Rainey*   3/17/2025 | 5:55 PM PDT 68
Buyer Broker                     Listing Broker
*Jenni Standmeyer*  03/08/25
Date                             Date

*SMF*  03/09/25                  *MPK*  3/17/2025 | 4:23 PM PDT
Buyer Initials  Date  Buyer Initials  Date    Seller Initials  Date  Seller Initials  Date

Authenticated Envelope ID: F8F959F418F4C47A76-9B62-53C01C717418

Form 17
Seller Disclosure Statement
Rev. 8/21
Page 1 of 6

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

SELLER: Michael P. Klein, Ch 7 Bankruptcy Trustee For Melanie Smith 24-10218                    1
Seller                                              Seller

To be used in transfers of improved residential real property, including residential dwellings up to four units, new construction,    2
dwellings in a residential common interest community not subject to a public offering statement, condominiums not subject to a public    3
offering statement, certain timeshares, and manufactured and mobile homes. See RCW Chapter 64.06 for further information.    4

**INSTRUCTIONS TO THE SELLER**    5
Please complete the following form. Do not leave any spaces blank. If the question clearly does not apply to the property check    6
"NA." If the answer is "yes" to any asterisked (*) item(s), please explain on attached sheets. Please refer to the line number(s) of    7
the question(s) when you provide your explanation(s). For your protection you must date and initial each page of this disclosure    8
statement and each attachment. Delivery of the disclosure statement must occur not later than five (5) business days, unless    9
otherwise agreed, after mutual acceptance of a written purchase and sale agreement between Buyer and Seller.    10

**NOTICE TO THE BUYER**    11
THE FOLLOWING DISCLOSURES ARE MADE BY THE SELLER ABOUT THE CONDITION OF THE PROPERTY LOCATED AT    12
_____ 3057 42nd Ave W _____, CITY _____    13
STATE __ WA __, ZIP _____, COUNTY _____ ("THE PROPERTY") OR AS    14
LEGALLY DESCRIBED ON THE ATTACHED EXHIBIT A.    15

SELLER MAKES THE FOLLOWING DISCLOSURES OF EXISTING MATERIAL FACTS OR MATERIAL DEFECTS TO BUYER BASED    16
ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE    17
STATEMENT. UNLESS YOU AND SELLER OTHERWISE AGREE IN WRITING, YOU HAVE THREE (3) BUSINESS DAYS FROM    18
THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO YOU TO RESCIND THE AGREEMENT    19
BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. IF THE    20
SELLER DOES NOT GIVE YOU A COMPLETED DISCLOSURE STATEMENT, THEN YOU MAY WAIVE THE RIGHT TO RESCIND    21
PRIOR TO OR AFTER THE TIME YOU ENTER INTO A PURCHASE AND SALE AGREEMENT.    22

THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE    23
LICENSEE OR OTHER PARTY. THIS INFORMATION IS FOR DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF    24
ANY WRITTEN AGREEMENT BETWEEN BUYER AND SELLER.    25

FOR A MORE COMPREHENSIVE EXAMINATION OF THE SPECIFIC CONDITION OF THIS PROPERTY YOU ARE ADVISED    26
TO OBTAIN AND PAY FOR THE SERVICES OF QUALIFIED EXPERTS TO INSPECT THE PROPERTY, WHICH MAY INCLUDE,    27
WITHOUT LIMITATION, ARCHITECTS, ENGINEERS, LAND SURVEYORS, PLUMBERS, ELECTRICIANS, ROOFERS,    28
BUILDING INSPECTORS, ON-SITE WASTEWATER TREATMENT INSPECTORS, OR STRUCTURAL PEST INSPECTORS.    29
THE PROSPECTIVE BUYER AND SELLER MAY WISH TO OBTAIN PROFESSIONAL ADVICE OR INSPECTIONS OF THE    30
PROPERTY OR TO PROVIDE APPROPRIATE PROVISIONS IN A CONTRACT BETWEEN THEM WITH RESPECT TO ANY    31
ADVICE, INSPECTION, DEFECTS OR WARRANTIES.    32

Seller ☐ is / ☐ is not occupying the Property.    33

**I. SELLER'S DISCLOSURES:**    34
*If you answer "Yes" to a question with an asterisk (*), please explain your answer and attach documents, if available and not    35
otherwise publicly recorded. If necessary, use an attached sheet.    36

