The Honorable Christopher M Alston
Chapter 7
Hearing Location: United States Bankruptcy
Court, Courtroom 7206,
700 Stewart Street,
Seattle, WA 98101
Hearing Date: MOTION SHORTENING
AT JUDGE'S DISCRETION
FOR REQUESTED HEARING  4/10/25
Hearing Time: 9:30 am
Response Date: PROPOSED FOR THE
ABOVE FUTURE HEARING: 4/9/25 5pm

UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>Melanie A Smith aka M A Smith aka M Smith<br><br>    Debtor | ) NO. 24-10218-CMA<br>) DEBTOR'S MOTION FOR<br>) DETERMINATION OF<br>) AMOUNTS OWING TO FIRST<br>) AND SECOND MORTGAGES<br>) AFTER REDUCTION FOR<br>) STATUTE OF LIMITATIONS<br>) BARRED MISSED PAYMENTS<br>) AND CHARGES AND COSTS<br>) AND MEMORANDUM IN<br>) SUPPORT |

COMES NOW, Debtor, Melanie A Smith, by and through her attorney William C Budigan, and moves the Court for an Order ON MOTION FOR DETERMINATION OF AMOUNTS OWING TO FIRST AND SECOND MORTGAGES AFTER REDUCTION FOR STATUTE OF LIMITATIONS BARRED MISSED PAYMENTS AND CHARGES AND COSTS AND MEMORANDUM IN SUPPORT and  states as follows:

Background for Motion

Debtor Melanie Smith has lived in her home for 35 years.

Foreclosure sale of the first mortgage by creditor US Bank is set for 4/11/25 AM.

Bankruptcy Trustee has a Real Estate listing  agent and an offer for $1.280M.

1

Debtor says this is under the expected appraisal price of $1.5M

Debtor herself has an offer of $1.4M with an escalator clause to $1.5M.

Debtor has a homestead exemption of $968,333. See EX D

RELIEF REQUESTED

Debtor has no debts other than the first and second mortgages and has moved for a determination of the balances due on those mortgages per six years statute of limitations for unpaid mortgage payments, reducing them down, as follows:

1st mortgage position holder US Bank claims an amount for 4/11/25 foreclosure sale. See EX B **10/9/24** Notice of Trustee's Sale for 2/14/25 foreclosure sale; attaching Notice of Foreclosure claiming payments since 12/1/18= $241,156.91 principal,$64,624.38 interest, costs and advances of $70,704.34 for a total of $376,485.63 accelerated amount due and $192,734.28 default cure if done 11 days before foreclosure sale. The recent pay off amount of the first mortgage from the lender's servicer is dated 2/7/25 is for $384,403.83. See EX E . Plus two more months of March and April 2025 of mortgage payments of $1,907.42 each = another $3,814.84, for a new total alleged accelerated amount owing by Debtor of about $388,218.67.

Debtor moves the court to declare that the reinstatement amount of the arrears only loan figure ( not accelerated principal amount ) from the lender's servicer, Quality Loan Service Corporation, dated 2/7/25 ( See EX C) of $193,338.52 through 2/13/25 plus the March and April 2025 mortgage payments of $1,907.42 each = another $3,814.84, is a new total owing of **$197,153.36 for just arrears and adjusted below by a reduction applied for foreclosure costs barred by the statute of limitations as described below** and moves to allow Debtor to make time payments in the future on the unpaid principal balance by payment of the WA State HAP grant of $60K and $20K cash and the balance of the adjusted loan amount due of about $100,000 ( about 197K -18K reduction minus 60K minus 20K ) .

However, **these pre-foreclosure arrears AND accelerated amounts above include foreclosure costs amounts disputed by DEBTOR for statute of limitations barred costs of $18,219.43 ( See Ex D for notated dates and amounts barred by statute of limitations), but DEBTOR IS NOT disputing as barred the other amounts. Debtor REQUESTS REDUCTIONS DOWN TO *$369,999.24* for accelerated amount ($388,218.67-$18,219.43) and down to *$178,933.93 for* default cure before**

2

**foreclosure sale ($197,153.36 -18,219.43) and so moves for the court to declare judgment reducing the amounts owed by these time barred foreclosure costs .**

*As explained below: foreclosure costs incurred before 10/10/18 are barred because more than 6 years before 10/9/24 when lender recorded Notice of Default and Notice of Foreclosure to collect on arrears and this was after stay had been lifted 8/23/24 and after mortgage payments expired under stays and lender did not enforce within 30 days of lifting of the stay, so they can only go back 6 years from the Notice of Default recording 10/9/24, OR from 10/10/18, per 11 USC section 108 (b) (2).*

