The Honorable Christopher M Alston
Chapter 7
Hearing Location: United States Bankruptcy
Court, Courtroom 7206,
700 Stewart Street,
Seattle, WA 98101
Hearing Date: MOTION SHORTENING
AT JUDGE'S DISCRETION
FOR REQUESTED HEARING  4/10/25
Hearing Time: 9:30 am
Response Date: PROPOSED FOR THE
ABOVE FUTURE HEARING: 4/9/25 5pm

UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF WASHINGTON

In re:

Melanie A Smith aka M A Smith aka M Smith

Debtor

) NO. 24-10218-CMA

) EXHIBITS TO:

) DEBTOR'S MOTION FOR
) DETERMINATION OF
) AMOUNTS OWING TO FIRST
) AND SECOND MORTGAGES
) AFTER REDUCTION FOR
) STATUTE OF LIMITATIONS
) BARRED MISSED PAYMENTS
) AND CHARGES AND COSTS
) AND MEMORANDUM IN
) SUPPORT


## Do you have a report that shows the King County 2024 median house price?
2 messages

**William Budigan <info@budiganlaw.com>**
To: wcrer@uw.edu

Sun, Mar 16, 2025 at 10:22 PM

Thank you,
Bill Budigan
Budigan Law Firm
(206) 284-5305

---

**WCRER <wcrer@uw.edu>**
To: William Budigan <info@budiganlaw.com>

Mon, Mar 17, 2025 at 5:42 AM

Bill,

Yes, go to wcrer.be.uw.edu, click on Housing Market Data and then Annual Median Price.

Best regards,
Steve

Steven C. Bourassa, Ph.D.
Director, Washington Center for Real Estate Research
University of Washington

---

**From:** William Budigan
**Sent:** Sunday, March 16, 2025 10:22 PM
**To:** WCRER
**Subject:** Do you have a report that shows the King County 2024 median house price?
[Quoted text hidden]

EXA

# MEDIAN HOME PRICES

State of Washington and Counties
Annual 2017-2024

| County | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|---|
| Adams | $154,100 | $160,600 | $192,700 | $216,900 | $257,900 | $299,200 | $315,000 | $317,000 |
| Asotin | $197,100 | $216,700 | $200,000 | $216,900 | $250,800 | $292,500 | $307,400 | $323,700 |
| Benton | $244,000 | $276,700 | $299,800 | $329,500 | $378,200 | $440,300 | $428,500 | $434,200 |
| Chelan | $305,100 | $337,200 | $357,000 | $418,600 | $502,800 | $589,200 | $550,000 | $605,400 |
| Clallam | $270,300 | $293,000 | $309,800 | $352,600 | $420,600 | $452,400 | $474,100 | $503,500 |
| Clark | $332,800 | $359,100 | $371,700 | $403,700 | $481,600 | $543,700 | $541,400 | $568,600 |
| Columbia | $152,700 | $162,700 | $186,400 | $214,700 | $256,200 | $269,400 | $245,800 | $279,500 |
| Cowlitz | $225,600 | $246,900 | $275,200 | $307,500 | $362,100 | $383,200 | $397,500 | $406,500 |
| Douglas | $283,000 | $318,200 | $347,800 | $373,200 | $450,000 | $458,100 | $444,600 | $502,800 |
| Ferry | $146,700 | $164,000 | $160,000 | $172,900 | $229,200 | $237,500 | $244,400 | $195,000 |
| Franklin | $244,000 | $276,700 | $299,800 | $329,500 | $378,200 | $440,300 | $428,500 | $434,200 |
| Garfield | $197,100 | $216,700 | $200,000 | $216,900 | $178,000 | $207,100 | $270,000 | $225,000 |
| Grant | $190,500 | $202,300 | $227,900 | $258,500 | $311,700 | $357,100 | $336,600 | $349,700 |
| Grays Harbor | $169,400 | $191,600 | $215,200 | $251,100 | $309,900 | $353,900 | $346,400 | $358,100 |
| Island | $340,400 | $366,000 | $388,100 | $442,700 | $532,500 | $574,300 | $597,300 | $621,200 |
| Jefferson | $355,200 | $371,800 | $402,000 | $455,900 | $569,400 | $606,800 | $636,000 | $647,500 |
| King | $637,700 | $689,900 | $677,700 | $729,600 | $838,300 | $914,300 | $885,000 | $968,300 |
| Kitsap | $316,600 | $346,800 | $381,400 | $425,100 | $497,500 | $539,800 | $539,500 | $553,200 |
| Kittitas | $285,300 | $336,000 | $346,200 | $411,000 | $485,400 | $567,500 | $544,400 | $524,300 |
| Klickitat | $244,100 | $270,000 | $283,100 | $370,800 | $399,100 | $387,100 | $440,300 | $444,400 |
| Lewis | $199,200 | $227,400 | $258,700 | $304,100 | $364,300 | $400,100 | $396,300 | $420,800 |
| Lincoln | $105,000 | $115,600 | $142,500 | $202,100 | $215,600 | $239,300 | $239,300 | $252,500 |
| Mason | $213,600 | $242,900 | $271,900 | $319,600 | $378,300 | $409,900 | $401,900 | $424,800 |
| Okanogan | $198,700 | $217,800 | $220,400 | $254,500 | $309,000 | $352,500 | $356,400 | $368,400 |
| Pacific | $165,000 | $189,100 | $206,000 | $234,300 | $303,100 | $317,400 | $332,300 | $338,200 |
| Pend | $169,200 | $188,000 | $206,900 | $242,000 | $289,400 | $322,800 | $320,900 | $340,300 |
| Pierce | $315,700 | $347,400 | $372,200 | $424,300 | $508,300 | $554,400 | $537,400 | $567,800 |
| SanJuan | $516,700 | $550,000 | $652,000 | $694,800 | $887,500 | $958,300 | $956,800 | $900,000 |
| Skagit | $317,000 | $349,900 | $374,100 | $421,800 | $499,500 | $548,200 | $558,600 | $580,600 |
| Skamania | $271,600 | $292,000 | $323,100 | $340,500 | $400,000 | $432,600 | $463,900 | $503,900 |
| Snohomish | $439,300 | $482,100 | $493,000 | $549,400 | $676,900 | $760,600 | $725,700 | $781,700 |
| Spokane | $222,600 | $246,200 | $276,600 | $318,200 | $390,200 | $440,000 | $430,700 | $437,900 |
| Stevens | $169,200 | $188,000 | $206,900 | $242,000 | $289,400 | $322,800 | $320,900 | $340,300 |
| Thurston | $285,800 | $315,800 | $341,200 | $383,600 | $460,500 | $502,500 | $506,600 | $518,400 |
| Wahkiakum | $226,800 | $240,900 | $256,800 | $313,900 | $393,700 | $412,500 | $425,000 | $455,000 |
| Walla Walla | $217,900 | $244,900 | $260,300 | $306,100 | $376,400 | $422,900 | $414,700 | $429,900 |
| Whatcom | $343,600 | $382,300 | $401,300 | $444,400 | $547,400 | $608,300 | $591,900 | $639,900 |
| Whitman | $241,200 | $264,100 | $287,500 | $291,300 | $355,900 | $393,000 | $403,800 | $426,500 |
| Yakima | $204,200 | $226,600 | $249,000 | $281,500 | $327,200 | $351,000 | $350,700 | $364,400 |
| **Statewide** | **$385,700** | **$415,500** | **$434,500** | **$481,700** | **$577,000** | **$623,400** | **$607,300** | **$648,600** |



**WCRER** | WASHINGTON CENTER FOR REAL ESTATE RESEARCH

Case 24-10218-CMA    Doc 139-1    Filed 04/09/25    Ent. 04/09/25 03:12:51    Pg. 3 of 49

WHEN RECORDED MAIL TO:
**QUALITY LOAN SERVICE CORPORATION**
**108 1ˢᵗ Ave South, Suite 450**
**Seattle, WA 98104**

---

Trustee Sale No.: WA-22-897831-BB          SPACE ABOVE THIS LINE FOR RECORDER'S USE
Title Order No.: 220018304-WA-MSI

## NOTICE OF TRUSTEE'S SALE
Pursuant to the Revised Code of Washington 61.24, et seq.

Reference Number of Deed of Trust: Instrument No. 20030430003281
Parcel Number(s): 3271800215
Grantor(s) for Recording Purposes under RCW 65.04.015: MELANIE A SMITH, A SINGLE PERSON
Current Beneficiary of the Deed of Trust and Grantee (for Recording Purposes under RCW 65.04.015):
**U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**
Current Trustee of the Deed of Trust: QUALITY LOAN SERVICE CORPORATION
Current Loan Mortgage Servicer of the Deed of Trust: Selene Finance, LP

I.      **NOTICE IS HEREBY GIVEN** that QUALITY LOAN SERVICE CORPORATION, the undersigned Trustee, will on 2/14/2025, at 10:00 AM **At the 4th Ave entrance to the King County Administration Building,** located one block east of the Courthouse, 500 4th Ave, Seattle, WA 98104 sell at public auction to the highest and best bidder, payable in the form of credit bid or cash bid in the form of cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of KING, State of Washington, to-wit:

**LOTS 1 AND 2, BLOCK 4, HIAWATHA PARK SECOND ADDITION TO THE CITY OF SEATTLE, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 5 OF PLATS, PAGE 21, IN KING COUNTY, WASHINGTON.**

More commonly known as: **3057 42ND AVE W, SEATTLE, WA 98199-2421**

Subject to that certain Deed of Trust dated 4/28/2003, recorded 4/30/2003, under Instrument No. 20030430003281 records of KING County, Washington, reformed to include the corrected legal description pursuant to a Default Judgment entered 8/30/2018, recorded 9/19/2018, under **Instrument No. 20180919000431** records of KING County Washington, from MELANIE A SMITH, A SINGLE PERSON, as grantor(s), to CHICAGO TITLE INSURANCE, as original trustee, to secure an obligation in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ARBORETUM MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS,** as original beneficiary, the beneficial interest in which was subsequently assigned to U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST, the Beneficiary, under an assignment recorded under Auditors File Number 20240917000553

ExB

II.      No action commenced by the Beneficiary of the Deed of Trust as referenced in RCW 61.21.030(4) is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.     The default(s) for which this foreclosure is made is/are as follows: Failure to pay when due the following amounts which are now in arrears: **$184,501.28.**

IV.      The sum owing on the obligation secured by the Deed of Trust is: The principal sum of **$241,156.91**, together with interest as provided in the Note from 11/1/2018 on, and such other costs, fees, and charges as are due under the Note, Deed of Trust, or other instrument secured, and as are provided by statute.