|   |   | YES | NO | DON'T KNOW | N/A |   |
|---|---|---|---|---|---|---|
| **1. TITLE** |   |   |   |   |   | 37 |
| A. | Do you have legal authority to sell the property? If no, please explain. | ☐ | ☐ | ☐ | ☐ | 39 |
| *B. | Is title to the property subject to any of the following? |   |   |   |   | 40 |
|   | (1) First right of refusal | ☐ | ☐ | ☐ | ☐ | 41 |
|   | (2) Option | ☐ | ☐ | ☐ | ☐ | 42 |
|   | (3) Lease or rental agreement | ☐ | ☐ | ☐ | ☐ | 43 |
|   | (4) Life estate? | ☐ | ☐ | ☐ | ☐ | 44 |
| *C. | Are there any encroachments, boundary agreements, or boundary disputes? | ☐ | ☐ | ☐ | ☐ | 45 |
| *D. | Is there a private road or easement agreement for access to the property? | ☐ | ☐ | ☐ | ☐ | 46 |
| *E. | Are there any rights-of-way, easements, or access limitations that may affect the Buyer's use of the property? | ☐ | ☐ | ☐ | ☐ | 47 / 48 |
| *F. | Are there any written agreements for joint maintenance of an easement or right-of-way? | ☐ | ☐ | ☐ | ☐ | 49 |
| *G. | Is there any study, survey project, or notice that would adversely affect the property? | ☐ | ☐ | ☐ | ☐ | 50 |
| *H. | Are there any pending or existing assessments against the property? | ☐ | ☐ | ☐ | ☐ | 51 |
| *I. | Are there any zoning violations, nonconforming uses, or any unusual restrictions on the property that would affect future construction or remodeling? | ☐ | ☐ | ☐ | ☐ | 52 / 53 |

_____          _____          _____          _____
SELLER'S INITIALS          Date          SELLER'S INITIALS          Date

Docusign Envelope ID: F8F559F48F4C54A76-9B62-53C01C717418

**SELLER DISCLOSURE STATEMENT
IMPROVED PROPERTY**

*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

|  | YES | NO | DON'T KNOW | N/A |  |
|---|---|---|---|---|---|
| | | | | | 54 |
| | | | | | 55 |
| *J. Is there a boundary survey for the property? | ☐ | ☐ | ☐ | ☐ | 56 |
| *K. Are there any covenants, conditions, or restrictions recorded against the property? | ☐ | ☐ | ☐ | ☐ | 57 |

**NOTICE TO BUYER:** Covenants or deed restrictions based on race, creed, sexual orientation, or other protected class are voided by RCW 49.60.224 and are unenforceable. Washington law allows for the illegal language to be struck by bringing an action in superior court or by the free recording of a restrictive covenant modification document. Many county auditor websites provide a short form with instructions on this process.  58 59 60 61 62

**2. WATER**  63

  A. Household Water  64

    (1) The source of water for the property is: ☐ Private or publicly owned water system ☐ Private well serving only the subject property  *☐ Other water system  65 66

      *If shared, are there any written agreements? ☐ ☐ ☐ ☐  67

    *(2) Is there an easement (recorded or unrecorded) for access to and/or maintenance of the water source? ☐ ☐ ☐ ☐  68 69

    *(3) Are there any problems or repairs needed? ☐ ☐ ☐ ☐  70

    (4) During your ownership, has the source provided an adequate year-round supply of potable water? ☐ ☐ ☐ ☐  71

      If no, please explain: _____  72

    *(5) Are there any water treatment systems for the property? ☐ ☐ ☐ ☐  73

      If yes, are they: ☐ Leased  ☐ Owned  74

    *(6) Are there any water rights for the property associated with its domestic water supply, such as a water right permit, certificate, or claim? ☐ ☐ ☐ ☐  75 76

      (a) If yes, has the water right permit, certificate, or claim been assigned, transferred, or changed? ☐ ☐ ☐ ☐  77

      *(b) If yes, has all or any portion of the water right not been used for five or more successive years? ☐ ☐ ☐ ☐  78

    *(7) Are there any defects in the operation of the water system (e.g. pipes, tank, pump, etc.)? ☐ ☐ ☐ ☐  79

  B. Irrigation Water  80

    (1) Are there any irrigation water rights for the property, such as a water right permit, certificate, or claim? ☐ ☐ ☐ ☐  81 82

      *(a) If yes, has all or any portion of the water right not been used for five or more successive years? ☐ ☐ ☐ ☐  83 84

      *(b) If so, is the certificate available? (If yes, please attach a copy.) ☐ ☐ ☐ ☐  85

      *(c) If so, has the water right permit, certificate, or claim been assigned, transferred, or changed? ☐ ☐ ☐ ☐  86

    *(2) Does the property receive irrigation water from a ditch company, irrigation district, or other entity? ☐ ☐ ☐ ☐  87

      If so, please identify the entity that supplies water to the property:  88

      _____  89

  C. Outdoor Sprinkler System  90

    (1) Is there an outdoor sprinkler system for the property? ☐ ☐ ☐ ☐  91

    *(2) If yes, are there any defects in the system? ☐ ☐ ☐ ☐  92

    *(3) If yes, is the sprinkler system connected to irrigation water? ☐ ☐ ☐ ☐  93

**3. SEWER/ON-SITE SEWAGE SYSTEM**  94

  A. The property is served by:  95

    ☐ Public sewer system  ☐ On-site sewage system (including pipes, tanks, drainfields, and all other component parts)  96