**MEMORANDUM OF LAW**

**Statute of Limitations on Missed Mortgage Payments**

The Washington State statute of limitations for breach of contract to pay mortgage payments AND for foreclosure under a deed of trust is six years. Walcker v. Benson & McLaughlin, 79 Wn. App. 739, 743, (1995) (The six year statute of limitations on an action for a contract in writing applies to the foreclosure of a mortgage on real property. Since Washington's deed of trust statute, RCW 61.24, does not refer to any limitation period for non-judicial foreclosures, the limitation period for foreclosure of mortgages applies). The "final" statute of limitations period to collect all the debt payments does not begin to run until six years after the lender **accelerates** the debt or the debt fully **matures.**

On July 20, 2023, the Washington Supreme Court issued two companion opinions in <u>Copper Creek (Marysville) Homeowners Association v. Kurtz</u>, <u>QUALITY LOAN SERVICE CORPORATION OF WASHINGTON , WILMINGTON SAVINGS FUND SOCIETY, FSB, and SELENE FINANCE, LP ,</u> 1 Wash.3d–, 532 P.3d 601 (Wash. 2023 <u>No. 100918-6)</u> AND in <u>Merritt v. USAA Federal Savings Bank</u> ,1 Wash.3d 692 (Wash. 2023). Both cases rule that a bankruptcy discharge does NOT trigger the start of statute of limitations to enforce a deed of trust and the Court explained that the six-year statute of limitations period to collect a missed payment on mortgage installment debt begins to run on the date the borrower misses a payment. The statute begins to run when each monthly payment is not paid. Westar Funding, Inc. v. Sorrels, 157 Wn. App. 777, 239 P.3d 1109, 1113 (Wash. Ct. App. 2010). The "final" statute of limitations period to collect the debt in any manner does not begin to run until six years after the lender **accelerates** the debt or the debt fully **matures.** Citing: Merceri v. Bank of New York Mellon, 4 Wn. App. 2d at 760 (2020); A.A.C. Corp. v. Reed, 73 Wn.2d 612, 615, 440 P.2d 465 (1968).

<u>Acceleration Triggers the Statute of Limitations for all payments owing after the acceleration</u>

The promissory notes executed by the Merritts were installment notes because they are payable in periodic installments with a final payment coming due on a future maturity date. Promissory notes, including the ones in the Merritt case, often contain clauses permitting the creditor to **accelerate the note** in case of a default. Acceleration causes the entire remaining balance to become due immediately, "and the statute of limitations is triggered for all installments that had not previously become due." 4518 S. 256th, LLC v. Karen L. Gibbon, PS, 195 Wn. App. 423, 434-35, 382 P.3d 1 (2016). **Acceleration occurs only by some explicit and affirmative action** "by which the holder of the note makes known to the payors that he **intends to declare the whole debt due.**" Id. at 435 (quoting Glassmaker v. Ricard, 23 Wn. App. 35, 37, 593 P.2d 179 (1979) (quoting Weinberg v. Naher, 51 Wash. 591, 594, 99 P. 736 (1909)). "Where there has been no explicit acceleration of the note, the statute of limitations does not run on the entire amount due and **non-judicial foreclosure can be begun within six years of any particular installment default and the amount due can be the then principal amount owing.**"18STOEBUCK &WEAVER,supra, § 18.34, at 87 (2d ed. Supp. 2023).

The WA Supreme Court in <u>Merritt</u> wrote:

Applying the principles outlined above to this case, the six-year statute of limitations on each individual missed installment payment began to run on the due date of each missed payment. ***Thus, there are some individual installment payments that may now be barred by the six-year statute of limitations.*** But the final statute of limitations has not yet begun to run on any of the notes or deeds of trust. That final statute of limitation will not begin to run on any note or its corresponding deed of trust until that note reaches maturity. Wash. Fed., 195 Wn. App. at 663 (citing Hopper v. Hemphill, 19 Wn. App. 334, 335-36, 575 P.2d 746 (1978);Westar Funding, 157 Wn. App. at 784; 31.