V.       The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 2/14/2025. The defaults referred to in Paragraph III must be cured by 2/3/2025 (11 days before the sale date), or by other date as permitted in the Note or Deed of Trust, to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before 2/3/2025 (11 days before the sale), or by other date as permitted in the Note or Deed of Trust, the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashiers or certified checks from a State or federally chartered bank. The sale may be terminated any time after the 2/3/2025 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.      A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower(s) and Grantor(s) by both first class and certified mail, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting. The list of recipients of the Notice of Default is listed within the Notice of Foreclosure provided to the Borrower(s) and Grantor(s). These requirements were completed as of 2/9/2022.

VII.     The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.    The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.      Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.       NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

## THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME.

You may be eligible for mediation. You have only until **90 calendar days BEFORE the date of sale** listed in this Notice of Trustee Sale to be referred to mediation. If this is an amended Notice of Trustee Sale providing a 45-day notice of the sale, mediation must be requested no later than **25 calendar days BEFORE the date of sale** listed in this amended Notice of Trustee Sale.

**DO NOT DELAY. CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you are eligible and it may help you save your home. See below for safe sources of help.

**SEEKING ASSISTANCE**

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission: Toll-free: **1-877-894-HOME (1-877-894-4663)** or Web site: http://www.dffi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm

The United States Department of Housing and Urban Development: Toll-free: **1-800-569-4287** or National Web Site: http://portal.hud.gov/hudportal/HUD or for Local counseling agencies in Washington: http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys: Telephone: **1-800-606-4819** or Web site: http://nwjustice.org/what-clear

**Additional information provided by the Trustee:** If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the noteholders rights against the real property only. The Trustee's Sale Number is WA-22-897831-BB.

## Exhibit A: Recipients of the Notice of Default

**MELANIE A SMITH**
**3057 42ND AVE W**
**SEATTLE, WA 98199**

Trustee Sale Number: WA-22-897831-BB



# PAYOFF QUOTE

February 7, 2025

**Ryan Thurston**
**thurston_softball@hotmail.com**
**2062838615**
**3057 42ND AVE W**
**SEATTLE, WA 98199-2421**

### THIS LETTER IS BEING SENT PURSUANT TO YOUR REQUEST

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.** HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.

## SALE SCHEDULED FOR 2/14/2025

This correspondence is sent in conjunction with the processing of a non-judicial foreclosure. Your request does not stop the foreclosure proceedings from continuing. **Accordingly, it is your responsibility to determine if a Trustee's sale might be scheduled for a date earlier than the expiration date of these figures. Unless you obtain written acknowledgement that any scheduled sale will be postponed, the sale may be held as scheduled.**

| | |
|---|---|
| **Lender/ Servicer Name:** | Selene Finance, LP |
| **Loan Number Ending With:** | XXXXXX5421 |
| **Loan Type:** | Conventional Residential |
| **Attorney/Trustee File No.:** | WA-22-897831-BB |
| **Mortgagor(s) Name:** | MELANIE A SMITH |
| **Property Address:** | 3057 42ND AVE W, SEATTLE, WA 98199-2421 |

**Please Note:** Requesting a reinstatement or payoff quote does not stop the foreclosure process. Waiting to make your payment may increase the amount necessary to cure the default. Please see dates and amounts below which will increase as the foreclosure process continues. You should submit payment as quickly as possible to avoid incurring any additional fees or cost.

**Please be advised that this quote expires on 2/13/2025. If funds are not received on or before the expiration date, a new quote should be requested. Please note that amounts submitted based upon the below breakdown after the expiration date may not be accepted.**

*Payoff Quote – Page 1*
*Trustee File No.: WA-22-897831-BB*

EXC

The amount to pay off the above referenced loan as of 2/13/2025 is $384,403.83 and is itemized as follows:

| | | |
|---|---|---|
| Unpaid Principal Balance Due | | $241,156.91 |
| Interest | | $68,182.28 |
| Late Charges | | $116.04 |
| Escrow/Impound Required | | $60,352.98 |
| *Reconveyance Fees and Costs | | $221.50 |
| Advance | | $13,359.62 |
| • Posting | $325.00 | |
| • Credit | ($861.50) | |
| • Title | $1,093.68 | |
| • Prior Foreclosure Fees and Costs | $7,710.32 | |
| • Recording Fee | $1,062.00 | |
| • Mailing | $426.12 | |
| • Postpone Sale Costs | $330.00 | |
| • Publication | $324.00 | |
| • Reset of Sale | $950.00 | |
| • Sale Postponement Fee | $100.00 | |
| • Trustee Fees | $1,900.00 | |
| Incurred Foreclosure Fees and Costs | | $1,014.50 |
| • Trustee Fees | $380.00 | |
| • Posting/Publication Charges | $324.00 | |
| • *Rescission Recording | $310.50 | |

*The line items designated with an asterisk will be legally required and incurred if the loan is paid off. If the loan is not paid off, they will not be incurred or added to the total amount owed at this time.

The submission of less than the total amount due on the quote could result in the return of the remitted funds. While this quote has an expiration date through a date in the future, if you are remitting payment prior to the expiration date, we ask that you not deduct any sums.

The payoff figures listed above include items that have been paid by the lender or servicer or incurred by Quality that are currently due by the expiration date.

Please understand that the above figures are subject to final verification upon receipt by the lender or servicer. All fees and costs incurred after the issuance of this letter will continue to be assessed until the loan delinquency is cured.

**We reserve the right to update these figures through the projected date as issuance of this letter does not suspend the foreclosure action or the payment of taxes, insurance, or other advances authorized pursuant to the terms of your loan documents.**

**If your payment is less than the total payoff amount due by the expiration date, the lender or servicer reserves the right to reject your payment and continue with the legal process.**

**Thank you,**

**Payoff and Reinstatement Department**
Payoffs.reinstatements@qualityloan.com
(866) 925-0241 Ext. 5318

**Enclosure**

*Payoff Quote – Page 2*
*Trustee File No.: WA-22-897831-BB*

 Gmail

## RE: SMITH | WA-22-897831-BB | Sale 2.14.2025 - PP

**Robert McDonald** <rmcdonald@qualityloan.com>
To: William Budigan <info@budiganlaw.com>
Cc: IDSFC <IDSFC@qualityloan.com>

Mon, Apr 7, 2025 at 1:04 PM

Bill


The attached was the breakdown provided by the beneficiary as to the payoff quote issued in February.

[Quoted text hidden]



**2 attachments**

📄 **Email_Attachment_SMITH_0007035421_BREAKDOWN_(262025112426AM).doc**
161K

📄 **Re M. Smith To Robert McDonald Quality Loan Service Corp pay off quiote 2.7.25 page 2 items Budigan needs dates incurred to see if we are all in agreement 4.4.25 .pdf**
1640K

EXD

Rec'd 4/7/25 from Robert McDonald Atty for Quality Loan

# ESCROW/CORPORATE BREAKDOWN

*Please note that all advances are good up to the current date. If you are in need of future advances please raise a Financial Breakdown Process request 2-3 days prior to the date needed. Thank you for your cooperation!*

| LOAN#: | 0007035421 - SMITH, MELANIE |
|---|---|

***Please note that all advances are good up to the current date. If you are in need of future advances, please raise a Financial Breakdown Process request 2-3 days prior to the date needed. Thank you.***

| ESCROW/CORPORATE BREAKDOWN | | |
|---|---|---|
| | | |
| REQUESTED | $14,341.12 | |
| AMOUNT LEFT | $0.00 | |
| TOTAL | $14,341.12 | |
| | | |
| DATE | DESCRIPTION | AMOUNT |
| 1/21/2025 | FC COSTS | $145.00 |
| 1/15/2025 | PROP INSPECTION | $30.00 |
| 12/13/2024 | PROP INSPECTION | $30.00 |
| 11/12/2024 | FC COSTS | $306.50 |
| 11/12/2024 | POSTAGE CHRGS | $8.93 |
| 11/12/2024 | POSTAGE CHRGS | $53.58 |
| 11/12/2024 | POSTAGE CHRGS | $11.55 |
| 11/12/2024 | FEE/RECORDING | $4.00 |
| 11/12/2024 | FC ATTY. FEES | $950.00 |
| 11/8/2024 | PROP INSPECTION | $30.00 |
| 10/9/2024 | PROP INSPECTION | $30.00 |
| 9/6/2024 | ACQUISTION ADVAN | ($861.50) |
| 9/6/2024 | PROP INSPECTION | ($836.00) |
| 5/10/2024 | POSTAGE CHRGS | $64.64 |
| 5/10/2024 | FEE/RECORDING | $4.00 |
| 5/10/2024 | FC COSTS | $110.00 |
| 5/10/2024 | RECORDING FEES | $304.50 |
| 2/15/2024 | POSTAGE CHRGS | $55.09 |
| 1/12/2024 | PROP INSPECTION | $30.00 |
| 12/14/2023 | PROP INSPECTION | $30.00 |
| 11/20/2023 | FC COSTS | $110.00 |
| 11/20/2023 | POSTAGE CHRGS | $55.09 |
| 11/20/2023 | FC COSTS | $110.00 |
| 11/9/2023 | PROP INSPECTION | $30.00 |
| 10/12/2023 | PROP INSPECTION | $30.00 |
| 9/11/2023 | PROP INSPECTION | $30.00 |
| 8/10/2023 | PROP INSPECTION | $30.00 |