    ☐ Other disposal system  97

    Please describe: _____  98

  B. If public sewer system service is available to the property, is the house connected to the sewer main? ☐ ☐ ☐ ☐  99 100

    If no, please explain: _____  101

_____    _____      _____    _____
SELLER'S INITIALS    Date      SELLER'S INITIALS    Date

DocuSign Envelope ID: F8F559F4-8F4C-47A76-9B62-53C01C717418

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *C. Is the property subject to any sewage system fees or charges in addition to those covered in your regularly billed sewer or on-site sewage system maintenance service? | ☐ | ☐ | ☐ | ☐ | 102 103 104 |
| D. If the property is connected to an on-site sewage system: | | | | | 105 |
| *(1) Was a permit issued for its construction, and was it approved by the local health department or district following its construction? | ☐ | ☐ | ☐ | ☐ | 106 107 |
| (2) When was it last pumped? _____ | | | | | 108 |
| *(3) Are there any defects in the operation of the on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 109 |
| (4) When was it last inspected? _____ | | | ☐ | ☐ | 110 |
| By whom: _____ | | | | | 111 |
| (5) For how many bedrooms was the on-site sewage system approved? _____ bedrooms | | | ☐ | ☐ | 112 |
| E. Are all plumbing fixtures, including laundry drain, connected to the sewer/on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 113 114 |
| If no, please explain: _____ | | | | | 115 |
| *F. Have there been any changes or repairs to the on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 116 |
| G. Is the on-site sewage system, including the drainfield, located entirely within the boundaries of the property? | ☐ | ☐ | ☐ | ☐ | 117 118 |
| If no, please explain: _____ | | | | | 119 |
| *H. Does the on-site sewage system require monitoring and maintenance services more frequently than once a year? | ☐ | ☐ | ☐ | ☐ | 120 121 |

NOTICE: IF THIS RESIDENTIAL REAL PROPERTY DISCLOSURE IS BEING COMPLETED FOR NEW CONSTRUCTION WHICH HAS NEVER BEEN OCCUPIED, SELLER IS NOT REQUIRED TO COMPLETE THE QUESTIONS LISTED IN ITEM 4 (STRUCTURAL) OR ITEM 5 (SYSTEMS AND FIXTURES). [122 123 124]

**4. STRUCTURAL** [125]

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *A. Has the roof leaked within the last 5 years? | ☐ | ☐ | ☐ | ☐ | 126 |
| *B. Has the basement flooded or leaked? | ☐ | ☐ | ☐ | ☐ | 127 |
| *C. Have there been any conversions, additions or remodeling? | ☐ | ☐ | ☐ | ☐ | 128 |
| *(1) If yes, were all building permits obtained? | ☐ | ☐ | ☐ | ☐ | 129 |
| *(2) If yes, were all final inspections obtained? | ☐ | ☐ | ☐ | ☐ | 130 |
| D. Do you know the age of the house? | ☐ | ☐ | ☐ | ☐ | 131 |
| If yes, year of original construction: _____ | | | | | 132 |
| *E. Has there been any settling, slippage, or sliding of the property or its improvements? | ☐ | ☐ | ☐ | ☐ | 133 |
| *F. Are there any defects with the following: (If yes, please check applicable items and explain) | ☐ | ☐ | ☐ | ☐ | 134 |

| | | | |
|---|---|---|---|
| ☐ Foundations | ☐ Decks | ☐ Exterior Walls | 135 |
| ☐ Chimneys | ☐ Interior Walls | ☐ Fire Alarms | 136 |
| ☐ Doors | ☐ Windows | ☐ Patio | 137 |
| ☐ Ceilings | ☐ Slab Floors | ☐ Driveways | 138 |
| ☐ Pools | ☐ Hot Tub | ☐ Sauna | 139 |
| ☐ Sidewalks | ☐ Outbuildings | ☐ Fireplaces | 140 |
| ☐ Garage Floors | ☐ Walkways | ☐ Siding | 141 |
| ☐ Wood Stoves | ☐ Elevators | ☐ Incline Elevators | 142 |
| ☐ Stair/Chair Lifts | ☐ Wheelchair Lifts | ☐ Other _____ | 143 |

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *G. Was a structural pest or "whole house" inspection done? | ☐ | ☐ | ☐ | ☐ | 144 |
| If yes, when and by whom was the inspection completed? | | | | | 145 146 |
| H. During your ownership, has the property had any wood destroying organism or pest infestation? | ☐ | ☐ | ☐ | ☐ | 147 |
| I. Is the attic insulated? | ☐ | ☐ | ☐ | ☐ | 148 |
| Is the basement insulated? | ☐ | ☐ | ☐ | ☐ | 149 |