<u>POLICY Affirms  Statutes of Limitations for Missed Morgtage payments</u>

The court in **LUV v. WEST COAST SERVICING, INC.,  ( Div I 4/1/24** No. 83959-4-I unpublished opinion; an unpublished case after 2013, which under GR 14.1: may be cited as nonbinding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate) **explains the policy behind affirming statutes of limitations against missed mortgaged payments:**

...Moreover, we agree with Luv that it is against public policy to allow a deed of trust to be enforced without limits. Statutes of limitations promote justice and ensure fairness by "preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Langlois*

4

Case 24-10218-CMA    Doc 139    Filed 04/09/25    Ent. 04/09/25 03:12:51    Pg. 4 of 19

*v. BNSF Ry. Co.*, 8 Wn.App. 2d 845, 862, 441 P.3d 1244 (2019). "[T]hese goals are generally applicable in foreclosure proceedings, whether based on mortgages or deeds of trust." *Walcker*, 79 Wn.App. at 746 (stating that "the goals are to eliminate the fears and burdens of threatened litigation and to protect a defendant against stale claims.")

**Impact of bankruptcy Filing on Mortgage Statute of limitations**

Copper Creek and Merritt clarify that a bankruptcy filing does not change the contractual due dates of mortgage payments and even a personal discharge for liability for the debt does NOT accelerate or make mature the contractual payments .

From Merritt:

*Johnson v. Home State Bank*, 501 U.S. 78, 84 , 111 S.Ct. 2150 , 115 L.Ed.2d 66 (1991). "Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor *in personam*-while leaving intact another-namely, an action against the debtor *in rem*." *Id.* The creditor's lien survives bankruptcy and remains with the real property until foreclosure. *Dewsnup v. Timm*, 502 U.S. 410, 417 , 112 S.Ct. 773 , 116 L.Ed.2d 903 (1992). Bankruptcy does not accelerate an installment note or trigger the statute of limitations on enforcement of a deed of trust, it only eliminates the debtor's personal liability. *Copper Creek* at 21. The debtor's in rem liability remains intact: "The debt, the note, and the payment schedule remain unchanged." *Id.*

When a borrower files for bankruptcy and receives a discharge, the borrower is relieved of personal liability on the debt. However, the **Washington Supreme Court** in Copper Creek and in Merritt **agreed that a *discharge* does not extinguish the underlying debt.** The discharge likewise has no effect on the deed of trust recorded against the real property as security, and a **creditor's right to foreclose on the deed of trust passes through the bankruptcy unimpaired.** Moreover, a bankruptcy discharge does not void or modify the contractual terms a borrower agreed to prior to bankruptcy. Accordingly, the Washington Supreme Court in Copper Creek and in Merritt confirmed that, after discharge, each installment payment for the debt continues to come due according to the contractual terms. **A bankruptcy discharge does not trigger the "final" installment payment's due date or accelerate the debt prematurely.** In reaching its conclusion, the court **disavowed** a prior Washington Court of Appeals case, Edmundson v. Bank of America, 194 Wn. App. 920, (2016), *dicta* suggesting a different outcome. Specifically, any implication that the statute of limitations stops accruing on missed payments due under an installment contract following a bankruptcy discharge is **not** the law in Washington, per Copper Creek and Merritt.

5

**BUT a bankruptcy Stay can impact the statute of limitations–NOT by tolling the statute of limitations, but by requiring the creditor to enforce the missed payments within 30 days of stay lifting or those missed payments within the prior six years of such attempt at enforcement are lost–barred by the statute of limitations and only future payments missed after that date are enforceable.**

Washington state laws :

RCW 4.16.230 Statute tolled by judicial proceedings, states:

When the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action.

This would mean that all periods that all bankruptcy stays are in place during all bankruptcy cases of a DEBTOR toll the statute of limitations, so look for all stays of all bkcy cases and gaps of periods because during those periods the 6 years statute of limitations expiring each such month bars collecting those payments missed.

Impact of US Bankruptcy laws

In Hazel v. Van Beek, 135 Wash. 2d 45 (1998), the Washington State Supreme Court **ruled that the bankruptcy stay does NOT toll the statute of limitations for the months under the stay and that if the statute of limitations expires during the stay then those months under the stay are lost to enforcement unless enforced within 30 days after expiration of the stay.**

Lois Hazel foreclosed on real property of Leonard Van Beek to satisfy a judgment Hazel had won against Van Beek in his bankruptcy in Western District of Washington on 11/2/1983. On **January 31, 1984, Van Beek filed a new petition for chapter 13 bankruptcy.** This **bankruptcy was dismissed just over six months later, on August 7, 1984**. Bankruptcy filings **stay** enforcement of judgment liens during the pendency of the bankruptcy proceeding, **11 U.S.C. § 362(a)(2), (4), (5),** so Hazel was precluded from enforcing her judgment during those **six months in 1984**. No legal barrier prevented Hazel from enforcing her judgment after August 7, 1984. Not until August **1993 ( 9 years after**

6

**bankruptcy ended)** did Hazel obtain an amended writ of execution against real estate owned by Van Beek.

The court ruled: Because Hazel failed to complete all steps of execution on the judgment prior to the expiration of the statutory life of the judgment, we hold Hazel's judgment expired and is unenforceable.