# ESCROW/CORPORATE BREAKDOWN

*Please note that all advances are good up to the current date. If you are in need of future advances please raise a Financial Breakdown Process request 2-3 days prior to the date needed. Thank you for your cooperation!*

| | | |
|---|---|---|
| 8/1/2023 | FC ATTY. FEES | $100.00 |
| 7/25/2023 | POSTAGE CHRGS | $55.09 |
| 7/25/2023 | FC ATTY. FEES | $370.00 |
| 7/21/2023 | PUBLICATION | $324.00 |
| 7/13/2023 | PROP INSPECTION | $30.00 |
| 6/28/2023 | POSTAGE CHRGS | $52.15 |
| 6/22/2023 | PROP INSPECTION | $30.00 |
| 6/9/2023 | PROP INSPECTION | $30.00 |
| 5/2/2023 | FC COSTS | $90.00 |
| 5/2/2023 | POSTAGE CHRGS | $7.45 |
| 5/2/2023 | FC ATTY. FEES | $180.00 |
| 5/2/2023 | POSTAGE CHRGS | $44.70 |
| 5/2/2023 | POSTAGE CHRGS | $9.73 |
| 5/2/2023 | FC COSTS | $206.50 |
| 5/2/2023 | FEE/RECORDING | $4.00 |
| 4/28/2023 | PROP INSPECTION | $30.00 |
| 3/25/2023 | PROP INSPECTION | $20.00 |
| 3/3/2023 | PROP INSPECTION | $20.00 |
| 1/27/2023 | PROP INSPECTION | $20.00 |
| 12/30/2022 | PROP INSPECTION | $20.00 |
| 11/30/2022 | PROP INSPECTION | $20.00 |
| 10/28/2022 | PROP INSPECTION | $20.00 |
| 9/10/2022 | PROP INSPECTION | $20.00 |
| 8/11/2022 | POSTAGE CHRGS | $0.53 |
| 8/11/2022 | POSTAGE CHRGS | $0.53 |
| 8/10/2022 | PROP INSPECTION | $20.00 |
| 7/12/2022 | PROP INSPECTION | $13.00 |
| 6/14/2022 | PROP INSPECTION | $13.00 |
| 5/6/2022 | PROP INSPECTION | $13.00 |
| 4/11/2022 | PROP INSPECTION | $13.00 |
| 3/10/2022 | FC COSTS | $19.00 |
| 3/10/2022 | RECORDING FEES | $204.50 |
| 3/10/2022 | POSTAGE CHRGS | $7.06 |
| 3/10/2022 | FC ATTY. FEES | $180.00 |
| 3/10/2022 | FC COSTS | $90.00 |
| 3/10/2022 | FC COSTS | $5.00 |
| 3/10/2022 | RECORDING FEES | $4.00 |
| 3/9/2022 | PROP INSPECTION | $13.00 |
| 2/11/2022 | PROP INSPECTION | $13.00 |
| 2/3/2022 | TAXES | $101.68 |



# ESCROW/CORPORATE BREAKDOWN

*Please note that all advances are good up to the current date. If you are in need of future advances please raise a Financial Breakdown Process request 2-3 days prior to the date needed. Thank you for your cooperation!*

| 2/3/2022 | FC ATTY. FEES | $1,170.00 |
|---|---|---|
| 2/3/2022 | TITLE SEARCH | $992.00 |
| 1/11/2022 | PROP INSPECTION | $13.00 |
| 12/1/2021 | PROP INSPECTION | $13.00 |
| 11/17/2021 | PROP INSPECTION | $13.00 |
| 10/5/2021 | PROP INSPECTION | $13.00 |
| 9/7/2021 | PROP INSPECTION | $13.00 |
| 8/10/2021 | PROP INSPECTION | $13.00 |
| 7/14/2021 | PROP INSPECTION | $13.00 |
| 6/17/2021 | PROP INSPECTION | $13.00 |
| 5/13/2021 | PROP INSPECTION | $13.00 |
| 4/16/2021 | PROP INSPECTION | $13.00 |
| 3/26/2021 | PROP INSPECTION | $13.00 |
| 2/27/2021 | PROP INSPECTION | $13.00 |
| 1/24/2021 | PROP INSPECTION | $13.00 |
| 12/22/2020 | PROP INSPECTION | $13.00 |
| 12/1/2020 | PROP INSPECTION | $13.00 |
| 10/21/2020 | PROP INSPECTION | $13.00 |
| 9/28/2020 | PROP INSPECTION | $15.00 |
| 8/22/2020 | PROP INSPECTION | $15.00 |
| 7/29/2020 | PROP INSPECTION | $15.00 |
| 6/29/2020 | PROP INSPECTION | $15.00 |
| 4/25/2020 | PROP INSPECTION | $15.00 |
| 3/26/2020 | PROP INSPECTION | $15.00 |
| 5/24/2017 | INSPECTION | $15.00 |
| 2/22/2017 | INSPECTION | $15.00 |
| 1/25/2017 | INSPECTION | $15.00 |
| 12/30/2016 | INSPECTION | $15.00 |
| 11/30/2016 | INSPECTION | $15.00 |
| 10/26/2016 | INSPECTION | $15.00 |
| 9/26/2016 | INSPECTION | $15.00 |
| 9/1/2016 | INSPECTION | $15.00 |
| 8/3/2016 | INSPECTION | $15.00 |
| 6/29/2016 | INSPECTION | $15.00 |
| 6/2/2016 | INSPECTION | $15.00 |
| 5/4/2016 | INSPECTION | $15.00 |
| 4/6/2016 | INSPECTION | $15.00 |
| 3/9/2016 | INSPECTION | $15.00 |
| 2/4/2016 | INSPECTION | $15.00 |
| 3/1/2015 | INSPECTION | $561.50 |

*[Handwritten annotations:]* Pre 8/3/18 ✱✱  S.T 786

✱✱ 8/24/18 or earlier more than 6 yrs before lifting of stay

$3

or earlier = more than 6 yrs 8/23/24 Sand 10/10/18 — No fee Default 10/2/24.

## ESCROW/CORPORATE BREAKDOWN

*Please note that all advances are good up to the current date. If you are in need of future advances please raise a Financial Breakdown Process request 2-3 days prior to the date needed. Thank you for your cooperation!*

| 3/1/2015 | CERT MAILING | $263.61 |
|---|---|---|
| 3/1/2015 | NOTICE OF DEFAULT | $288.00 |
| 3/1/2015 | PUBLICATION | $655.00 |
| 3/1/2015 | LEGAL FEE | $650.00 |
| 3/1/2015 | SHERIFF COSTS | $1,422.50 |
| 3/1/2015 | TITLE COSTS | $3,276.21 |
| 2/12/2015 | INSPECTION | $15.00 |
| 1/22/2015 | INSPECTION | $15.00 |
| 12/24/2014 | INSPECTION | $15.00 |
| 12/24/2014 | FC ATTY FEE | $400.00 |
| 12/24/2014 | FC ATTY FEE | $250.00 |
| 12/4/2014 | INSPECTION | $15.00 |
| 11/24/2014 | FC ATTY FEE | $255.00 |
| 11/24/2014 | FC ATTY FEE | $250.00 |
| 11/13/2014 | INSPECTION | $15.00 |
| | | |

*Handwritten note:* Pre-8/24/18 **  ST 7785.32  ** see note p.3

| ESCROW/CORPORATE BREAKDOWN | | |
|---|---|---|
| | | |
| REQUESTED | $60,352.98 | |
| AMOUNT LEFT | $0.00 | |
| TOTAL | $60,352.98 | |
| | | |
| DATE | DESCRIPTION | AMOUNT |
| 10/10/2024 | County Tax | $1,181.74 |
| 4/29/2024 | Escrow Adv Refund | ($3,913.99) |
| 4/5/2024 | County Tax | $5,095.74 |
| 3/19/2024 | Hazard Ins | $3,121.00 |
| 9/30/2023 | County Tax | $4,955.77 |
| 4/7/2023 | County Tax | $4,955.77 |
| 3/20/2023 | Hazard Ins | $2,892.00 |
| 10/7/2022 | County Tax | $4,527.90 |
| 4/7/2022 | County Tax | $4,527.90 |
| 3/24/2022 | Hazard Ins | $2,344.00 |
| 10/12/2021 | County Tax | $4,321.72 |
| 4/8/2021 | County Tax | $4,321.73 |
| 3/19/2021 | Hazard Ins | $2,515.00 |
| 10/7/2020 | County Tax | $4,463.94 |
| 3/30/2020 | County Tax | $4,463.95 |

p. 4

# ESCROW/CORPORATE BREAKDOWN

*Please note that all advances are good up to the current date. If you are in need of future advances please raise a Financial Breakdown Process request 2-3 days prior to the date needed. Thank you for your cooperation!*

| Date | Description | Amount |
|---|---|---|
| 3/17/2020 | Hazard Ins | $2,083.00 |
| 3/3/2020 | Escrow Adv Refund | ($1,767.83) |
| 10/15/2019 | County Tax | $3,886.44 |
| 8/23/2019 | Escrow Adv Refund | ($913.68) |
| 7/16/2019 | Escrow Adv Refund | ($1,827.36) |
| 6/25/2019 | Escrow Adv Refund | ($2,721.91) |
| 4/12/2019 | Hazard Ins | $1,806.00 |
| 4/8/2019 | County Tax | $3,886.45 |
| 2/28/2019 | Escrow Adv Refund | ($537.73) |
| 10/8/2018 | County Tax | $3,952.05 |
| 4/13/2018 | Hazard Ins | $1,744.00 |
| 3/26/2018 | County Tax | $3,952.06 |
| | STARTING ESCROW BALANCE | ($2,962.68) |
| | | |

*Handwritten annotations:*

Pre - 10/10/18 ☆
ST 9648.11

10/10/18 or earlier is
☆ More than 6 years before Notice of Default and Trustee Sale 10/9/24.