_____    _____
SELLER'S INITIALS    Date

_____    _____
SELLER'S INITIALS    Date

DocuSign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| | | | | | 150 |
| **5. SYSTEMS AND FIXTURES** | | | | | 151 |
| *A. If any of the following systems or fixtures are included with the transfer, are there any defects? | | | | | 152 |
| If yes, please explain: _____ | | | | | 153 |
| Electrical system, including wiring, switches, outlets, and service .......................... ❑ | ❑ | ❑ | ❑ | | 154 |
| Plumbing system, including pipes, faucets, fixtures, and toilets ........................ ❑ | ❑ | ❑ | ❑ | | 155 |
| Hot water tank ..................................................................................... ❑ | ❑ | ❑ | ❑ | | 156 |
| Garbage disposal ................................................................................ ❑ | ❑ | ❑ | ❑ | | 157 |
| Appliances ......................................................................................... ❑ | ❑ | ❑ | ❑ | | 158 |
| Sump pump ......................................................................................... ❑ | ❑ | ❑ | ❑ | | 159 |
| Heating and cooling systems ................................................................. ❑ | ❑ | ❑ | ❑ | | 160 |
| Security system: ❑ Owned    ❑ Leased .............................................. ❑ | ❑ | ❑ | ❑ | | 161 |
| Other_____ ❑ | ❑ | ❑ | ❑ | | 162 |
| *B. If any of the following fixtures or property is included with the transfer, are they leased? | | | | | 163 |
| (If yes, please attach copy of lease.) | | | | | 164 |
| Security System: _____ ❑ | ❑ | ❑ | ❑ | | 165 |
| Tanks (type): _____ ❑ | ❑ | ❑ | ❑ | | 166 |
| Satellite dish: _____ ❑ | ❑ | ❑ | ❑ | | 167 |
| Other: _____ ❑ | ❑ | ❑ | ❑ | | 168 |
| *C. Are any of the following kinds of wood burning appliances present at the property? | | | | | 169 |
| (1) Woodstove? ................................................................................. ❑ | ❑ | ❑ | ❑ | | 170 |
| (2) Fireplace insert? .......................................................................... ❑ | ❑ | ❑ | ❑ | | 171 |
| (3) Pellet stove? ................................................................................ ❑ | ❑ | ❑ | ❑ | | 172 |
| (4) Fireplace? ................................................................................... ❑ | ❑ | ❑ | ❑ | | 173 |
| If yes, are all of the (1) woodstoves or (2) fireplace inserts certified by the U.S. Environmental | | | | | 174 |
| Protection Agency as clean burning appliances to improve air quality and public health? ................. ❑ | ❑ | ❑ | ❑ | | 175 |
| D. Is the property located within a city, county, or district or within a department of natural | | | | | 176 |
| resources fire protection zone that provides fire protection services? ........................... ❑ | ❑ | ❑ | ❑ | | 177 |
| E. Is the property equipped with carbon monoxide alarms?  (Note: Pursuant to RCW 19.27.530, Seller | | | | | 178 |
| must equip the residence with carbon monoxide alarms as required by the state building code.)........... ❑ | ❑ | ❑ | ❑ | | 179 |
| F. Is the property equipped with smoke detection devices? ................................. ❑ | ❑ | ❑ | ❑ | | 180 |
| (Note: Pursuant to RCW 43.44.110, if the property is not equipped with at least one smoke | | | | | 181 |
| detection device, at least one must be provided by the seller.) | | | | | 182 |
| G. Does the property currently have internet service? ....................................... ❑ | ❑ | ❑ | ❑ | | 183 |
| Provider: _____ | | | | | 184 |
| | | | | | 185 |
| **6. HOMEOWNERS' ASSOCIATION/COMMON INTERESTS** | | | | | |
| A. Is there a Homeowners' Association? ....................................................... ❑ | ❑ | ❑ | ❑ | | 186 |
| Name of Association and contact information for an officer, director, employee, or other authorized | | | | | 187 |
| agent, if any, who may provide the association's financial statements, minutes, bylaws, fining policy, | | | | | 188 |
| and other information that is not publicly available: _____ | | | | | 189 |
| B. Are there regular periodic assessments? ................................................... ❑ | ❑ | ❑ | ❑ | | 190 |
| $_____ per ❑ month ❑ year | | | | | 191 |
| ❑ Other: _____ | | | | | 192 |
| *C. Are there any pending special assessments? ............................................ ❑ | ❑ | ❑ | ❑ | | 193 |
| *D. Are there any shared "common areas" or any joint maintenance agreements (facilities | | | | | 194 |
| such as walls, fences, landscaping, pools, tennis courts, walkways, or other areas | | | | | 195 |
| co-owned in undivided interest with others)? .............................................. ❑ | ❑ | ❑ | ❑ | | 196 |
| | | | | | 197 |
| **7. ENVIRONMENTAL** | | | | | |
| *A. Have there been any flooding, standing water, or drainage problems on the property | | | | | 198 |
| that affect the property or access to the property? ...................................... ❑ | ❑ | ❑ | ❑ | | 199 |
| *B. Does any part of the property contain fill dirt, waste, or other fill material?........................ ❑ | ❑ | ❑ | ❑ | | 200 |
| *C. Is there any material damage to the property from fire, wind, floods, beach movements, | | | | | 201 |
| earthquake, expansive soils, or landslides? .............................................. ❑ | ❑ | ❑ | ❑ | | 202 |
| D. Are there any shorelines, wetlands, floodplains, or critical areas on the property? ................. ❑ | ❑ | ❑ | ❑ | | 203 |
| *E. Are there any substances, materials, or products in or on the property that may be environmental | | | | | 204 |
| concerns, such as asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical | | | | | 205 |
| storage tanks, or contaminated soil or water? | | | | | 206 |
| *F. Has the property been used for commercial or industrial purposes?........................ ❑ | ❑ | ❑ | ❑ | | 207 |