On November 17, 1993, 23 days after notice was mailed, Van Beek filed objections to the sale. He claimed the judgment and judgment lien had already expired on November 2, 1993, 10 years from the date of entry of the judgment. Because the judgment and lien expired, Van Beek claimed the court could not confirm the sale, and the property should be returned free and clear to Van Beek. Hazel **argued that the 10-year period to enforce a judgment was *tolled* for six months in 1984 when she was precluded from enforcing the judgment because of Van Beek's bankruptcy proceedings stay. The Court rejected this argument.**

**The Washington Supreme Court ruled that the bankruptcy stay does NOT toll the statute of limitations for the months under the stay and that if the statute of limitations expires during the stay then those months under the stay are lost to enforcement unless enforced within 30 days after expiration of the stay.**

The court wrote:

> **11 U.S.C. § 108(c) provides:**
>
> [I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action ... on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay ... with respect to such claim.
>
> The majority of jurisdictions have interpreted section 108(c)(1) as **not** tolling a state statute of limitation in the normal fashion. See Rogers v. Corrosion Prods., Inc., 42 F.3d 292, 296 (5th Cir.1995); Thurman v. Tafoya, 895 P.2d 1050 , 1055 (Colo.1995); Don Huddleston Constr. Co. v. United Bank & Trust Co., 933 P.2d 944 , 947 (Okla.Civ.App.1996) (Huddleston). Thurman`s analysis is noteworthy:

7

**By its terms, section 108(c) does not toll any applicable statute of limitations period. Instead, the statute of limitations period continues to run.** *If the limitations period expires while the bankruptcy stay is in effect*, then section **108(c) provides creditors with an *extra thirty days* to pursue a claim once the creditor receives notice that the bankruptcy stay has been lifted. See 11 U.S.C. § 108(c)(2).** The phrase "suspension of such period" in section 108(c)(1) does *not* operate *to stay the running of statute of limitations periods*. Instead, this section incorporates suspension provisions that are expressly prescribed by other federal or state statutes. Thurman, 895 P.2d at 1055 (footnote omitted); accord Huddleston, 933 P.2d at 947; Rogers, 42 F.3d at 297.

A minority of jurisdictions have construed section 108(c) as effectively tolling a state's statute of limitation or statute of duration for an equal amount of time as a bankruptcy proceeding stays the creditor from enforcing a judgment. See, e.g., Major Lumber Co. v. G & B Remodeling, Inc., 817 S.W.2d 474 (Mo.Ct.App.1991), and cases cited therein. Two different federal circuit courts, using broad language, have declared section 108(c) "tolls" a statute of limitation during a bankruptcy. See In re Morton, 866 F.2d 561, 566 (2d Cir.1989); In re Hunters Run Ltd. Partnership, 875 F.2d 1425, 1429 (9th Cir.1989) (Hunters Run).

We are not convinced by Major Lumber Co. and find more convincing the majority position expressed in Thurman and Rogers. Additionally, the broad language in Hunters Run and In re Morton has subsequently been criticized in those federal circuits. In re Morton's broad language was subsequently limited in Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1073-74 (2d Cir.1993). Aslanidis expressly agreed with Thurman: Section 108(c)(1) does **not** itself provide for tolling of a statute of limitation it "merely incorporates suspensions of deadlines that are expressly provided in other federal or state statutes." Aslanidis, 7 F.3d at 1073. **Otherwise, section 108 merely "tolls" a statute of limitation by allowing the creditor 30 days to act after the bankruptcy stay is lifted in those cases where the limitation period expires during the bankruptcy stay.** Id. at 1073-74.