STs:    786      p. 3
7,785.32  p. 4
9,648.11  p 5
T = 18,219.43

☆ 5

 **selene**

For Return Service Only
P.O. Box 8619
Philadelphia, PA 19101-8619

000077298622
MELANIE A SMITH
3057 42ND AVE W
SEATTLE WA 98199

# MORTGAGE STATEMENT

Statement Date: December 09, 2024

 **Online Information:** www.selenefinance.com
**Email:** customerservice@selenefinance.com

**Hours of Operation:**
Monday through Thursday 8:00 am to 9:00 pm, CT; Friday 8:00 am to
5:00 pm, CT
**Phone:** (877) 735-3637
**Hearing Impaired:** Call 711 or (800) 735-2989
**Fax:** (866) 926-5496

| Payments: | Correspondence: |
|---|---|
| PO Box 660369 | P.O. Box 8619 |
| Dallas, TX 75266-0369 | Philadelphia, PA 19101-8619 |

| Loan Number: | 0007035421 |
|---|---|
| Payment Date: | 01/01/2025 |
| **Payment Amount:** | **$191,193.10** |

MELANIE A SMITH
Property Address:
3057 42ND AVE W
SEATTLE, WA 98199

## Account Information

| | |
|---|---|
| Outstanding Principal Balance | $241,156.91 |
| Deferred Balance | $0.00 |
| Escrow Balance | -$60,352.98 |
| Interest Rate | 4.500% |
| Prepayment Penalty | No |

*This is the principal balance only, not the amount required to pay your account in full.

## Explanation of Payment Amount

| | |
|---|---|
| Principal | $717.61 |
| Interest | $732.77 |
| Escrow (Taxes and Insurance) | $457.04 |
| Additional Monthly Amount | $0.00 |
| **Regular Monthly Payment** | **$1,907.42** |
| Total Late Fees and Other Charges | $14,252.16 |
| Past Unpaid Amount | $175,033.52 |
| **Total Payment Amount** | **$191,193.10** |
| Unapplied Funds | $0.00 |

## Transaction Activity (11/08/24 - 12/09/24)   *** HISTORY CONTINUED ON PAGE 2 ***

| Date Paid | Description | Principal | Interest | Escrow | Additional Monthly Amount | Late Fees/Other Charges | Partial Payment (Unapplied) | Total |
|---|---|---|---|---|---|---|---|---|
| 11/08/24 | PROP INSPECTION | $0.00 | $0.00 | $0.00 | $0.00 | -$30.00 | $0.00 | -$30.00 |
| 11/12/24 | FC ATTY. FEES | $0.00 | $0.00 | $0.00 | $0.00 | -$950.00 | $0.00 | -$950.00 |
| 11/12/24 | FEE/RECORDING | $0.00 | $0.00 | $0.00 | $0.00 | -$54.00 | $0.00 | -$54.00 |

## Bankruptcy Messages

Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.
We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.
If you want to stop receiving statements, write to us at: Selene Finance LP, Attn: Customer Service Research, P.O. Box 8279, Philadelphia, PA 19101-8279. Or you may fax us at (866) 926-5496, or email us at: CustomerService@selenefinance.com.

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Tax and Insurance) | $0.00 | $0.00 |
| Other Monthly Amount | $0.00 | $0.00 |
| Late Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied)** | $0.00 | $0.00 |
| **Total Payment** | **$0.00** | **$0.00** |

### * Important Information About Partial Payments

Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage. Those funds are shown in the Unapplied Balance line. If you pay the Total Payment Amount, the unapplied funds will then be applied to your mortgage.

## *** Account History ***

**Recent Account History**
* Payment 07/01/24 Unapplied Amount of $1,907.42.
* Payment 08/01/24 Unapplied Amount of $1,907.42.
* Payment 09/01/24 Unapplied Amount of $1,907.42.
* Payment 10/01/24 Unapplied Amount of $1,907.42.
* Payment 11/01/24 Unapplied Amount of $1,907.42.
* Payment 12/01/24 Unapplied Amount of $1,907.42.
Current payment 01/01/25: $1,907.42.
**Total: $191,193.10 unpaid amount that, if paid, would bring the account current.**

*Ex E*

**If you are experiencing financial difficulty:** See back for information about mortgage counseling assistance.

If you are sending us a payment, make your check

MELANIE A SMITH
Property Address:
3057 42ND AVE W
SEATTLE, WA 98199

**Payment Amount:** $191,193.10

## Account Information

| | |
|---|---|
| Outstanding Principal Balance | $241,156.91 |
| Deferred Balance | $0.00 |
| Escrow Balance | -$60,352.98 |
| Interest Rate | 4.500% |
| Prepayment Penalty | No |

*This is the principal balance only, not the amount required to pay your account in full.

## Explanation of Payment Amount

| | |
|---|---|
| Principal | $717.61 |
| Interest | $732.77 |
| Escrow (Taxes and Insurance) | $457.04 |
| Additional Monthly Amount | $0.00 |
| **Regular Monthly Payment** | **$1,907.42** |
| Total Late Fees and Other Charges | $14,252.16 |
| Past Unpaid Amount | $175,033.52 |
| **Total Payment Amount** | **$191,193.10** |
| Unapplied Funds | $0.00 |

## Transaction Activity (11/08/24 - 12/09/24)   *** HISTORY CONTINUED ON PAGE 2 ***

| Date Paid | Description | Principal | Interest | Escrow | Additional Monthly Amount | Late Fees/Other Charges | Partial Payment (Unapplied) | Total |
|---|---|---|---|---|---|---|---|---|
| 11/08/24 | PROP INSPECTION | $0.00 | $0.00 | $0.00 | $0.00 | -$30.00 | $0.00 | -$30.00 |
| 11/12/24 | FC ATTY. FEES | $0.00 | $0.00 | $0.00 | $0.00 | -$950.00 | $0.00 | -$950.00 |
| 11/12/24 | FEE/RECORDING | $0.00 | $0.00 | $0.00 | $0.00 | -$4.00 | $0.00 | -$4.00 |

## Bankruptcy Messages

Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you. If you want to stop receiving statements, write to us at: Selene Finance LP, Attn: Customer Service Research, P.O. Box 8279, Philadelphia, PA 19101-8279. Or you may fax us at (856) 926-5496, or email us at: CustomerService@selenefinance.com.

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Tax and Insurance) | $0.00 | $0.00 |
| Other Monthly Amount | $0.00 | $0.00 |
| Late Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied)** | $0.00 | $0.00 |
| Total Payment | $0.00 | $0.00 |

### * Important Information About Partial Payments

Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage. Those funds are shown in the Unapplied Balance line. If you pay the Total Payment Amount, the unapplied funds will then be applied to your mortgage.

## *** Account History ***

**Recent Account History**
* Payment 07/01/24 Unpaid Amount of $1,907.42.
* Payment 08/01/24 Unpaid Amount of $1,907.42.
* Payment 09/01/24 Unpaid Amount of $1,907.42.
* Payment 10/01/24 Unpaid Amount of $1,907.42.
* Payment 11/01/24 Unpaid Amount of $1,907.42.
* Payment 12/01/24 Unpaid Amount of $1,907.42.
Current payment 01/01/25: $1,907.42.
**Total: $191,193.10 unpaid amount that, if paid, would bring the account current.**

If you are experiencing financial difficulty: See back for information about mortgage counseling assistance.

---

## Payment Amount

| | |
|---|---|
| Loan Number | 0007035421 |
| Borrower | MELANIE A SMITH |
| Co-Borrower | |
| Payment Date | 01/01/2025 |
| Payment Amount | $191,193.10 |

Please write your loan number on your check or money order.

Please refer to the Mortgage Statement for important information regarding your bankruptcy case.

If you are sending us a payment, make your check payable to Selene Finance LP.

## PAYMENT COUPON

| | |
|---|---|
| Payment Amount | $191,193.10 |
| Additional Principal | $           • |
| Additional Escrow | $           • |
| Total Enclosed | $           • |



selene

PO Box 660369
Dallas, TX 75266-0369

0007035421 000190742 000197994 0191193103

**Below is the Order of the Court.**

Christopher M. Alston
U.S. Bankruptcy Judge
(Dated as of Entered on Docket date above)

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In Re:

Melanie A Smith aka M A Smith aka M Smith,

Debtor.