_____    _____
SELLER'S INITIALS        Date        SELLER'S INITIALS        Date

Audicusign Envelope ID: F8F959F418F4C47A76-9B62-53C01C717418

Form 17
Seller Disclosure Statement
Rev. 8/21
Page 5 of 6

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

|  | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *G. Is there any soil or groundwater contamination? | ☐ | ☐ | ☐ | ☐ | 208 / 209 / 210 |
| *H. Are there transmission poles or other electrical utility equipment installed, maintained, or buried on the property that do not provide utility service to the structures on the property? | ☐ | ☐ | ☐ | ☐ | 211 / 212 |
| *I. Has the property been used as a legal or illegal dumping site? | ☐ | ☐ | ☐ | ☐ | 213 |
| *J. Has the property been used as an illegal drug manufacturing site? | ☐ | ☐ | ☐ | ☐ | 214 |
| *K. Are there any radio towers in the area that cause interference with cellular telephone reception? | ☐ | ☐ | ☐ | ☐ | 215 |

**8. LEAD BASED PAINT** (Applicable if the house was built before 1978). ....... ☐    216

  A. Presence of lead-based paint and/or lead-based paint hazards (check one below):    217

    ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). _____    218 / 219

    ☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.    220

  B. Records and reports available to the Seller (check one below):    221

    ☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).    222 / 223

    _____    224

    ☐ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.    225

**9. MANUFACTURED AND MOBILE HOMES**    226

If the property includes a manufactured or mobile home,    227

| | | | | | |
|---|---|---|---|---|---|
| *A. Did you make any alterations to the home? | ☐ | ☐ | ☐ | ☐ | 228 |
| If yes, please describe the alterations: _____ | | | | | 229 |
| *B. Did any previous owner make any alterations to the home? | ☐ | ☐ | ☐ | ☐ | 230 |
| *C. If alterations were made, were permits or variances for these alterations obtained? | ☐ | ☐ | ☐ | ☐ | 231 |

**10. FULL DISCLOSURE BY SELLERS**    232

  A. Other conditions or defects:    233

    *Are there any other existing material defects affecting the property that a prospective buyer should know about? ....... ☐ ☐ ☐ ☐    234 / 235

  B. Verification    236

    The foregoing answers and attached explanations (if any) are complete and correct to the best of Seller's knowledge and Seller has received a copy hereof. Seller agrees to defend, indemnify and hold real estate licensees harmless from and against any and all claims that the above information is inaccurate. Seller authorizes real estate licensees, if any, to deliver a copy of this disclosure statement to other real estate licensees and all prospective buyers of the property.    237 / 238 / 239 / 240

    _____    241

| _____ | _____ | _____ | _____ |
|---|---|---|---|
| Seller | Date | Seller | Date |

If the answer is "Yes" to any asterisked (*) items, please explain below (use additional sheets if necessary). Please refer to the line number(s) of the question(s).    242 / 243

244
245
246
247
248
249
250
251
252
253
254
255
256

_____

Docusign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**

*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## II. NOTICES TO THE BUYER                                                           257

**1. SEX OFFENDER REGISTRATION**                                                       258
   INFORMATION REGARDING REGISTERED SEX OFFENDERS MAY BE OBTAINED FROM LOCAL LAW ENFORCEMENT    259
   AGENCIES. THIS NOTICE IS INTENDED ONLY TO INFORM YOU OF WHERE TO OBTAIN THIS INFORMATION AND IS NOT    260
   AN INDICATION OF THE PRESENCE OF REGISTERED SEX OFFENDERS.                          261

**2. PROXIMITY TO FARMING/WORKING FOREST**                                             262
   THIS NOTICE IS TO INFORM YOU THAT THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE MAY LIE IN    263
   CLOSE PROXIMITY TO A FARM OR WORKING FOREST. THE OPERATION OF A FARM OR WORKING FOREST    264
   INVOLVES USUAL AND CUSTOMARY AGRICULTURAL PRACTICES OR FOREST PRACTICES, WHICH ARE PROTECTED    265
   UNDER RCW 7.48.305, THE WASHINGTON RIGHT TO FARM ACT.                               266