The **Ninth Circuit** has stepped back from its broad language in Hunters Run as well. In In re Southern Cal. Plastics, Inc., 208 B.R. 178 (B.A.P. 9th Cir.1997), a lienholder was required under state law to obtain a judgment

8

on the lien within three years, but the debtor filed for bankruptcy, and **the three-year period expired while the bankruptcy stay was in effect.** The federal bankruptcy court ruled, "Under section 108(c)(2), [the lienholder] still has a thirty-day period after notice that the automatic stay has terminated or expired within which to renew his lien or obtain a judgment." Southern Cal. Plastics, 208 B.R. at 181. ***<u>The court did not "toll" the state statute of limitation for an equal amount of time as the bankruptcy stay prevented the creditor from enforcing the lien.</u>***

The life-span of Hazel's judgment lien did not expire during the 1984 bankruptcy, so section 108(c)(2) does not apply. Since no applicable state law tolled the life of Hazel's judgment lien, **section 108(c)(1) cannot be used to extend the life of her lien.** Section 108(c) does not support Hazel's claim that the 1984 bankruptcy should toll the statutory life of her judgment.

....In that Van Beek's 1984 bankruptcy petition did nothing to preclude Hazel from enforcing her judgment between August 1984 and November 2, 1993, we find no facts in this case which would permit us to equitably extend the life of her judgment. While we sympathize with her plight, this does not excuse her unjustifiable delay in executing the judgment against Van Beek.

**FIRST MORTGAGE HISTORY: and no impact of Stays on statute of limitations for Mortgage payments missed except on old ,barred costs for foreclosure**

On or about April 28, 2003, Debtor Melanie A Smith executed a note in favor of Arboretum Mortgage Corporation in the original principal amount of $322,700 . Exhibit G. The interest rate was fixed at 5.75% for 30 years ( maturity 5/1/33) . The monthly mortgage amount was $1,883.19 and it included escrow/reserve for property taxes and insurance. Exhibit G. The debt was secured by a deed of trust . Exhibit H. It was assigned to Citimortgage 5/16/2013 and then assigned to Federal National Mortgage Association on 10/13/2014.

The loan was transferred to Creditor Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not Individually But As Trustee for Pretium Mortgage Acquisition Trust ("Creditor") on 12/20/18 and then again after 8/23/24 to US Bank Trust National

9

Association, Not IN Its Individual Capacity But Solely AS Owner Trustee for RCF 2 Acquisition Trust ( "Creditor" ) ,who is the current holder of the Note.

Quality Loan Service Corp. is the Trustee of the Deed of Trust ( See EX B).

Selene is the loan servicer. See Ex E ,C.

<u>YEARS IN BANKRUPTCY, BUT BIG gaps in bankruptcy filings allowing the statute of limitations to run during the gaps when not in bankruptcy or under STAYS</u>

Debtor filed for protection under Chapter 7 of Title 11 of the United States Code on 10/4/04 and that case was closed three months later on 1/18/05 (04-49413-PHB) and then in Chapter 7 again 08/01/11 and closed three months later 11/07/11 (11-19182-TWD). She was in Chapter 13 from 06/25/13 through 12/11/18 for five years and six months (13-15848-MLB), but the clerks office also shows for much of that time she was under Chapter 13 and case number 14-15325-TWD from 07/16/14 through 04/17/20 for 5.9 months. She made years of payments under her Ch13, but just prior to completion of the Ch 13 , the court converted it to a Ch7. Of late, she has been in Chapter 7 starting 01/31/24 until present under case 24-10218-CMA (the Ch 7 was converted to Ch 13 6/6/24, but converted back to Ch 7 8/9/24).

***Thus, there was no bankruptcy case open and therefore no bankruptcy Stays effective to "toll" statute of limitations for any mortgage payments missed during:***

1/19/05-7/31/11   6.5 years–these missed payments on the first and second mortgages are all barred by 6 year S/L because not foreclosed in last 6 years ;

11/8/11-6/24/13   1.5 years–these missed payments on the first and second mortgages are all barred by 6 year S/L because not foreclosed in last 6 years ;

4/18/20-1/30/24    2yrs ,10 months–NOT S/L barred because within the last 6 years.

Prior to filing bankruptcy ,Creditor first mortgage had initiated foreclosure proceedings and the sale has been discontinued five times:

FIRST MORTGAGE Recorded documents against the title of the house:

| Recording Date | Name of Doc | Acceleration Date | Foreclosure Sale Date |
|---|---|---|---|
| 4/30/2003 | Deed of Trust | | |

| Date | Document | | |
|---|---|---|---|
| 4/30/2003 | Statutory Warranty Deed | | |
| 4/13/2006 | Balloon Document | | |
| 4/18/2006 | Deed of Trust | | |
| 5/12/2010 | NOTICE OF TRUSTEE'S SALE | AFTER 8/13/2010 | 8/2/2010 |
| 8/11/2010 | NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE (Originally set for 8/2/2010) | | |
| 6/22/2011 | NOTICE OF TRUSTEE'S SALE | AFTER 9/23/2011 | 9/12/2011 |
| 12/22/2011 | NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE (Originally set for 9/12/2011) | | |
| 4/30/2014 | NOTICE OF TRUSTEE'S SALE | AFTER 8/18/2014 | 8/29/2014 |
| 2/11/2022 | NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE (Originally set for 8/29/14) | | |
| 3/21/2023 | NOTICE OF TRUSTEE'S SALE | AFTER 7/17/2023 | 7/28/2023 |