Case No. 24-10218-CMA

Chapter 7

ORDER TERMINATING THE
AUTOMATIC STAY

This matter came before the Court on the Motion for Relief from Automatic Stay filed by Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not Individually But As Trustee for Pretium Mortgage Acquisition Trust ("Movant"). Based upon the record on file and the representations made to the court, IT IS HEREBY ORDERED:

1.    This Order affects the real property located at **3057 42nd Avenue West, Seattle, WA 98199** (the "Property").

2.    The automatic stay is terminated as to Movant. Movant may pursue all remedies under state law in connection with the Property and security interest, and may commence or continue any action necessary to obtain complete possession of the Property free and clear of claims of the bankruptcy estate.

3.    Movant, at its option, may offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement as allowed by state law. Movant may contact Debtor

Order Granting Relief From Stay
MH# WA-24-175981

1

McCarthy & Holthus, LLP
108 1st Avenue South, Ste. 300
Seattle, WA 98104
(206) 596-4856

Case 24-10218-CMA    Doc 76    Filed 08/23/24    Ent. 08/23/24 11:18:34    Pg. 1 of 2

Case 24-10218-CMA    Doc 139-1    Filed 04/09/25    Ent. 04/09/25 03:12:51    Pg. 18 of 49

via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

4.     The relief granted herein shall be binding and of full force and effect in any conversion of this case to any other chapter. A conversion to another chapter does not stay or enjoin the effect of this Order, or prevent Movant from foreclosing and selling the Property, and recovering its costs, unless otherwise ordered by this Court.


/ / / END OF ORDER / / /


Submitted by:

McCarthy & Holthus, LLP

/s/ Lance E. Olsen
Lance E. Olsen, Esq. WSBA #25130
Michael S. Scott, Esq. WSBA #28501
Attorneys for Movant

Order Granting Relief From Stay
MH# WA-24-175981

2

McCarthy & Holthus, LLP
108 1st Avenue South, Ste. 300
Seattle, WA 98104
(206) 596-4856

Case 24-10218-CMA    Doc 76    Filed 08/23/24    Ent. 08/23/24 11:18:34    Pg. 2 of 2

Case 24-10218-CMA    Doc 139-1    Filed 04/09/25    Ent. 04/09/25 03:12:51    Pg. 19 of 49

# NOTE

APRIL 28, 2003        SEATTLE,        WASHINGTON
[Date]        [City]        [State]

3057 42ND AVENUE WEST, SEATTLE, WA 98199
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $322,700.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ARBORETUM MORTGAGE CORPORATION, A WASHINGTON CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on JUNE 1, 2003. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
100 S KING ST., STE 600
SEATTLE, WA 98104

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,883.19.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Initials: MS

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01
© 1999-2002 Online Documents, Inc.        Page 1 of 2

Ex G

*Ohio Savings Bank*
*1801 E. 9th St*
*Cleveland, Oh 44104*



2003043003281

After Recording Return To:
OHIO SAVINGS BANK
1801 E. 9TH STREET
CLEVELAND, OH 44104

Assessor's Parcel or Account Number 327180-0215-00

Abbreviated Legal Description. SEE ATTACHED *Lots 1, 2, Block 4*
*Vol 5, Pg 21*
[Include lot, block and plat or section, township and range]

Full legal description located on page_____

Title Order No.:  ▮▮▮▮▮▮        FILED BY CHICAGO TITLE INSURANCE CO.

LOAN #:  ▮▮▮▮▮▮        REF. #

—————————————[Space Above This Line For Recording Data]———————————

## DEED OF TRUST

**MIN** ▮▮▮▮▮▮▮▮▮▮

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 28, 2003,
together with all Riders to this document.

(B) "Borrower" is MELANIE A SMITH, A SINGLE PERSON.

Borrower is the trustor under this Security Instrument.

(C) "Lender" is ARBORETUM MORTGAGE CORPORATION.

Lender is a CORPORATION,        organized and existing under the
laws of WASHINGTON.        Lender's address is
100 S KING ST., STE 600, SEATTLE, WA 98104.

Initials: MS

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3048 1/01
© 1999-2002 Online Documents, Inc.        Page 1 of 11        WAEDEED 0211

Ex H

LOAN #: ▮▮▮▮▮

(D) "Trustee" is CHICAGO TITLE INSURANCE.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated **APRIL 28, 2003.**
The Note states that Borrower owes Lender **THREE HUNDRED TWENTY TWO THOUSAND SEVEN HUNDRED AND NO/100**************************************************** Dollars (U.S. **$322,700.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 1, 2033.**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and

Initials: MS

WASHINGTON–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3048 1/01
© 1999-2002 Online Documents, Inc.    Page 2 of 11    WAEDEED

LOAN #: ▮

the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY
[Type of Recording Jurisdiction] of KING
[Name of Recording Jurisdiction].
SEE ATTACHED
AP #: 327180-0215-00

which currently has the address of 3057 42ND AVENUE WEST, SEATTLE,
[Street] [City]
Washington 98199 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

Initials: MS

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3048 1/01
© 1999-2002 Online Documents, Inc.        Page 3 of 11                          WAEDEED

LOAN #: ███████

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance

24. **Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Use of Property.** The Property is not used principally for agricultural purposes.

26. **Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

_Melanie A. Smith_ (Seal)
MELANIE A SMITH

---

State of WASHINGTON     County of _King_     SS:

On this day personally appeared before me _____

_Melanie A Smith_

to me known to be the individual _____ described in and who executed the within and foregoing instrument, and acknowledged that _she_ signed the same as _her_ free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _28_ day of _April 2003_
_____.

_Michelle McAlister_

Notary Public in and for the State of Washington, residing at _Seattle_

My Appointment Expires on: _5/15/05_.

WASHINGTON–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3048 1/01
© 1999-2002 Online Documents, Inc.     Page 11 of 11     WAEDEED

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | Melanie A. Smith |
| | aka M A Smith aka M Smith |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Western District of Washington (State) |
| Case number | 24-10218 |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.** Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact information** that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

---

### Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-8, Asset-backed Securities, Series 2006-8 |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor    C/O Newrez LLC dba Shellpoint Mortgage Servicing fka Specialized Loan Servicing LLC |

| | | |
|---|---|---|
| 2. | Has this claim been acquired from someone else? | ☒ No <br> ☐ Yes. From whom? _____ |

| | |
|---|---|
| 3. | Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) |

**Where should notices to the creditor be sent?**

Newrez LLC dba Shellpoint Mortgage Servicing (fka Specialized Loan Servicing LLC)
Name

6200 S. Quebec Street, Suite 300
Number    Street

Greenwood Village, Colorado 80111
City    State    ZIP Code

Contact phone    (800) 315-4757

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**Where should payments to the creditor be sent? (if different)**

Newrez LLC dba Shellpoint Mortgage Servicing (fka Specialized Loan Servicing LLC)
Name

6200 S. Quebec Street, Suite 300
Number    Street

Greenwood Village, Colorado 80111
City    State    ZIP Code

Contact phone _____

Contact email _____

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☒ No <br> ☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____ <br>     MM / DD / YYYY |

| | | |
|---|---|---|
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No <br> ☐ Yes. Who made the earlier filing? _____ |

---

Official Form 410        **Proof of Claim**        page 1
4136-N-2071

| | | |
|---|---|---|
| 6. | Do you have any number you use to identify the debtor? | ☐ No ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2243 |

| | | |
|---|---|---|
| 7. | How much is the claim? | $650,183.10 _____. **Does this amount include interest or other charges?** ☐ No ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. | What is the basis of the claim? Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or, credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information. |
| | Money Loaned |

| | |
|---|---|
| 9. | Is all or part of the claim secured? |

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of Property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: 3057 42nd Avenue West, Seattle, Washington 98109

**Basis for Perfection:** Recordation of Lien
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ _____

Amount of the claim that is secured: $650,183.10 _____

Amount of the claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $650,183.10 _____

Annual Interest Rate (when case was filed) 7.020000%
☑ Fixed
☐ Variable

| | | |
|---|---|---|
| 10. | Is this claim based on a lease? | ☑ No ☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |

| | | |
|---|---|---|
| 11. | Is this claim subject to a right of setoff? | ☑ No ☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check one:* | | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C.§ 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.

$ _____

\* Amounts are subject to adjustment on 04/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date        06/20/2024
                    MM / DD / YYYY

/s/ Issa F. Kamara
    Signature

Print the name of the person who is completing and signing this claim:

| Name | Issa F. Kamara | | |
| | First name | Middle name | Last name |
| Title | Authorized Agent for Newrez LLC dba Shellpoint Mortgage Servicing (fka Specialized Loan Servicing LLC) | | |
| Company | Bonial & Associates, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 9013 | | |
| | Number     Street | | |
| | Addison | Texas | 75001 |
| | City | State | ZIP Code |
| Contact phone | (972) 643-6600 | Email | POCInquiries@BonialPC.com |

Official Form 410                                 Proof of Claim                              page 3
4136-N-2071
Case 24-10218-CMA    Claim 2-1    Filed 06/21/24    Desc Main Document    Page 3 of 28
Case 24-10218-CMA    Doc 139-1    Filed 04/09/25    Ent. 04/09/25 03:12:51    Pg. 27 of 49

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

(12/23)