**3. OIL TANK INSURANCE**                                                              267
   THIS NOTICE IS TO INFORM YOU THAT IF THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE UTILIZES    268
   AN OIL TANK FOR HEATING PURPOSES, NO COST INSURANCE MAY BE AVAILABLE FROM THE POLLUTION LIABILITY    269
   INSURANCE AGENCY.                                                                   270

## III. BUYER'S ACKNOWLEDGEMENT                                                        271

**1. BUYER HEREBY ACKNOWLEDGES THAT:**                                                 272

   A. Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by    273
      utilizing diligent attention and observation.                                    274

   B. The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and    275
      not by any real estate licensee or other party.                                  276

   C. Buyer acknowledges that, pursuant to RCW 64.06.050(2), real estate licensees are not liable for inaccurate information    277
      provided by Seller, except to the extent that real estate licensees know of such inaccurate information.    278

   D. This information is for disclosure only and is not intended to be a part of the written agreement between the Buyer and Seller.    279

   E. Buyer (which term includes all persons signing the "Buyer's acceptance" portion of this disclosure statement below) has    280
      received a copy of this Disclosure Statement (including attachments, if any) bearing Seller's signature(s).    281

   F. If the house was built prior to 1978, Buyer acknowledges receipt of the pamphlet *Protect Your Family From Lead in Your Home*.    282

   DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT ARE PROVIDED BY SELLER BASED ON SELLER'S    283
   ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE. UNLESS BUYER    284
   AND SELLER OTHERWISE AGREE IN WRITING, BUYER SHALL HAVE THREE (3) BUSINESS DAYS FROM THE DAY    285
   SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO RESCIND THE AGREEMENT BY    286
   DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. YOU    287
   MAY WAIVE THE RIGHT TO RESCIND PRIOR TO OR AFTER THE TIME YOU ENTER INTO A SALE AGREEMENT.    288

   BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT AND ACKNOWLEDGES    289
   THAT THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE    290
   LICENSEE OR OTHER PARTY.                                                            291

                                                                                       292
_____        _____        _____        _____        293
Buyer                          Date                    Buyer                          Date

**2. BUYER'S WAIVER OF RIGHT TO REVOKE OFFER**                                         294
   Buyer has read and reviewed the Seller's responses to this Seller Disclosure Statement. Buyer approves this statement and    295
   waives Buyer's right to revoke Buyer's offer based on this disclosure.              296

                                                                                       297
_____        _____        _____        _____        298
Buyer                          Date                    Buyer                          Date

**3. BUYER'S WAIVER OF RIGHT TO RECEIVE COMPLETED SELLER DISCLOSURE STATEMENT**        299
   Buyer has been advised of Buyer's right to receive a completed Seller Disclosure Statement. Buyer waives that right.    300
   However, if the answer to any of the questions in the section entitled "Environmental" would be "yes," Buyer may not waive    301
   the receipt of the "Environmental" section of the Seller Disclosure Statement.     302

*Stephen M Fry*        03/09/25                                                        303
_____        _____        _____        _____        304
Buyer                          Date                    Buyer                          Date

Seller is a Bankruptcy Trustee and is exempt from providing these disclosures.

_____        _____        _____        _____
SELLER'S INITIALS              Date                    SELLER'S INITIALS              Date

DocuSigned by:
*Michael P Klein, Trustee*        3/17/2025
49E6BD356B5C4F7...

Audocusign Envelope ID: F8F559F4-8F4C-4A76-9B62-53C01C717418

Form 22T
Title Contingency Addendum
Rev. 7/23
Page 1 of 1

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## TITLE CONTINGENCY ADDENDUM TO
## PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated **February 17, 2025**                                    1

between **Stephen M Fry**                                            ("Buyer")   2
          Buyer                      Buyer

and **Trustee for Smith**                                            ("Seller")   3
          Seller                      Seller

concerning **3057    42nd Avenue W**          **Seattle**      **WA  98199**    (the "Property").   4
          Address                      City           State   Zip

1. **Title Contingency**. This Agreement is subject to Buyer's review of a preliminary commitment for title insurance,   5
together with any easements, covenants, conditions and restrictions of record. Buyer shall have ___15___   6
days (5 days if not filled in) from ☒ the date of Buyer's receipt of the preliminary commitment for title insurance;   7
or ☐ mutual acceptance (from the date of Buyer's receipt, if neither box checked) to give notice of Buyer's   8
disapproval of exceptions contained in the preliminary commitment. If Buyer receives the preliminary   9
commitment before mutual acceptance, Buyer's time to review shall begin on mutual acceptance. The   10
preliminary commitment delivered for review under this contingency need not identify Buyer as the insured.   11