| | | | |
|---|---|---|---|
| 2/21/2024 | NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE (Originally set for 7/28/23) | | |
| 10/9/2024 | NOTICE OF TRUSTEE'S SALE | AFTER 2/3/2025 | 2/14/2025 |
| 2/21/2024 | NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE (Originally set for 2/14/25) | | 4/11/25 foreclosure sale |

The current foreclosure sale is set for 4/11/25, having been continued from 2/14/25. Chicago Title cannot find any recordings after 2/21/24 .

The gaps in bankruptcy periods allowed the statute of limitations to run during times of foreclosure periods not stayed by bankruptcy, and that led to a history of foreclosure filings above for times out of bankruptcy–have a great impact on statute of limitations running when no stays and the great impact of **11 U.S.C. § 108(c) (2), barring creditors bringing collection on each payment and charge missed when under the stays and NOT collected upon with 30 days of the stay liftings. This is especially true of the** *second mortgage* **creditor which NEVER filed default notices or foreclosure sales at any time in or out of bankruptcy and much of its payments and charges are barred by the statute of limitations.**

.

**RECENT STAY LIFTED FOR First Mortgage US Bank**

First Mortgage Creditor was granted by the bankruptcy court Relief From Stay on 8/23/24 (doc 76). See EX F . A new notice of foreclosure sale was set for 2/14/25      ( See EX B) and was continued to 4/11/25.

**Impact of 11 U.S.C. § 108(c) (2)**

In the instant case of Melanie Smith, the first mortgage creditor here had her bankruptcy stay lifted as to the first mortgage and was allowed to initiate foreclosure sale for nonpayment of mortgage by bankruptcy court order of **8/23/24**, upon Creditor's motion.

12

See EX F . Under 11 U.S.C. § 108(c) (2), the first mortgage had 30 days until 9/22/24 to enforce collection for the missed mortgage payments older than 6 years before that date–meaning the Creditor could have arguably collected costs from as old as 8/24/18 (6 years before the stay was lifted 8/23/24) if enforced within 30 days of 8/23/24 or 9/22/24. BUT here, the first mortgage creditor did NOT file a notice of default and notice of trustee sale until 10/09/24–17 days AFTER the 30 day deadline, so it can not collect on payments 8/23/18 and older, barred by the 6 year statute of limitations. Furthermore, the first mortgage creditor can not collect on payments missed more than 6 years from the 10/09/24 notice of default and trustee sale, or payments or charges missed before 10/10/18 because that was the first enforcement action taken after the stay was lifted.

     But here, the first mortgage is only claiming from 12/01/18 to now 4/30/25 because first mortgage creditor claims that all payments were made before 12/01/18 and no payments made thereafter. 12/1/18 is closer in time than six years ( under six years ) before enforcement was last made 10/9/24. Therefore, there is no statute of limitations impact from bankruptcy on the first mortgage, EXCEPT for any amounts creditor first mortgage claims is due before 10/09/18.

The First Mortgage's servicer, Quality Loan Service Corp., payoff calculations dated 2/7/2025 in Exhibit C have a total $384,403.83 owing , BUT the amount owing should be reduced by all amounts for interests, late charges, escrow/impound, reconveyance fees and costs, Advances (posting, credit, title, prior foreclosure fees and costs, recording fee, mailing, postpone sale costs, publication, reset of sale, sale postponement fee, trustee fees, etc.), and incurred foreclosure fees and costs (trustee fees, posting/publication charges, and rescission recording) ***incurred prior to 10/10/2018. Such amounts are barred by the six year statute of limitations starting before enforcement was last made 10/9/24 with the filing of a notice of default and notice of Trustee's Sale ( Ex B) .***

     The **pre-foreclosure arrears AND accelerated amounts above include foreclosure costs amounts disputed by DEBTOR for statute of limitations barred costs of $18,219.43 ( See Ex D for notated dates and amounts barred by statute of limitations), but DEBTOR IS NOT disputing as barred the other amounts. Debtor REQUESTS REDUCTIONS DOWN TO *$369,999.24* for accelerated amount ($388,218.67-$18,219.43) and down to *$178,933.93* for default cure before foreclosure sale ($197,153.36 -18,219.43) and so moves for the court to declare judgment reducing the amounts owed by these time barred foreclosure costs .**