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 24-10218 |
| Debtor 1: | Melanie A. Smith |
| | aka M A Smith aka M Smith |
| Debtor 2: | |
| Last 4 digits to identify: | 2243 |
| Creditor: | Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-8, Asset-backed Securities, Series 2006-8 |
| Servicer: | Newrez LLC dba Shellpoint Mortgage Servicing (fka Specialized Loan Servicing LLC) |
| Fixed accrual/daily simple interest/other: | Fixed |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $342,213.85 |
| Interest due: | $304,735.69 |
| Fees, costs due: | $0.00 |
| Escrow deficiency for funds advanced: | |
| Deferred: | $3,233.56 |
| Less total funds on hand: | |
| Total debt: | $650,183.10 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal due: | |
| Interest due: | |
| Prepetition fees due: | |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | $0.00 |
| Total prepetition arrearage: | $650,183.10 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Starting Balance | | $0.00 | | | | | | | | | | |
| 08/01/2009 | $2,379.33 | | | Regular Payment Due | 08/01/2009 | $2,379.33 | | | | | | $344,550.62 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/11/2009 | | $2,379.33 | | Payment Received | 09/01/2009 | $0.00 | $363.71 | $2,015.62 | | | | $344,186.91 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/21/2009 | | ($2,379.33) | | Payment Reversal | 09/01/2009 | $2,379.33 | ($363.71) | ($2,015.62) | | | | $344,550.62 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/21/2009 | | | $25.00 | NSF Fee | 08/01/2009 | $2,379.33 | | | | | | $344,550.62 | $0.00 | $0.00 | $0.00 | $25.00 |
| 09/01/2009 | $2,379.33 | | | Regular Payment Due | 08/01/2009 | $4,758.66 | | | | | | $344,550.62 | $0.00 | $0.00 | $0.00 | $25.00 |
| 09/30/2009 | | | $10.35 | Inspection Fee | 08/01/2009 | $4,758.66 | | | | | | $344,550.62 | $0.00 | $0.00 | $0.00 | $35.35 |
| 10/01/2009 | $2,379.33 | | | Regular Payment Due | 08/01/2009 | $7,137.99 | | | | | | $344,550.62 | $0.00 | $0.00 | $0.00 | $35.35 |
| 10/12/2009 | | $2,380.00 | | $0.67 Payment Received | 09/01/2009 | $4,758.66 | $363.71 | $2,015.62 | | $0.67 | | $344,186.91 | $0.00 | $0.00 | $0.00 | $35.35 |
| 10/12/2009 | | | $118.20 | Late Fee | 09/01/2009 | $4,758.66 | | | | | | $344,186.91 | $0.00 | $0.00 | $0.00 | $153.64 |

Official Form 410 A

Case number: 24-10218

Debtor 1: Melanie A. Smith

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | Accrued interest balance | Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/01/2009 | $2,379.33 | | | Regular Payment Due | 09/01/2009 | $7,137.99 | | | | | | $344,185.91 | $0.00 | $0.00 | $153.64 | $0.00 |
| 11/03/2009 | | | $10.35 | Inspection Fee | 09/01/2009 | $7,137.99 | | | | | | $344,185.91 | $0.00 | $0.00 | $163.99 | $0.00 |
| 12/01/2009 | $2,379.33 | | | Regular Payment Due | 09/01/2009 | $9,517.32 | | | | | | $344,185.91 | $0.00 | $0.00 | $163.99 | $0.00 |
| 12/02/2009 | | | $10.35 | Inspection Fee | 09/01/2009 | $9,517.32 | | | | | | $344,185.91 | $0.00 | $0.00 | $174.34 | $0.00 |
| 12/21/2009 | | | $115.00 | BPO/Appraisal Fee | 09/01/2009 | $9,517.32 | | | | | | $344,185.91 | $0.00 | $0.00 | $289.34 | $0.00 |
| 01/01/2010 | $2,379.33 | | | Regular Payment Due | 09/01/2009 | $11,896.65 | | | | | | $344,185.91 | $0.00 | $0.00 | $289.34 | $0.00 |
| 01/04/2010 | | | $10.35 | Inspection Fee | 09/01/2009 | $11,896.65 | | | | | | $344,185.91 | $0.00 | $0.00 | $299.69 | $0.00 |
| 02/01/2010 | $2,379.33 | | | Regular Payment Due | 09/01/2009 | $14,275.98 | | | | | | $344,185.91 | $0.00 | $0.00 | $299.69 | $0.00 |
| 02/03/2010 | | | $10.35 | Inspection Fee | 09/01/2009 | $14,275.98 | | | | | | $344,185.91 | $0.00 | $0.00 | $310.04 | $0.00 |
| 03/01/2010 | $2,379.33 | | | Regular Payment Due | 09/01/2009 | $16,655.31 | | | | | | $344,185.91 | $0.00 | $0.00 | $310.04 | $0.00 |
| 03/03/2010 | | | $10.35 | Inspection Fee | 09/01/2009 | $16,655.31 | | | | | | $344,185.91 | $0.00 | $0.00 | $320.39 | $0.00 |
| 04/01/2010 | $2,379.33 | | | Regular Payment Due | 09/01/2009 | $19,034.64 | | | | | | $344,185.91 | $0.00 | $0.00 | $320.39 | $0.00 |
| 04/02/2010 | | $4,000.00 | | Payment Received | 09/01/2009 | $19,034.64 | | | | | $4,000.00 | $344,185.91 | $0.00 | $0.00 | $320.39 | $4,000.00 |
| 04/05/2010 | | | | NSF Fee | 09/01/2009 | $19,034.64 | | | | $25.00 | ($25.00) | $344,185.91 | $0.00 | $0.00 | $295.39 | $3,975.00 |
| 04/05/2010 | | | | BPO/Appraisal Fee | 09/01/2009 | $19,034.64 | | | | $115.00 | ($115.00) | $344,185.91 | $0.00 | $0.00 | $180.39 | $3,860.00 |
| 04/05/2010 | | | | Inspection Fee | 09/01/2009 | $19,034.64 | | | | $10.35 | ($10.35) | $344,185.91 | $0.00 | $0.00 | $170.04 | $3,849.65 |
| 04/05/2010 | | | | Inspection Fee | 09/01/2009 | $19,034.64 | | | | $10.35 | ($10.35) | $344,185.91 | $0.00 | $0.00 | $159.69 | $3,839.30 |
| 04/05/2010 | | | | Inspection Fee | 09/01/2009 | $19,034.64 | | | | $10.35 | ($10.35) | $344,185.91 | $0.00 | $0.00 | $149.34 | $3,828.95 |
| 04/05/2010 | | | | Inspection Fee | 09/01/2009 | $19,034.64 | | | | $10.35 | ($10.35) | $344,185.91 | $0.00 | $0.00 | $138.99 | $3,818.60 |
| 04/05/2010 | | | | Inspection Fee | 09/01/2009 | $19,034.64 | | | | $10.35 | ($10.35) | $344,185.91 | $0.00 | $0.00 | $128.64 | $3,808.25 |
| 04/05/2010 | | | | Inspection Fee | 09/01/2009 | $19,034.64 | | | | $10.35 | ($10.35) | $344,185.91 | $0.00 | $0.00 | $118.29 | $3,797.90 |
| 04/05/2010 | | | $118.96 | Late Fee | 09/01/2009 | $19,034.64 | | | | | | $344,185.91 | $0.00 | $0.00 | $237.25 | $3,797.90 |
| 04/05/2010 | | | | Payment Applied | 10/01/2009 | $16,655.31 | $365.84 | $2,013.49 | | | ($2,379.33) | $343,821.07 | $0.00 | $0.00 | $237.25 | $1,418.57 |
| 04/05/2010 | $1,418.57 | | | Principal Applied | 10/01/2009 | $16,655.31 | $1,418.57 | | | | ($1,418.57) | $342,402.50 | $0.00 | $0.00 | $237.25 | $0.00 |
| 04/21/2010 | | | $11.35 | Inspection Fee | 10/01/2009 | $16,655.31 | | | | | | $342,402.50 | $0.00 | $0.00 | $248.60 | $0.00 |
| 05/01/2010 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $19,034.64 | | | | | | $342,402.50 | $0.00 | $0.00 | $248.60 | $0.00 |
| 06/01/2010 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $21,413.97 | | | | | | $342,402.50 | $0.00 | $0.00 | $248.60 | $0.00 |
| 07/01/2010 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $23,793.30 | | | | | | $342,402.50 | $0.00 | $0.00 | $248.60 | $0.00 |

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 24-10218

Debtor 1: Melanie A. Smith

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
| 08/01/2010 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $26,172.63 | | | | | | $342,402.50 | $0.00 | $0.00 | $248.60 | $0.00 |
| 09/01/2010 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $28,551.96 | | | | | | $342,402.50 | $0.00 | $0.00 | $248.60 | $0.00 |
| 10/01/2010 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $30,931.29 | | | | | | $342,402.50 | $0.00 | $0.00 | $248.60 | $0.00 |
| 10/08/2010 | | $200.00 | | Payment Received | 10/01/2009 | $30,931.29 | | | | | $200.00 | $342,402.50 | $0.00 | $0.00 | $248.60 | $200.00 |
| 10/11/2010 | | | $200.00 | Inspection Fee | 10/01/2009 | $30,931.29 | | | | $11.35 | ($11.35) | $342,402.50 | $0.00 | $0.00 | $237.25 | $188.65 |
| 10/11/2010 | $188.65 | | | Principal Applied | 10/01/2009 | | $188.65 | | | | ($188.65) | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 11/01/2010 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $33,310.62 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 12/01/2010 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $35,689.95 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 01/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $38,069.28 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 02/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $40,448.61 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 03/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $42,827.94 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 04/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $45,207.27 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 05/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $47,586.60 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 06/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $49,965.93 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 07/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $52,345.26 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 08/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $54,724.59 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 09/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $57,103.92 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 10/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $59,483.25 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 11/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $61,862.58 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 12/01/2011 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $64,241.91 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 01/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $66,621.24 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 02/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $69,000.57 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 03/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $71,379.90 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 04/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $73,759.23 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 05/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $76,138.56 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 06/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $78,517.89 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 07/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $80,897.22 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 08/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $83,276.55 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |

(12/23)