Seller shall have _____ days (5 days if not filled in) after Buyer's notice of disapproval to give Buyer   12
notice that Seller will clear all disapproved exceptions. Seller shall have until the Closing Date to clear all   13
disapproved exceptions.   14

If Seller does not give timely notice that Seller will clear all disapproved exceptions, Buyer may terminate this   15
Agreement within 3 days after the deadline for Seller's notice. In the event Buyer elects to terminate the   16
Agreement, the Earnest Money shall be returned to Buyer.  If Buyer does not timely terminate the Agreement,   17
Buyer shall be deemed to have waived all objections to title, which Seller did not agree to clear.   18

2. **Supplemental Title Reports**. If supplemental title reports disclose new exception(s) to the title commitment,   19
then the above time periods and procedures for notice, correction, and termination for those new exceptions   20
shall apply to the date of Buyer's receipt of the supplemental title report. The Closing date shall be extended as   21
necessary to accommodate the foregoing times for notices.   22

3. **Marketable Title**. This Addendum does not relieve Seller of the obligation to provide marketable title at Closing   23
as provided for in the Agreement.   24

_SMF_  03/09/2025          _MPkt_  3/17/2025  |  4:23 PM PDT
Buyer's Initials    Date          Buyer's Initials    Date          Seller's Initials    Date          Seller's Initials    Date

Docusign Envelope ID: F8F959F4-8F4C-4A76-9B62-53C01C717418

Form 42A
Agency Disclosure – Multiple Brokers
Rev. 1/24
Page 1 of 1

**AGENCY DISCLOSURE
MULTIPLE BROKERS**

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated    3/4/2025                                        1

between    Stephen M Fry                                                                    ("Buyer")    2
          Buyer                                    Buyer

and    Michael P. Klein, bankruptcy trustee for Melanie Smith   24-10218                                ("Seller")    3
         Seller                                   Seller

concerning    3057 42nd Ave W              Magnolia          WA        98199        (the "Property").    4
            Address                          City                  State   Zip

This form is for use when more than one broker represents one or both of the parties.  The Agency Disclosure on page    5
one of the Agreement is modified to include the following additional disclosure:    6

Additional Buyer Broker(s):    7

| | | |
|---|---|---|
| Windermere Magnolia | 6534 | Buyer represented by:    8 |
| Buyer Brokerage Firm | MLS Office No. | ☑ Buyer Broker    9 |
| Jenni Sandmeyer | 110761 | ☐ Buyer Broker/Listing Broker (limited dual agent)    10 |
| Buyer Broker (Print) | MLS LAG No. | |
| | | 11 |
| Buyer Broker DOL License No. | Firm DOL License No. | |

| | | |
|---|---|---|
| | | Buyer represented by:    12 |
| Buyer Brokerage Firm | MLS Office No. | ☐ Buyer Broker    13 |
| | | ☐ Buyer Broker/Listing Broker (limited dual agent)    14 |
| Buyer Broker (Print) | MLS LAG No. | |
| | | 15 |
| Buyer Broker DOL License No. | Firm DOL License No. | |

Additional Listing Broker(s):    16

| | | |
|---|---|---|
| | | Seller represented by:    17 |
| Listing Brokerage Firm | MLS Office No. | ☐ Listing Broker    18 |
| | | ☐ Listing Broker/Buyer Broker (limited dual agent)    19 |
| Listing Broker (Print) | MLS LAG No. | |
| | | 20 |
| Listing Broker DOL License No. | Firm DOL License No. | |

| | | |
|---|---|---|
| | | Seller represented by:    21 |
| Listing Brokerage Firm | MLS Office No. | ☐ Listing Broker    22 |
| | | ☐ Listing Broker/Buyer Broker (limited dual agent)    23 |
| Listing Broker (Print) | MLS LAG No. | |
| | | 24 |
| Listing Broker DOL License No. | Firm DOL License No. | |

| | | | |
|---|---|---|---|
| *SMF*    03/09/2025 | | *MPKT*    3/17/2025 | 4:23 PM PDT |
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: F8F5B3F4-8F4C-4A76-9B62-53C01C717418
DocuSign Envelope ID: F8F5B3F4-8F4C-4A76-9B62-53C01C717418

**INSPECTION WAIVER ADDENDUM TO
PURCHASE AND SALE AGREEMENT**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated __March 04, 2025__ 1

between __Stephen M Fry__ ("Buyer") 2
_____Buyer_____ _____Buyer_____

and __Trustee for Smith__ ("Seller") 3
_____Seller_____ _____Seller_____

concerning __3057____42nd Avenue W_____ __Seattle__ __WA__ __98199__ (the "Property"). 4
_____Address_____ ___City___ _State_ _Zip_