*Foreclosure costs incurred before 10/10/18 are barred because more than 6 years before 10/9/24 when lender recorded Notice of Default and Notice of Foreclosure ( See EX B) to collect on arrears and this was after STAY had been lifted 8/23/24 and after mortgage payments expired under stays and lender did not enforce within 30 days of lifting of the stay, so they can only go back 6 years from the Notice of default recording 10/9/24, OR from 10/10/18, per 11 USC section 108 (b) (2).*

**There is No genuine dispute regarding facts of missed payments and charges on US Bank, FIRST MORTGAGE , per Creditor's own documents, BUT DEBTOR disputes charges and costs older than 6 years and argues costs of $18,219.43 ( See Ex D) for notated dates and amounts barred by statute of limitations) older than 6 years before 10/09/24 or 10/10/18 must be barred by the statute of limitations.**

# No genuine dispute regarding of facts of missed payments and charges on *Second Mortgage of Deutsche Bank/ Newrez/ Shellpoint* , per Creditor's own documents in Ex I .

On or about April 13, 2006, Debtor Melanie A Smith executed a Balloon Payment Note, Balloon Rider and deed of Trust in favor of Plaza Home Mortgage ,Inc in the original principal amount of $350,000.00 ("Note"). The debt described by the Note is secured by a deed of trust ("Deed of Trust") properly recorded and creating a lien against property commonly described as 3057 42nd Avenue West, Seattle, WA ("the Property"). The interest rate was fixed at 11.250 for 15 years ( maturity 5/1/21) . The monthly mortgage amount is $1,907.42 dollars and it included escrow/reserve for property taxes and insurance. See EX. I Creditor's 6/21/24

14

Case 24-10218-CMA    Doc 139    Filed 04/09/25    Ent. 04/09/25 03:12:51    Pg. 14 of 19

Proof of Claim, Claim 2-1 p13-15 .

On 6/5/2009, the parties executed a Loan Modification Agreement on Balloon Mortgage , that, effective 6/1/2009, modified the principal balance to $344,913.11 and changed the interest rate to 7.02%. Effective 7/1/2009, the Modification also changed the monthly fixed payment to $2,379.33 (including reserves for property tax and insurance,paid in the first mortgage) . The maturity balloon date remained 5/1/21. Id. EX I p17-19.

Almost immediately, Debtor defaulted on the loan making only the 8/209 and 10/2009 payments .

Newrez, LLC DBA Shellpoint Mortgage Servicing is the servicer.

Second mortgage creditor filed a Proof of Claim herein on 6/21/24 attaching an accounting of all payments made or missed under the loan from 8/1/09 through 1/30/24. See Exhibit I Claim 2-1 ,hereto. Additionally, no payments were made after 1/30/24 and through 4/30/25.

The Proof of Claim Ex I shows: The following payments were missed during more than 6 years statute of limitations ago in the past (six years of statute of limitations before 4/30/25 is 4/30/19, so all payments missed **before** 4/30/19 **are barred by the statute of limitations** for enforcement of payment to creditor):

3 months in 2009 (8/09–$2,379.33 paid but reversed and NSF,11/09,12/09)

PLUS 12 months in 2010-2018 = 9 full years x 12 months = 108 months

PLUS 1/1/2019-4/30/2019=4 months, **SO SUB- TOTAL IS 115 MONTHS**)

 **EXCEPT** THAT SHE PAID $4,000 ON 4/2/10 AND $200 ON 2/8/10 = $4,200 AND THIS IS LESS THAN TWO MONTHS MORTGAGE PAYMENTS OF $2,379.33 X 2 = $4,758.66, SO THESE TWO PAYMENTS ARE 88% OF WHAT WAS OWING FOR THE

15

TWO MONTHS AND THEREFORE FOR ROUGH CALCULATION, TWO MONTHS SHOULD BE **EXCLUDED** FROM THE **115** MONTHS ABOVE PAYMENTS MISSED, **SO THE TOTAL MONTHLY PAYMENTS MISSED in the six years before 4/30/25 ARE 113 MONTHS AT $2,379.33 = $268,864.29** plus future payments until the loan principal is all paid off .