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 24-10218

Debtor 1: Melanie A. Smith

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees/ Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $85,655.88 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 10/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $88,035.21 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 11/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $90,414.54 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 12/01/2012 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $92,793.87 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 01/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $95,173.20 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 02/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $97,552.53 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 03/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $99,931.86 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 04/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $102,311.19 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 05/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $104,690.52 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 06/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $107,069.85 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 07/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $109,449.18 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 08/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $111,828.51 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 09/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $114,207.84 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 10/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $116,587.17 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 11/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $118,966.50 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 12/01/2013 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $121,345.83 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 01/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $123,725.16 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 02/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $126,104.49 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 03/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $128,483.82 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 04/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $130,863.15 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 05/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $133,242.48 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 06/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $135,621.81 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 07/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $138,001.14 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 07/18/2014 | | | $6,780.72 | Late Fee | 10/01/2009 | $138,001.14 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 08/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $140,380.47 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 09/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $142,759.80 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 10/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $145,139.13 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 11/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $147,518.46 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |

Official Form 410 A

4136-N-2071

Mortgage Proof of Claim Attachment

Case 24-10218-CMA    Claim 2-1    Filed 06/21/24    Desc Main Document    Page 7 of 28

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 24-10218

Debtor 1: Melanie A. Smith

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | |
| | | | | | | | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | Balance After Amount Received or incurred | |
| 11/11/2014 | | | $100.00 | BPO/Apraisal Fee | 10/01/2009 | $147,518.46 | | | | | | $342,213.85 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/12/2014 | | | ($100.00) | BPO/Apraisal Fee | 10/01/2009 | $147,518.46 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 12/01/2014 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $149,897.79 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 01/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $152,277.12 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 02/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $154,656.45 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 03/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $157,035.78 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 04/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $159,415.11 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 05/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $161,794.44 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 06/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $164,173.77 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 07/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $166,553.10 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 08/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $168,932.43 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 09/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $171,311.76 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 10/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $173,691.09 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 11/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $176,070.42 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 12/01/2015 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $178,449.75 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 01/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $180,829.08 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 02/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $183,208.41 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 03/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $185,587.74 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 04/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $187,967.07 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 05/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $190,346.40 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 06/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $192,725.73 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 07/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $195,105.06 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 08/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $197,484.39 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 09/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $199,863.72 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 10/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $202,243.05 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 11/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $204,622.38 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 12/01/2016 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $207,001.71 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 01/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $209,381.04 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |

Official Form 410 A | Mortgage Proof of Claim Attachment | Page 5 of 9

4136-N-2071

Case number: 24-10218

Debtor 1: Melanie A. Smith

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $211,760.37 | | | | | | $342,213.85 | $342,213.85 | $0.00 | $7,017.97 | $0.00 |
| 03/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $214,139.70 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 04/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $216,519.03 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 05/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $218,898.36 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 06/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $221,277.69 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 07/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $223,657.02 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 08/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $226,036.35 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 09/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $228,415.68 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 10/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $230,795.01 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 11/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $233,174.34 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 12/01/2017 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $235,553.67 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 01/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $237,933.00 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 02/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $240,312.33 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 03/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $242,691.66 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 04/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $245,070.99 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 05/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $247,450.32 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 06/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $249,829.65 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 07/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $252,208.98 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 08/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $254,588.31 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 09/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $256,967.64 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 10/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $259,346.97 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 11/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $261,726.30 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 12/01/2018 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $264,105.63 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 01/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $266,484.96 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 02/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $268,864.29 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 03/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $271,243.62 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 04/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $273,622.95 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 05/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $276,002.28 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |

4136-N-2071

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 24-10218

Debtor 1: Melanie A. Smith

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity | | | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | C. Funds received | D. Amount incurred | E. Description | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 06/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $278,381.61 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 07/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $280,760.94 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 08/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $283,140.27 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 09/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $285,519.60 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 10/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $287,898.93 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 11/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $290,278.26 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 12/01/2019 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $292,657.59 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 01/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $295,036.92 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 02/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $297,416.25 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 03/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $299,795.58 | | | | | | $342,213.85 | $0.00 | $0.00 | $7,017.97 | $0.00 |
| 03/16/2020 | | | ($6,780.72) | Late Fee Adjustment | 10/01/2009 | $299,795.58 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 04/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $302,174.91 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 05/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $304,554.24 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 06/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $306,933.57 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 07/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $309,312.90 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 08/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $311,692.23 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 09/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $314,071.56 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 10/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $316,450.89 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 11/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $318,830.22 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 12/01/2020 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $321,209.55 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 01/01/2021 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $323,588.88 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 02/01/2021 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $325,968.21 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 03/01/2021 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $328,347.54 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 04/01/2021 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $330,726.87 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 05/01/2021 | $2,379.33 | | | Regular Payment Due | 10/01/2009 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 05/01/2021 | | | | Loan Maturity | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 01/30/2024 | | | $98,067.77 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $98,305.02 | $0.00 |
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $197,305.02 | $0.00 |

Official Form 410 A

Mortgage Proof of Claim Attachment

4136-N-2071

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 24-10218

Debtor 1: Melanie A. Smith

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $296,305.02 | $0.00 |
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $395,305.02 | $0.00 |
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $494,305.02 | $0.00 |
| 01/30/2024 | | | $5,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $499,305.02 | $0.00 |
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $598,305.02 | $0.00 |
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $697,305.02 | $0.00 |
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $796,305.02 | $0.00 |
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $895,305.02 | $0.00 |
| 01/30/2024 | | | $99,000.00 | Corporate Advance | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $994,305.02 | $0.00 |
| 02/20/2024 | | | ($98,067.77) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $896,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $797,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $698,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $599,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $500,237.25 | $0.00 |
| 02/20/2024 | | | ($5,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $495,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $396,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $297,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $198,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $99,237.25 | $0.00 |
| 02/20/2024 | | | ($99,000.00) | Corporate Advance Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 06/06/2024 | | | | Case Conversion | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $237.25 | $0.00 |
| 06/06/2024 | | | ($237.25) | Late Fee Adjustment | 05/01/2021 | $333,106.20 | | | | | | $342,213.85 | $0.00 | $0.00 | $0.00 | $0.00 |

| Fill in this information to identify the case: | |
| --- | --- |
| Debtor 1 | Melanie A. Smith |
| | aka M A Smith aka M Smith |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Western District of Washington (State) |
| Case number | 24-10218 |

# Mortgage Proof of Claim Attachment: Addendum

## Additional Claim Itemization:

| Loan History Date | Actual Date Incurred | Description | Amount |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |
| | | | |

## POC Special Language:

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor, has been duly indorsed, or creditor, directly or through an agent, has possession of the promissory note and may enforce the promissory note as a transferee in possession. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust. If the original promissory note is lost or destroyed, then Creditor will seek to prove the promissory note using a lost note affidavit.

*Please be advised that this loan matured on May 1, 2021 and the entire total debt is currently due. The above Total Debt amount simply reflects the loan balance at petition and does not contemplate post-petition interest that will accrue on the unpaid principal balance or advances that may be made on the loan. The aforementioned amounts may remain outstanding at discharge. Creditor reserves the right to collect these amounts if they are not paid by the Trustee or the Debtor prior to discharge.

This loan is not currently escrowed for taxes or insurance.



I CERTIFY THIS TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL.
BY:_____
FIRSTWEST ESCROW

### NOTE

LOAN NO:

#### WITH BALLOON PAYMENT

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| APRIL 13, 2006 | SEATTLE | WASHINGTON |
|---|---|---|
| *Date* | *City* | *State* |

3057 42ND AVENUE WEST, SEATTLE, WA 98109-
*Property Address*

#### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 350,000.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is PLAZA HOME MORTGAGE, INC.

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

#### 2. INTEREST

I will pay interest at a yearly rate of 11.250 %.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

#### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 3,399.41 .

I will make my payments on the 1st day of each month beginning on JUNE, 2006 .

I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on MAY 01, 2021 I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at PLAZA HOME MORTGAGE, INC. 5090 SHOREHAM PLACE, STE. 108, SAN DIEGO, CA 92122

or at a different place if required by the Note Holder.

#### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment, but not less than U.S. $ 5.00 and not more than U.S. $ 169.97 . I will pay this late charge only once on any late payment.

(B) Default

If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.

WASHINGTON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT- BALLOON

Form 3948 - MODIFIED

V-76(WA) (0208) Modified for Balloon     Page 1 of 3     LENDER SUPPORT SYSTEMS INC 2ND8L-WA NEW (07/05)

**(C) Notice from Note Holder**

If I am in default, the Note Holder may send me a written notice telling me that, if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated **APRIL 13, 2006** , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_Melanie A Smith_ 4/13/06 _____ (Seal)
MELANIE A SMITH                -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                               -Borrower

*[Sign Original Only]*

V-75(WA) (0208) Modified for Balloon          Page 3 of 3                    Form 3948 - MODIFIED

Pay to the order of
Without Recourse:

Laurie Willhite, Operations Manager
Plaza Home Mortgage, Inc.

**LOAN MODIFICATION AGREEMENT
ON BALLOON MORTGAGE**

This Loan Modification Agreement (this "Agreement"), made and effective this June 1, 2009 between Specialized Loan Servicing LLC, as Servicer for the Lender or current Note Holder ("Servicer"), and MELANIE A SMITH ("Borrower"), modifies and amends certain terms of Borrower's indebtedness evidenced by (1) the Note (the "Note") dated the April 13, 2006 and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined as the "Property", located at:

3057 42ND AVENUE WEST
SEATTLE, WA 98109

For purposes of this Agreement, unless the context clearly requires otherwise, all capitalized terms which are used but not otherwise defined herein shall have the respective meanings assigned to such terms in the Note or Security Instrument.