1. ☒ **WAIVER OF INSPECTION.** Buyer has been advised to obtain inspections of the Property including, but not 5
limited to, the structural, mechanical and general condition of the improvements on the Property, compliance 6
with building and zoning codes, an inspection of the Property for hazardous materials, a pest inspection, and 7
a soils/stability inspection. Buyer elects to waive the right to obtain inspections of the Property and purchase 8
the Property in its present condition. Buyer has not relied on representations by Seller, Listing Broker, or Buyer 9
Broker with regard to the condition of the Property, the suitability of the Property for Buyer's intended use, or 10
Buyers decision to forego inspections. 11

2. ☐ **PRE-INSPECTION CONDUCTED.** Buyer, prior to mutual acceptance of this Agreement, conducted 12
inspections of the Property and the improvements on the Property including, but not limited to, the structural, 13
mechanical and general condition of the improvements on the Property, compliance with building and zoning 14
codes, an inspection of the Property for hazardous materials, a pest inspection, and a soils/stability inspection. 15
This Agreement is not conditioned on the results of such inspections and Buyer acknowledges that the decision 16
to purchase the Property is based on Buyer's prior inspection and approval, prior to Closing, by the inspector who recommended the 17
by Seller, Listing Broker or Buyer Broker with regard to the condition of the Property or the suitability of the 18
Property for Buyer's intended use. Buyer shall not provide the inspection report, or portions of the report, to 19
Seller, unless Seller requests otherwise. 20

3. ☐ **MODIFICATIONS/REPAIRS.** Based upon the results of Buyer's pre-inspection of the Property, Seller shall 21
make the following modifications and/or repairs to the Property described below or on the attached pages. 22

23

24

25

26

27

The modifications and/or repairs shall be accomplished at Seller's expense in a commercially reasonable 28
manner and in accordance with all applicable laws no fewer than _____ days (3 days if not filled in) prior to 29
the Closing Date. In the case of hazardous materials, "repair" means removal or treatment (including but not 30
limited to removal or, at Seller's option, decommissioning of any oil storage tanks) of the hazardous material 31
at Seller's expense as recommended by and under the direction of a professional selected by Seller. Seller's 32
repairs are subject to re-inspection and approval, prior to Closing, by the inspector who recommended the 33
modifications and/or repairs, if Buyer elects to order and pay for such re-inspection. If Buyer agrees to pay for 34
any repairs prior to Closing, the parties are advised to seek the counsel of an attorney to review the terms of 35
that agreement. 36

4. **ON-SITE SEWAGE DISPOSAL SYSTEMS ADVISORY.** Buyer is advised that on-site sewage disposal 37
systems, including "septic systems," are subject to strict governmental regulation and occasional malfunction 38
and even failure. Buyer is advised to consider conducting an inspection of any on-site sewage system by 39
including an appropriate on-site sewage disposal inspection contingency such as NWMLS Form 22S (Septic 40
Addendum). 41

| _SMF_ | 03/09/2025 | | | _MPkt_ | 3/17/2025 \| 4:23 PM PDT | | |
|---|---|---|---|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Docusign Envelope ID: F8F953F2-8F4C-4A76-9B62-53C01C717418

Form 90
Notice
Rev. 3/03
Page 1 of 1

©Copyright 2003
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## NOTICE

The following is part of the Purchase and Sale Agreement dated **March 04, 2025** _____ 1

between **Stephen M Fry** _____ _____ ("Buyer") 2
            Buyer                    Buyer

and **Trustee for Smith** _____ _____ ("Seller") 3
         Seller                   Seller

concerning **3057** **42nd Avenue W** **Seattle** **WA** **98199** (the "Property"). 4
       Address                 City         State    Zip

WAIVER OF INSPECTION. Buyer has been advised to obtain inspections of the Property including, but not 5
limited to, the structural, mechanical and general condition of the improvements on the Property, compliance 6
with building and zoning codes, an inspection of the Property for hazardous materials, a pest inspection, and 7
a soils/stability inspection. Buyer elects to waive the right to obtain inspections of the Property and purchase 8
the Property in its present condition. Buyer has not relied on representations by Seller, Listing Broker, or Buyer 9
Broker with regard to the condition of the Property, the suitability of the Property for Buyer's intended use, or 10
Buyers decision to forego inspections. 11
 12
 13

Authentisign
*Stephen M Fry*    03/09/25

_____           _____ 14
                  Date                                  Date

Docusign Envelope ID: F8F559F4-8F4C-4A76-9B62-53C01C717418

 **First American**

## EXHIBIT A

File No.: 4209-4148179

The Land referred to herein below in situated in the County of King, State of Washington, and is described as follows:

LOTS 1 AND 2, BLOCK 4, HIAWATHA PARK SECOND ADDITION TO THE CITY OF SEATTLE, ACCORDING TO THE PLAT THEREOF RECORDED IN <u>VOLUME 5 OF PLATS, PAGE 21</u>, IN KING COUNTY, WASHINGTON.

327180021500

3057 42nd Ave W
Seattle, Washington 98199

DocuSigned by:

*Michael P Klein, Trustee*

40FFBD3F5B5C4E7...

3/17/2025 | 4:23 PM PDT

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.