BUT THAT IS NOT WHAT THE DEBTOR OWES BECAUSE OF THE STATUTE OF LIMITATIONS OF 6 YEARS. Here, 4/30/25 going back six years to 5/1/19. 6 years x 12 months= 72 months x $2,379.33 = **$171,311.76.**

*BUT in this particular case, the second mortgage holder also had a Balloon due 5/1/21 during these last six years* . The 5/1/21 maturity date is within the last six years and therefore the balloon payment is not barred by the six year statute of limitations.

Therefore, the balloon of principal due on 5/1/21 is *ALSO* due by the debtor in addition to the arrears missed payments for the last six years of $268,864.29 .

Creditor second mortgage Proof of Claim at page 10 of 28 shows that the 5/1/21 loan maturity principal balance due if all payments were made through 4/30/21, was $342,213.85. See Exhibit I.  This amount is the same amount of principal balance due on 10/11/10 after the last payment creditor made (see page 6 of 28 of Ex I ) and it shows up as the principal balance due every month after 10/11/10 through the proof of claim filed in June of 2024.

But this is NOT the principal balance due today in 4/25 because if debtor pays all of the payments missed 5/1/21 through 4/25, she will also be paying the monthly portion for principal for those months and therefore the final principal balance she will be paying off 4/25 should be the principal balance owing six years ago ($342,213.85) minus the principal

16

payments from 5/1/21 through 4/30/25 of $37,555.20 : the principal amount paid per month of $782.40 (in the monthly payments of $2,379.33 –see EX J) amounts to over that period 5/1/21-4/30/25 = $782.40 x 48 months (8 months in 2021 + 12 months 2022, 2023, 2024 = 36 months + 4 months in 2025 = 48 months) = $37,555.20. This amount of $37,555.20 should be subtracted from the principal balance owing 10/10 and the same as of 4/30/25 of $342,213.85-$37,555.20 = **$304,658.65 for the principal balloon balance due 5/1/21 ,if paid by 4/30/25**.

So , Debtor owes ONLY **$171,311.76** missed payments from 6 years ago 5/1/19 through 4/30/25 PLUS principal balance balloon that was originally due 5/1/21 of **$304,658.65,** for a total of **$475,970.41 due by DEBTOR ,if paid by 4/30/25**.

Dated: 4/8/24

/s/William C. Budigan

William C. Budigan , WSBA 13443

Attorney for Debtor Melanie Smith

info@BudiganLaw.com

206 284-5305

**CERTIFICATE OF SERVICE**

On 4/9/25, I served the foregoing MOTION FOR SUMMARY JUDGMENT DETERMINATION OF AMOUNTS OWING TO FIRST AND SECOND MORTGAGE AFTER REDUCTION BY STATUTE OF LIMITATIONS BARRED MISSED PAYMENTS AND MEMORANDUM IN SUPPORT AND DECLARATION OF DEBTOR on the following individuals by email addresses below and electronic means through the Court's ECF program:

17

Case 24-10218-CMA    Doc 139    Filed 04/09/25    Ent. 04/09/25 03:12:51    Pg. 17 of 19

      **I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

                                                                                   /s/ William C. Budigan

**DEBTOR** Melanie A Smith, 3057 42nd Ave W, Seattle, WA 98199

**TRUSTEE**

Michael P Klein, WSBA #18079

330 Madison Ave S Suite 105,

Bainbridge Island, WA 98110

trusteeklein@hotmail.com

Lance E. Olsen, Esq. WSBA #25130

McCarthy & Holthus, LLP

Attorney for Creditor First Mortgage

Wilmington Savings Fund Society, FSB/

US Bank Trust National Association

bknotice@McCarthyHolthus.com

lolsen@McCarthyHolthus.com

Michael S. Scott, Esq. WSBA #28501

mscott@mccarthyholthus.com

Attorney for Creditor First Mortgage

Wilmington Savings Fund Society, FSB/

US Bank Trust National Association

18

**DEUTSCHE BANK NATIONAL TRUST COMPANY**

**(second mortgage)**

NewRez LLC d/b/a Shellpoint Mortgage Servicing

P.O. Box 10826

Greenville, SC 29603-0826

**Issa F. Kamara**

Authorized agent for NewRez LLC d/b/a Shellpoint Mortgage Servicing

Bonial and Associates, P.C.

PO BO 9013
 Addison Texas, 75001

pocinquiries@bonialpc.com

CREDITOR WA STATE EMPLOYMENT SECURITY DEPT.

POBox 9045  Olympia,WA 98507

Cambria Queen

Dickson Frohlich Phillips Burgess, PLLC,

Attorney for Stephen Fry, Interested Party

   cqueen@dfpblaw.com