In consideration of the mutual promises and agreements exchanged, Servicer and Borrower agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of May 31, 2009, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $344,913.11. Effective June 1, 2009 the Unpaid Principal Balance will be $344,913.11 (the "Modified Unpaid Principal Balance"). The amount capitalized is $0.00 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

   | | | |
   |---|---|---|
   | a. | Unpaid Interest | $0.00 |
   | b. | Escrow Advances | $0.00 |
   | c. | Corporate Advances | $0.00 |

2. The amount to be written off is $0.00 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

   | | | |
   |---|---|---|
   | a. | Principal Balance | $0.00 |
   | b. | Unpaid Interest | $0.00 |
   | c. | Corporate Advances | $0.00 |

3. The amount deferred is $3,233.56 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

   | | | |
   |---|---|---|
   | a. | Unpaid Interest | $3,233.56 |
   | b. | Corporate Advances | $0.00 |

4. Borrower promises to pay the Modified Unpaid Principal Balance, plus interest, to the order of the Note Holder. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 7.020% from June 1, 2009. Borrower promises to make monthly payments of principal and interest of $2,379.33 beginning on July 1, 2009, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on May 1, 2021 (the "Balloon" or "Modified Balloon Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Balloon Date.

5. Borrower will make such payments at PO Box 105219 Atlanta, GA. 30348-5219 Attn: Remittance Processing or at such other place as the Note Holder may require.

6.  Borrower will also comply with all other covenants, agreements, and requirements of the Security Instrument, including, without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and other payments that Borrower is obligated to make under the terms of the Security Instrument. The original loan documents may have included Riders for unique ARM, Interest Only and Conversion features. The Rider terms and features remain in effect unless otherwise modified by this Agreement.

7.  Borrower agrees to execute such other and further documents as may be reasonably necessary to consummate the transaction contemplated herein or to perfect the lien and security interest intended to secure the payment of the loan evidenced by the Note.

8.  This Agreement, when executed, shall be binding and inure to the heirs, executors, administrators and assigns of Borrower.

9.  In the event Borrower's personal liability under the Note has been discharged in a Chapter 7 Bankruptcy, notwithstanding anything in this Agreement to the contrary, including, without limitation the provisions in the preceding paragraph, Borrower and Note Holder acknowledge and agree that Borrower's personal liability under the Note has been discharged in a Chapter 7 Bankruptcy and that this Agreement shall not be construed as: (1) an attempt by Note Holder to collect the underlying debt from Borrower's personal assets; and/or (2) as a violation of the post-discharge injunction set forth in 11 U.S.C. Section 524. On the contrary, Borrower and Note Holder desire to modify the underlying loan terms in order to facilitate Borrower's full compliance with the terms of the Note and Security Instrument.

10. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Note Holder will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

11. If all or any part of the Property or any interest in the Property is sold or transferred without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the terms of the Security Instrument, within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice to or demand on Borrower.

In Witness Whereof, Servicer and Borrower have executed this Agreement.

_Melanie A. Smith_  6/5/09

MELANIE A SMITH                Date

Specialized Loan Servicing LLC, as Servicer

By: _____

Name Printed

Title:          Susan Miller
                Vice President
                Cash Operations

Return To:
PLAZA HOME MORTGAGE, INC.
5090 SHOREHAM PLACE, STE. 109
SAN DIEGO, CA 92122

**200604180001423**
CHICAGO TITLE DT        39.00
PAGE001 OF 007
04/18/2006 13:38
KING COUNTY, WA

Assessor's Parcel or Account Number:

Abbreviated Legal Description:                    [Include lot, block and plat or section, township and range]
LOTS 1 AND 2, BLOCK 4, VOLUME 5 OF PLATS, PAGE 21

Full legal description located on page 1.

——————————————— [Space Above this Line For Recording Data] ———————————————

## DEED OF TRUST

NOTICE: THIS LOAN CONTAINS
PROVISIONS THAT ALLOW FOR A
BALLOON   PAYMENT   AT
MATURITY.

THIS DEED OF TRUST is made this        13th        day of                 APRIL, 2006        ,
among the Grantor,
MELANIE A SMITH, A SINGLE PERSON


CHICAGO TITLE
                                                                                    (herein "Borrower"),

                                                                   (herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter
defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware,
and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026. tel. (888) 679-MERS.
PLAZA HOME MORTGAGE, INC.

                                                                                       , ("Lender")
is organized and existing under the laws   CALIFORNIA                                   , and
has an address of
5090 SHOREHAM PLACE, STE. 109, SAN DIEGO, CA  92122

    BORROWER, in consideration of the indebtedness herein recited and the trust herein created,
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in the County of        KING                          , State of Washington:
LOTS 1 AND 2, BLOCK 4, HIAWATHA PARK SECOND ADDITION TO THE CITY OF SEATTLE, ACCORDING
TO THE PLAT THEREOF, RECORDED IN VOLUME 5 OF PLATS, PAGE 21, IN KING COUNTY,
WASHINGTON.




SEE "BALLOON RIDER" ATTACHED HERETO AND MADE A PART HEREOF.


which has the address of        3057 42ND AVENUE WEST                       SEATTLE
                               [Street]                                     [City]
Washington        98109-        (herein "Property Address");
              [ZIP Code]

                                                                   Form 3848
                                                                   Amended 2/99

WASHINGTON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS
VMP-76N(WA) (0308).02              Page 1 of 5          LENDER SUPPORT SYSTEMS INC. 2ND76NWA.NEW (12/04)

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated _____APRIL 13, 2006_____ and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ _____350,000.00_____ , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on _____MAY 01, 2021_____ ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of (i) the right to reinstate after acceleration, (ii) the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure, and (iii) any other matters required to be included in such notice by applicable law. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the lapse of such time as may be required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of the Property for a period or periods not exceeding a total of 30 days by public announcement at the time and place fixed in the notice of sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto, or to the Clerk of the Superior Court of the County in which the sale took place.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the tenth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

Case 24-10218-CMA   Doc 139-1   Filed 04/09/25   Ent. 04/09/25 03:12:51   Pg. 47 of 49

**21. Substitute Trustee.** In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Use of Property.** The Property is not used principally for agricultural or farming purposes.

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____
-Witness

_____
-Witness

_Melanie A. Smith_ (Seal)
MELANIE A SMITH  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*(Sign Original Only)*

STATE OF WASHINGTON
County of King } ss:

On this day personally appeared before me
MELANIE A SMITH

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 13 day of April 2006 .

_Michelle McAlister_

Notary Public in and for the State of Washington, residing at
Seattle

My Appointment Expires on 5/15/09

Specialized Loan
# Servicing
Part of the Computershare Group

8742 LUCENT BOULEVARD, SUITE 300
HIGHLANDS RANCH, CO 80129

|ı|ı|ı|ı|ı|ıı|ı|ı|ı|ıı|ı|ı|ı|ıı|ı|ıı|ı|ı|ı|ıı|ı|ı|

MELANIE A SMITH
3057 42ND AVE W
SEATTLE, WA 981992421

002582

To obtain information about your account, contact us at:
1-800-306-6057. We accept calls from relay services on behalf
of hearing impaired borrowers.

**Mortgage Statement**
Statement Date: 02/17/20

| | |
|---|---|
| Account Number | 1002002243 |
| Payment Date | 03/01/20 |
| Payment Amount | $161,794.44 |

Property Address:
3057 42ND AVENUE WEST
SEATTLE, WA 98109



---

### Bankruptcy Message

**Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.**

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

**If you want to stop receiving statements, write to us.**

### Explanation of Payment Amount
(Post-Petition Payment)

| | |
|---|---|
| Principal | $782.40 |
| Interest | $1,596.93 |
| Escrow (for Taxes and Insurance) | $0.00 |
| Regular Monthly Payment | $2,379.33 |
| Total Fees and Charges | $0.00 |
| Past Unpaid Amounts | $159,415.11 |
| Total Payment Amount | $161,794.44 |

*The Payment Amount does not include any amount that was past due before you filed for bankruptcy.*

### Breakdown of Past Payments

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Suspense | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

### **Account Information**

| | |
|---|---|
| Outstanding Principal | $342,213.85 |
| Deferred Principal | $0.00 |
| Escrow Balance | $0.00 |
| Interest Rate | 7.02000% |
| Prepayment Penalty | No |
| Deferred Interest | $3,233.56 |
| Other Deferred Amounts | $0.00 |
| Uncollected Interest | $0.00 |

### Important Messages

**We may not have received all of your mortgage payments due since you filed for bankruptcy.**

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or Trustee if you have questions.

**Cramdown/Modification:** If this account is subject to a modification/cramdown order, the Explanation of Payment amount will reflect the post-petition payment amount provided under the confirmed plan until any applicable cramdown conditions occur and system adjustments completed.

**If You Are Experiencing Financial Difficulty:** You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

### Summary of Amounts Past Due Before Bankruptcy Filing (Pre-Petition Arrearage)

| | |
|---|---|
| Paid Last Month | $0.00 |
| Total Paid During Bankruptcy | $0.00 |
| Current Balance | $138,952.15 |

This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment.

### Transaction Activity (01/18/20 to 02/17/20)

| Effective Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/ Charges | Suspense* |
|---|---|---|---|---|---|---|---|---|
| | | ***NO TRANSACTIONS TO REPORT*** | | | | | | |

ExJ

## PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.

142SL0101.MICRRegMid.e1.d.4274/002582/005449

142S LP0008 / R

Case 24-10218-CMA    Doc 139-1    Filed 04/09/25    Ent. 04/09/25 03:12:51    Pg. 49 of 49