The Honorable Christopher M Alston
Chapter 7
Hearing Location: United States Bankruptcy
Court, Courtroom 7206,
700 Stewart Street,
Seattle, WA 98101
Hearing Date: 5/29/25
Hearing Time: 9:30 am
Response Date: 5/22/25

## UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF WASHINGTON

In re:                                            ) NO. 24-10218-CMA
                                                  )
Melanie A Smith aka M A Smith aka M Smith         ) DEBTOR'S HOUSE OFFER OF
                                                  ) TIMM DATED 2/12/25 FOR
        Debtor                                    ) $1.475M
                                                  )
                                                  )
                                                  )
                                                  )
                                                  )
                                                  )

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**Best Choice**
R E A L T Y

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
Specific Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

1. **Date:** February 12, 2025    **MLS No.:** 2328482    **Offer Expiration Date:** 2/13/2025 5pm

2. **Buyer:** Renata Timm and or assigns     **An unmarried person**
   Buyer      Buyer      Status

3. **Seller:** Melanie Smith
   Seller      Seller

4. **Property:** Legal Description attached as Exhibit A. Tax Parcel No(s).: 3271800216 _____, _____, _____

   | 3057 | 42nd Avenue W | Seattle | King | WA | 98199 |
   | Address | | City | County | State | Zip |

5. **Included Items:** ☐ stove(s)/range(s); ☐ refrigerator(s); ☐ washer(s); ☐ dryer(s); ☐ dishwasher(s); ☐ microwave(s); ☐ fireplace insert(s); ☐ wood stove(s); ☐ satellite dish; ☐ security system; ☐ hot tub; ☐ attached camera(s); ☐ attached speaker(s); ☐ attached TV(s); ☐ generator; ☐

6. **Purchase Price:** $ 1,475,000.00    One Million Four Hundred Seventy-Five Thousand _____ U.S. Dollars

7. **Earnest Money:** $ 20,000.00 _____ U.S. Dollars;    Delivery Date 2 ___ days after mutual acceptance
   To be held by ☐ Buyer Brokerage Firm; ☒ Closing Agent; ☐ In the form of a Promissory Note (included as an Addendum)

8. **Default:** (check only one) ☒ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies

9. **Title Insurance Company:** Chicago Title & Escrow

10. **Closing Agent:** Chicago Escrow
    Company      Individual (optional)

11. **Closing Date:** 3/19/2025 _____; **Possession Date:** ☒ on Closing; ☐ Other _____

12. **Services of Closing Agent for Payment of Utilities:** ☒ Requested (attach NWMLS Form 22K); ☐ Waived

13. **Charges/Assessments Levied Before but Due After Closing:** ☐ assumed by Buyer; ☒ prepaid in full by Seller at Closing

14. **Seller Citizenship (FIRPTA):** Seller ☐ is; ☐ is not a foreign person for purposes of U.S. income taxation

15. **Information Verification Period:** ☒ Expires 5 ___ days after mutual acceptance; ☐ Satisfied/Waived

16. **Agency Disclosure:** Buyer represented by: ☒ Buyer Broker; ☐ Buyer/Listing Broker (limited dual agent); ☐ unrepresented
    Seller represented by: ☒ Listing Broker; ☐ Listing/Buyer Broker (limited dual agent); ☐ unrepresented

17. **Buyer Brokerage Compensation:** % 2.5 ; 2.5%    ☐ Addendum for Buyer Credit
    (a) Seller's Offer (if any)    (b) Amount to be Paid by Seller

18. **Addenda:** 22D(Optional Clauses)    22EF(Funds Evidence)    22J(Lead Disclosure)    22K(Utilities)
    35(Inspection)    35E(Escalation)

---

*Renata Timm*      02/12/2025
Buyer Signature      Date      Seller Signature      Date

Buyer Signature      Date      Seller Signature      Date

Buyer Address      Seller Address

City, State, Zip      City, State, Zip
     (206) 283-8615

Buyer Phone No.    Fax No.      Seller Phone No.    Fax No.
renatatimm1@yahoo.com
Buyer E-mail Address      Seller E-mail Address

| **Best Choice Realty LLC** | 2735 | **John L. Scott, Inc.** | 7315 |
| Buyer Brokerage Firm | MLS Office No. | Listing Brokerage Firm | MLS Office No. |
| **Sarah Abader** | 89030 | **Melanie Smith** | 81901 |
| Buyer Broker (Print) | MLS LAG No. | Listing Broker (Print) | MLS LAG No. |
| (206) 886-3986   (253) 732-1216 | (253) 277-0364 | (425) 744-5300   (206) 369-3404 | (425) 744-5355 |
| Firm Phone No.   Broker Phone No. | Firm Fax No. | Firm Phone No.   Broker Phone No. | Firm Fax No. |

support@bestchoicerealtywa.com      notices.lynnwood@johnlscott.com
Firm Document E-mail Address      Firm Document E-mail Address
sarahabaderre@gmail.com      meljls@aol.com
Buyer Broker E-mail Address      Listing Broker E-mail Address

| 107861 | 18833 | 5889 | 2131 |
| Buyer Broker DOL License No. | Firm DOL License No. | Listing Broker DOL License No. | Firm DOL License No. |

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**a.** **Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless 1
otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance 2
with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other 3
property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties 4
shall use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take 5
steps to confirm any wire instructions via an independently verified phone number and other appropriate measures. 6

**b.** **Earnest Money.** Buyer shall deliver the Earnest Money by the Delivery Date listed in Specific Term No. 7 (2 days after 7
mutual acceptance if not filled in) to the party holding the Earnest Money (Buyer Brokerage Firm or Closing Agent). If 8
sent by mail, the Earnest Money must arrive at Buyer Brokerage Firm or Closing Agent by the Delivery Date. If the 9
Earnest Money is held by Buyer Brokerage Firm and is over $10,000.00 it shall be deposited into an interest bearing 10
trust account in Buyer Brokerage Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, after 11
deduction of bank charges and fees, will be paid to Buyer. Buyer shall reimburse Buyer Brokerage Firm for bank 12
charges and fees in excess of the interest earned, if any. If the Earnest Money held by Buyer Brokerage Firm is over 13
$10,000.00 Buyer has the option to require Buyer Brokerage Firm to deposit the Earnest Money into the Housing Trust 14
Fund Account, with the interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer 15
does not complete an IRS Form W-9 before Buyer Brokerage Firm must deposit the Earnest Money or the Earnest 16
Money is $10,000.00 or less, the Earnest Money shall be deposited into the Housing Trust Fund Account. Buyer 17
Brokerage Firm may transfer the Earnest Money to Closing Agent at Closing. If all or part of the Earnest Money is to be 18
refunded to Buyer and any such costs remain unpaid, the Buyer Brokerage Firm or Closing Agent may deduct and pay 19
them therefrom. The parties instruct Closing Agent to provide written verification of receipt of the Earnest Money and 20
notice of dishonor of any check to the parties and Brokers at the addresses and/or fax numbers provided herein. 21

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest 22
Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent. 23
If either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest 24
Money. Pursuant to RCW 64.04.220, Closing Agent shall deliver notice of the demand to the other party within 15 days. 25
If the other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse 26
the Earnest Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing 27
Agent timely receives an objection or an inconsistent demand from the other party, Closing Agent shall commence an 28
interpleader action within 60 days of such objection or inconsistent demand, unless the parties provide subsequent 29
consistent instructions to Closing Agent to disburse the earnest money or refrain from commencing an interpleader 30
action for a specified period of time. Pursuant to RCW 4.28.080, the parties consent to service of the summons and 31
complaint for an interpleader action by first class mail, postage prepaid at the party's usual mailing address or the 32
address identified in this Agreement. If the Closing Agent complies with the preceding process, each party shall be 33
deemed to have released Closing Agent from any and all claims or liability related to the disbursal of the Earnest 34
Money. If either party fails to authorize the release of the Earnest Money to the other party when required to do so 35
under this Agreement, that party shall be in breach of this Agreement. For the purposes of this section, the term Closing 36
Agent includes a Buyer Brokerage Firm holding the Earnest Money. The parties authorize the party commencing an 37
interpleader action to deduct up to $750.00 for the costs thereof. The parties acknowledge that RCW 64.04.220 requires 38
the court to award the Closing Agent its reasonable attorneys' fees and costs associated with an interpleader action. 39

**c.** **Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is 40
checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, 41
drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed 42
television antennas; ventilating, air conditioning and heating fixtures; trash compactor; garbage disposal; fireplace 43
doors, gas logs and gas log lighters; irrigation fixtures; electric garage door openers; water heaters; installed electrical 44
fixtures; lighting fixtures; shrubs, plants and trees planted in the ground; and other fixtures; and all associated operating 45
remote controls and access permissions. Unless otherwise agreed, if any of the above items are leased or encumbered, 46
Seller shall acquire clear title before Closing. 47

**d.** **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. 48
The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, 49
presently of record and general to the area; easements and encroachments, not materially affecting the value of or 50
unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not 51
convey or reserve any oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary 52
encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be 53
conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate 54
Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after 55
acquired title. 56

02/12/2025

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**e.** **Title Insurance**. Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current 57
ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance 58
Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines 59
to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party 60
applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance 61
Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title 62
Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy, together with 63
homeowner's additional protection and inflation protection endorsements, if available. The Title Insurance Company 64
shall send a copy of the preliminary commitment to Seller, Listing Broker, Buyer and Buyer Broker. The preliminary 65
commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and 66
Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be 67
made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, 68
unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described 69
in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance 70
or damages as a consequence of Seller's inability to provide insurable title. 71

**f.** **Closing and Possession**. This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls 72
on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, 73
the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when 74
the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale 75
proceeds are available to Seller. Seller shall deliver keys, garage door remotes, and access codes to Buyer on the 76
Closing Date or on the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on 77
the Possession Date. Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the 78
Buyer is provided possession. Seller shall either repair or replace any system or appliance (including, but not limited to 79
plumbing, heat, electrical, and all Included Items) that becomes inoperative or malfunctions prior to Closing with a 80
system or appliance of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of 81
Closing to verify that Seller has maintained the Property and systems/appliances as required by this paragraph. Seller 82
shall not enter into or modify existing leases or rental agreements, service contracts, or other agreements affecting the 83
Property which have terms extending beyond Closing without first obtaining Buyer's consent, which shall not be 84
unreasonably withheld. If possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A 85
(Rental Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After 86
Closing) (or alternative rental agreements) and are advised of the need to contact their respective insurance companies 87
to assure appropriate hazard and liability insurance policies are in place, as applicable. 88

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon 89
monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy 90
the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit, that does not have at least one 91
smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person 92
occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller 93
complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless 94
from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property. 95

**g.** **Section 1031 Like-Kind Exchange**. If either Buyer or Seller intends for this transaction to be a part of a Section 1031 96
like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the 97
cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and 98
costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating 99
party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a 100
Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the 101
purposes of completing a reverse exchange. 102

**h.** **Closing Costs and Prorations and Charges and Assessments**. Seller and Buyer shall each pay one-half of the 103
escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, and 104
lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, including credit 105
report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any payments are 106
delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such delinquencies at 107
Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, prior to Closing, 108
Seller obtains a written statement from the supplier as to the quantity and current price and provides such statement to the 109
Closing Agent. Seller shall pay all utility and internet charges, including unbilled charges. Unless waived in Specific Term 110
No. 12, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy unpaid utility 111
charges in accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities providing service 112
to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or equivalent). 113

02/12/2025

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

Form 21
Residential PSA
Rev. 8/24
Page 4 of 6

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid as required in Specific Term No. 13.

**i.** **Sale Information**. Listing Broker and Buyer Broker are authorized to report this Agreement (including price and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Broker and/or Buyer Broker, on request, any and all information and copies of documents concerning this sale.

**j.** **Seller Citizenship and FIRPTA**. Seller warrants that the identification of Seller's citizenship status for purposes of U.S. income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") and provide the certification to the Closing Agent within 10 days of mutual acceptance. If Seller is a foreign person for purposes of U.S. income taxation, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service. Seller shall pay any fees incurred by Buyer related to such withholding and payment.

If Seller fails to provide the FIRPTA certification to the Closing Agent within 10 days of mutual acceptance, Buyer may give notice that Buyer may terminate the Agreement at any time 3 days thereafter (the "Right to Terminate Notice"). If Seller has not earlier provided the FIRPTA certification to the Closing Agent, Buyer may give notice of termination of this Agreement (the "Termination Notice") any time following 3 days after delivery of the Right to Terminate Notice. If Buyer gives the Termination Notice before Seller provides the FIRPTA certification to the Closing Agent, this Agreement is terminated and the Earnest Money shall be refunded to Buyer.

**k.** **Notices and Delivery of Documents**. Any notice related to this Agreement (including revocations of offers or counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by Buyer Broker, or at the licensed office of Buyer Broker. Documents related to this Agreement, such as NWMLS Form 17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Buyer Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice.

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Buyer Broker and Buyer Brokerage Firm or both Listing Broker and Listing Brokerage Firm at the e-mail addresses specified on page one of this Agreement; (ii) Buyer Broker or Listing Broker provide written acknowledgment of receipt of the e-mail (an automatic e-mail reply does not constitute written acknowledgment); or (iii) if a party is unrepresented, the e-mail is sent directly to the party's e-mail address specified on page one of this Agreement. At the request of either party, or the Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document.

**l.** **Computation of Time**. Unless otherwise specified in this Agreement, any period of time measured in days and stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. When counting backwards from Closing, any period of time measured in days shall start on the day prior to Closing and if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day, moving forward, that is not a Saturday, Sunday or legal holiday (e.g. Monday or Tuesday). If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement.

**m.** **Integration and Electronic Signatures**. This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

02/12/2025

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**n.** **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement. [169][170][171]

**o.** **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply: [172][173]

   **i.** **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure. [174][175]

   **ii.** **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity. [176][177][178][179]

**p.** **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses. [180][181][182][183]

**q.** **Offer.** This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. [184][185][186][187]

**r.** **Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a counteroffer, the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. [188][189][190][191][192][193]

**s.** **Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, unless sooner withdrawn. [194][195][196]

**t.** **Agency Disclosure.** Buyer Brokerage Firm, Buyer Brokerage Firm's Designated Broker, Buyer Broker's Branch Manager (if any) and Buyer Broker's Managing Broker (if any) represent the same party that Buyer Broker represents. Listing Brokerage Firm, Listing Brokerage Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) represent the same party that the Listing Broker represents. All parties acknowledge receipt of the pamphlet entitled "Real Estate Brokerage in Washington." [197][198][199][200][201]

**u.** **Brokerage Firm Compensation.** Seller and Buyer shall pay compensation in accordance with any listing or compensation agreement to which they are a party. The Listing Brokerage Firm's compensation shall be paid as specified in the listing agreement. The compensation offered by Seller to the Buyer Brokerage Firm, if any, is set forth in Specific Term No. 17(a), and if there is any inconsistency between the Buyer Brokerage Firm's compensation offered and the description of the offered compensation stated in Specific Term No. 17(a), the terms shall be as set forth in the published offer. Seller shall pay the Buyer Brokerage Firm compensation set forth in Specific Term No. 17(b). Seller and Buyer hereby consent to Listing Brokerage Firm or Buyer Brokerage Firm receiving compensation from more than one party. Seller and Buyer hereby assign to Listing Brokerage Firm and Buyer Brokerage Firm, as applicable, a portion of their funds in escrow equal to such compensation and irrevocably instruct the Closing Agent to disburse the compensation directly to the Firm(s). In any action by Listing or Buyer Brokerage Firm to enforce this paragraph, the prevailing party is entitled to court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third-party beneficiaries under this Agreement. [202][203][204][205][206][207][208][209][210][211][212][213]

**v.** **Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter. [214][215][216]

**w.** **Information Verification Period.** Unless satisfied/waived, Buyer shall have the time period set forth in Specific Term No. 15 (10 days after mutual acceptance if not filled in) to verify all information provided from Seller or Listing Brokerage Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within the time period set forth in Specific Term No. 15. If Buyer gives timely notice under this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. [217][218][219][220][221]

02/12/2025

| | | | |
|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date |

| | | | |
|---|---|---|---|
| Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

Form 21
Residential PSA
Rev. 8/24
Page 6 of 6

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**x.** **Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations 222
and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. 223
The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations 224
under this Agreement and that none of the Brokers has agreed to independently investigate or confirm any matter 225
related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In 226
addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain 227
building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of 228
lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other 229
defects arising after construction, such as drainage, leakage, pest, rot and mold problems. In addition, some properties 230
may contain soil or other contamination that is not readily apparent and may be hazardous. Brokers do not have the 231
expertise to identify or assess defective or hazardous products, materials, or conditions. Buyer is urged to use due 232
diligence to inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of 233
defective or hazardous materials and conditions and evaluate the Property as there may be defects and hazards that 234
may only be revealed by careful inspection. Buyer is advised to investigate whether the Property is suitable for Buyer's 235
intended use and to ensure the water supply is sufficient to meet Buyer's needs. Buyer is advised to investigate the cost 236
of insurance for the Property, including, but not limited to homeowner's, fire, flood, earthquake, landslide, and other 237
available coverage. Buyer acknowledges that local ordinances may restrict short term rentals of the Property. Buyer and 238
Seller acknowledge that home protection plans may be available which may provide additional protection and benefit to 239
Buyer and Seller. Brokers may assist the parties with locating and selecting third-party service providers, such as 240
inspectors or contractors, but Brokers cannot guarantee or be responsible for the services provided by those third 241
parties. The parties shall exercise their own judgment and due diligence regarding third-party service providers. 242

**y.** **Fair Housing.** Seller and Buyer acknowledge that local, state, and federal fair housing laws prohibit discrimination 243
based on sex, marital status, sexual orientation, gender identity, race, creed, color, religion, caste, national origin, 244
citizenship or immigration status, families with children status, familial status, honorably discharged veteran or military 245
status, the presence of any sensory, mental, or physical disability, or the use of a support or service animal by a person 246
with a disability. 247

02/12/2025

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**Best Choice**
R E A L T Y

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## EVIDENCE OF FUNDS ADDENDUM
## TO PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated **February 12, 2025** _____ 1

between **Renata Timm and or assigns** _____ ("Buyer") 2
    Buyer         Buyer

and **Melanie Smith** _____ ("Seller") 3
   Seller         Seller

concerning **3057 42nd Avenue W    Seattle   WA 98199** ___ (the "Property"). 4
   Address       City     State  Zip

1. **DEFINITIONS.** 5

 a. "Evidence" means document(s) from a financial institution(s) in the United States showing that Buyer has 6
  sufficient cash or cash equivalent in United States funds. 7

 b. "Non-Contingent Funds" means funds that Buyer currently has in its possession and for which there is no 8
  contingency, such as financing (NWMLS Form 22A or equivalent), sale of Buyer's property (NWMLS Form 9
  22B or equivalent), or pending sale of Buyer's property (NWMLS Form 22Q or equivalent). 10

 c. "Contingent Funds" means funds that Buyer does not currently have, but expects to receive from another 11
  source prior to Closing, and for which there is no contingency, such as a loan, proceeds from the sale of 12
  other property or stock, retirement funds, foreign funds, a gift, or future earnings. 13

2. ☑ **EVIDENCE OF NON-CONTINGENT FUNDS.** Buyer is relying on Non-Contingent Funds for payment of the 14
 Purchase Price. Buyer shall provide Evidence to Seller of such funds within **3**_____ days (3 days if not 15
 filled in) of mutual acceptance. Unless Buyer discloses other sources of funds for the payment of the Purchase 16
 Price, Buyer represents that the Non-Contingent Funds are sufficient to pay the Purchase Price. Buyer shall not 17
 use such Non-Contingent Funds for any purpose other than the purchase of the Property without Seller's prior 18
 written consent. If Buyer fails to timely provide such Evidence, Seller may give notice terminating this 19
 Agreement any time before such Evidence is provided. Upon Seller's notice of termination under this 20
 Addendum, the Earnest Money shall be refunded to Buyer. 21

3. ☑ **DISCLOSURE OF CONTINGENT FUNDS.** Buyer is relying on Contingent Funds for the Purchase Price: 22

 ❑ Loan:_____ 23

 ❑ Sale of the following owned by Buyer: _____ 24

 ❑ Gift of $ _____ from _____ 25

 ❑ Funds not readily convertible to liquid US funds: _____ 26

 ❑ Down Payment Program: _____ 27

 ☑ Other (describe): **Partners Financial Institution** _____ 28

Buyer shall provide Evidence to Seller **1**_____ days (10 days if not filled in) prior to Closing that the funds 29
relied upon in Section 3 have been received or are immediately available to Buyer. If Buyer fails to timely 30
provide such Evidence, Seller may give notice terminating this Agreement any time before such Evidence is 31
provided. Buyer shall provide Seller with additional information about such funds as may be reasonably 32
requested by Seller from time to time. Upon Seller's notice of termination under this Addendum, the Earnest 33
Money shall be refunded to Buyer. 34

If Buyer disclosed that Buyer is obtaining a loan, Seller shall permit an appraisal of the Property and inspections 35
required by lender, including but not limited to structural, pest, heating, plumbing, roof, electrical, septic, and 36
well inspections. Seller is not obligated to pay for such inspections unless otherwise agreed. 37

4. **BUYER DEFAULT.** If Buyer fails to timely close because the Contingent Funds identified in Section 3 are not 38
 available by Closing, Buyer shall be in default and Seller shall be entitled to remedies as provided for in the 39
 Agreement. 40

_RT_ 02/12/2025   _____   _____   _____
Buyer's Initials  Date  Buyer's Initials  Date  Seller's Initials  Date  Seller's Initials  Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

# Best Choice
### R E A L T Y

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### OPTIONAL CLAUSES ADDENDUM TO
### PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated  **February 12, 2025**  1

between **Renata Timm and or assigns** ("Buyer")  2
    Buyer      Buyer

and **Melanie Smith** ("Seller")  3
    Seller      Seller

concerning **3057    42nd Avenue W**       **Seattle**      **WA   98199**   (the "Property").  4
    Address      City      State   Zip

**CHECK IF INCLUDED:**  5

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Broker and Buyer Broker make no representations  6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of  7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on  8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and  9
encroachments to Buyer's own satisfaction.  10

2. **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA  11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting  12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy:  13

    ❑ **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to  14
apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's  15
additional protection and inflation protection endorsements, if available at no additional cost, rather than  16
the Homeowner's Policy of Title Insurance.  17

    ❑ **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for  18
an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's  19
Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage  20
Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and  21
the cost of any survey required by the title insurer.  22

3. ❑ **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish  23
from the Property prior to Buyer taking possession.  24

4. ❑ **Personal Property.**  Unless otherwise agreed, Seller shall remove all personal property from the Property  25
not later than the Possession Date. Any personal property remaining on the Property thereafter shall become  26
the property of Buyer, and may be retained or disposed of as Buyer determines.  27

5. ☑ **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to:  28
☑ public water main; ☑ public sewer main; ❑ septic tank; ❑ well (specify type) _____ ;  29
❑ irrigation water (specify provider) _____ ; ❑ natural gas; ❑ telephone; ☑ electricity;  30
❑ cable (specify provider) _____ ; ❑ internet (specify provider) _____ ;  31
☑ other **oil tank** .  32

6. ❑ **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require  33
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish  34
Buyer the information below in writing as soon as available:  35

WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____  36

CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____  37

OTHER INSULATION DATA: _____  38

02/12/2025

Buyer's Initials    Date     Buyer's Initials    Date     Seller's Initials    Date     Seller's Initials    Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### OPTIONAL CLAUSES ADDENDUM TO
### PURCHASE & SALE AGREEMENT
*Continued*

7. ☐ **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following 39
items of personal property that are included with the sale: ☐ propane tank; ☐ security system; ☐ satellite 40
dish and operating equipment; ☐ other _____ . 41

Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled 42
in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within 43
_____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever 44
is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer 45
shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further 46
obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely 47
notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 48

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 49
other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if 50
available from the Association) within _____ days (10 days if not filled in) of mutual acceptance: 51

   a. Association rules and regulations, including, but not limited to architectural guidelines; 52
   b. Association bylaws and covenants, conditions, and restrictions (CC&Rs); 53
   c. Association meeting minutes from the prior two (2) years; 54
   d. Association Board of Directors meeting minutes from the prior six (6) months; and 55
   e. Association financial statements from the prior two (2) years and current operating budget. 56

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not 57
filled in) of receipt of the above documents or the date that the above documents are due, whichever is 58
earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If 59
Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be 60
refunded to Buyer. 61

9. ☐ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association 62
or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for 63
in the association documents. If the association documents do not provide which party pays the fee, the fee 64
shall be paid by ☐ Buyer; ☐ Seller (Seller if not filled in). 65

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 66
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 67
removal of the Excluded Item(s). Excluded Item(s): 68

  69
  70

11. ☑ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide 71
additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows: 72

   a. Home warranty provider: _____ 73

   b. Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together 74
     with any included options, and Buyer shall pay any balance. 75

   c. Options to be included: _____ 76
     _____ (none, if not filled in). 77

   d. Other: <u>Buyer Agent to provide 1 year home warranty at no additional cost to buyer or seller</u> . 78

12. ☑ **Other.** 79
**Seller is a licensed real estate broker in the state of washington.** 80
  81
  82
**Buyer to gain access to view the property within 24 hours of acceptance of this offer.** 83
  84
  85

02/12/2025

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**Best Choice**
R E A L T Y

**DISCLOSURE OF INFORMATION ON
LEAD-BASED PAINT AND
LEAD-BASED PAINT HAZARDS**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated __February 12, 2025__  1

between _____ Renata Timm and or assigns _____ ("Buyer")  2
         Buyer                                    Buyer

and _____ Melanie Smith _____ ("Seller")  3
         Seller                                   Seller

concerning 3057   42nd Avenue W          Seattle        WA  98199 _____ (the "Property").  4
         Address                          City          State  Zip

**Lead Warning Statement**  5

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is  6
notified that such property may present exposure to lead from lead-based paint that may place young children at  7
risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage,  8
including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead  9
poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is  10
required to provide the buyer with any information on lead-based paint hazards from risk assessments or  11
inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk  12
assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.  13

**NOTE:** In the event of pre-closing possession of more than 100 days by Buyer, the term Buyer also means Tenant.  14
15

**Seller's Disclosure**  16

(a) Presence of lead-based paint and/or lead-based paint hazards (check one below):  17

  ❑ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).  18
19
20

  ❑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.  21

(b) Records and reports available to the Seller (check one below):  22

  ❑ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint and/or lead-  23
   based paint hazards in the housing (list documents below).  24
25
26

  ❑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.  27

Seller has reviewed the information above and certifies, to the best of Seller's knowledge, that the statements made  28
and information provided by Seller are true and accurate.  29

_____    _____    30
Seller                    Date       Seller                    Date

**[signature]** 02/12/2025    _____    _____    _____
Buyer Initials  Date       Buyer Initials  Date       Seller Initials  Date       Seller Initials  Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**DISCLOSURE OF INFORMATION ON
LEAD-BASED PAINT AND
LEAD-BASED PAINT HAZARDS**
*Continued*

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**Buyer's Acknowledgment**  31

  (c)  Buyer has received the above Seller's Disclosure and all documents (if any). _____  32
                Buyer Initials        Buyer Initials

  (d)  Buyer has received the pamphlet *Protect Your Family from Lead in Your Home*. _____  33
                Buyer Initials        Buyer Initials

  (e)  Buyer has (check one below):  34

      ❑  Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint  35
          and/or lead-based paint hazards.  36

      ❑  Accepted an opportunity to conduct a risk assessment or inspection for the presence of lead-based paint  37
          and/or lead-based paint hazards on the following terms and conditions:  38

          This Agreement is conditioned upon a risk assessment or inspection of the Property for the presence of lead-  39
          based paint and/or lead-based paint hazards, to be performed by a risk assessor or inspector at Buyer's  40
          expense. (Intact lead-based paint that is in good condition is not necessarily a hazard).  41

          This contingency shall conclusively be deemed satisfied (waived) unless Buyer gives written notice of  42
          disapproval of the risk assessment or inspection to Seller within _____ (10 days if not filled in) after  43
          receiving this Disclosure. Buyer's notice must identify the specific existing deficiencies and corrections  44
          needed and must include a copy of the inspection and/or risk assessment report.  45

          Seller may, at Seller's option, within _____ days (3 days if not filled in) after Seller's receipt of Buyer's  46
          disapproval notice, give written notice that Seller will correct the conditions identified by Buyer. If Seller  47
          agrees to correct the conditions identified by Buyer, then it shall be accomplished at Seller's expense prior  48
          to the Closing Date, and Seller shall provide Buyer with certification from a risk assessor or inspector  49
          demonstrating that the condition(s) has been remedied prior to the Closing Date. In lieu of correction, the  50
          parties may agree on any other remedy for the disapproved condition(s), including but not limited to  51
          adjustments to the Purchase Price. If an agreement on non-repair remedies is secured in writing before the  52
          expiration of the time period set forth in this subparagraph, then this contingency shall be deemed satisfied.  53

          If Seller does not give notice that Seller will correct the conditions identified in Buyer's risk assessment or  54
          inspection, or if the parties cannot reach an agreement on alternative remedies, then Buyer may elect to give  55
          notice of termination of this Agreement within _____ days (3 days if not filled in) after expiration of the  56
          time limit or delivery of Seller's notice pursuant to the preceding paragraph, whichever occurs first. The  57
          Earnest Money shall then be returned to Buyer and the parties shall have no further obligations to each other.  58
          Buyer's failure to give a written notice of termination means that Buyer will be required to purchase the  59
          Property without Seller having corrected the conditions identified in Buyer's risk assessment or inspection  60
          and without any alternative remedy for those conditions.  61

Buyer has reviewed the information above and certifies, to the best of Buyer's knowledge, that the statements made  62
by Buyer are true and accurate.  63

   64

_____   _____   _____   _____
Buyer                   Date        Buyer                   Date

**Brokers' Acknowledgment**  65
  Brokers have informed Seller of Seller's obligations under 42 U.S.C. 4852(d) and are aware of their responsibility  66
  to ensure compliance.  67

*Sarah Abader*        02/12/2025         _____   _____
Buyer Broker             Date        Listing Broker            Date  68

*RJ*  02/12/2025
_____   _____   _____   _____   _____   _____   _____   _____
Buyer Initials   Date      Buyer Initials   Date      Seller Initials   Date      Seller Initials   Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**Best Choice**
R E A L T Y

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Form 22K
Identification of Utilities Addendum
Rev. 3/21
Page 1 of 1

## IDENTIFICATION OF UTILITIES
## ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __February 12, 2025__    1

between __Renata Timm and or assigns__ ("Buyer")   2
       Buyer        Buyer

and __Melanie Smith__ ("Seller")   3
    Seller       Seller

concerning __3057    42nd Avenue W      Seattle     WA  98199__ (the "Property").   4
      Address       City     State   Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds 5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities 6
providing service to the Property and having lien rights are as follows: 7

WATER DISTRICT:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

SEWER DISTRICT:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

IRRIGATION DISTRICT:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

GARBAGE:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

ELECTRICITY:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

GAS:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

SPECIAL DISTRICT(S):
(local improvement districts or
utility local improvement districts)

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1) 29
within _____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing 30
Broker or Buyer Broker with the names and addresses of all utility providers having lien rights affecting the Property 31
and (2) Buyer and Seller authorize Listing Broker or Buyer Broker to insert into this Addendum the names and 32
addresses of the utility providers identified by Seller. 33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges 34
(including unbilled charges). Buyer understands that the Listing Broker and Buyer Broker are not responsible for, or 35
to insure payment of, Seller's utility charges. 36

02/12/2025

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**Best Choice**
R E A L T Y

**INSPECTION ADDENDUM TO
PURCHASE AND SALE AGREEMENT**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated **February 12, 2025** _____ 1

between **Renata Timm and or assigns** _____ ("Buyer") 2
　　　　　　　Buyer　　　　　　　　　　　　　　　　　Buyer

and **Melanie Smith** _____ ("Seller") 3
　　　　Seller　　　　　　　　　　　　　　　　　　Seller

concerning **3057　42nd Avenue W**　　　　　　**Seattle**　　　　**WA　98199**　(the "Property"). 4
　　　　　　Address　　　　　　　　　　　　　City　　　　　　State　Zip

1. **INSPECTION CONTINGENCY.** This Agreement is conditioned on Buyer's subjective satisfaction with 5
   inspections of the Property and the improvements on the Property. Buyer's inspections may include, at Buyer's 6
   option and without limitation, the structural, mechanical and general condition of the improvements to the 7
   Property, compliance with building and zoning codes, an inspection of the Property for hazardous materials, a 8
   pest inspection, and a soils/stability inspection. Buyer's general home inspection must be performed by Buyer or 9
   a person licensed under RCW 18.280. Buyer may engage specialists (e.g. plumbers, electricians, roofers, etc.) 10
   to conduct further inspections of the Property. 11

   a. **Sewer Inspection.** Buyer's inspection of the Property ☒ may; ☐ may not (may, if not checked) include an 12
      inspection of the sewer system, which may include a sewer line video inspection and assessment and may 13
      require the inspector to remove toilets or other fixtures to access the sewer line. 14

2. **BUYER'S OBLIGATIONS.** All inspections are to be (a) ordered by Buyer, (b) performed by inspectors of Buyer's 15
   choice, and (c) completed at Buyer's expense. Buyer shall not alter the Property or any improvements on the 16
   Property without first obtaining Seller's permission. Buyer is solely responsible for interviewing and selecting all 17
   inspectors. Buyer shall restore the Property and all improvements on the Property to the same condition they 18
   were in prior to the inspection. Buyer shall be responsible for all damages resulting from any inspection of the 19
   Property performed on Buyer's behalf. 20

3. **BUYER'S NOTICE.** This inspection contingency shall conclusively be deemed waived and Seller shall not be 21
   obligated to make any repairs or modifications unless within **5** _____ days (10 days if not filled in) after mutual 22
   acceptance of this Agreement (the "Initial Inspection Period"), Buyer gives notice (a) approving the inspection and 23
   waiving this contingency; (b) disapproving the inspection and terminating the Agreement; (c) that Buyer will conduct 24
   additional inspections; or (d) proposing repairs to the property or modifications to the Agreement. If Buyer 25
   disapproves the inspection and terminates the Agreement, the Earnest Money shall be refunded to Buyer. If Buyer 26
   proposes repairs to the property or modifications to the Agreement, including adjustments to the purchase price or 27
   credits for repairs to be performed after Closing, the parties shall negotiate as set forth in Paragraph 6, below. The 28
   parties may use NWMLS Form 35R to give notices required by this Addendum. 29

4. **INSPECTION REPORT.** Buyer shall not provide the inspection report, or portions of the report, to Seller, unless 30
   Seller requests otherwise in writing. Upon Seller's written request, Buyer shall provide to Seller the inspection 31
   report, portions of the report, or the inspector's recommendation for additional inspections, as requested by Seller. 32

   a. **Waiver of Contingency by Buyer.** If Buyer provides any portion of the inspection report to Seller without 33
      Seller's prior written request or consent, the inspection contingency shall conclusively be deemed waived. 34

   b. **Seller Request.** The selection of any checkbox below by Seller shall not be considered a counteroffer. 35

      ☐ Seller requests that Buyer provide the inspection report to Seller. 36

      ☐ If Buyer requests repairs or modifications to the Agreement, Seller requests that Buyer provide only the 37
        portions of the inspection report related to the requested repairs or modifications to Seller. 38

      ☐ If Buyer provides notice of additional inspections pursuant to Paragraph 5, Seller requests that Buyer 39
        provide a copy of the inspector's recommendation for additional inspections to Seller. 40

5. **ADDITIONAL TIME FOR INSPECTIONS.** If an inspector so recommends, Buyer shall have additional time to 41
   obtain further evaluation of any item by a specialist at Buyer's option and expense if, on or before the end of the 42
   Initial Inspection Period, Buyer provides notice that Buyer will seek additional inspections and, upon Seller's 43
   request, a copy of the inspector's recommendation. If Buyer provides timely notice of additional inspections (and, 44
   if requested by Seller, a copy of the inspector's recommendation), Buyer shall have _____ (5 days if not 45

_RJ_ 02/12/2025
_____　_____　_____　_____
Buyer's Initials　Date　　Buyer's Initials　Date　　Seller's Initials　Date　　Seller's Initials　Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**INSPECTION ADDENDUM TO
PURCHASE AND SALE AGREEMENT**
*Continued*

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

filled in) after giving the notice to obtain the additional inspection(s) as recommended by the inspector and the 46
Initial Inspection Period shall be so extended. 47

6. **BUYER'S REQUESTS FOR REPAIRS OR MODIFICATIONS.** If Buyer requests repairs or modifications 48
pursuant to Paragraph 3, the parties shall negotiate as set forth in this Paragraph 6. Buyer's initial request and 49
Seller's response made in accordance with the following procedures are irrevocable for the time period provided. 50

    a. **Seller's Response to Request for Repairs or Modifications.** Seller shall have _____ days (3 days 51
    if not filled in) after receipt of Buyer's request for repairs or modifications to give notice that Seller (i) agrees 52
    to the repairs or modifications proposed by Buyer; (ii) agrees to some of the repairs or modifications 53
    proposed by Buyer; (iii) rejects all repairs or modifications proposed by Buyer; or (iv) offers different or 54
    additional repairs or modifications. If Seller agrees to the terms of Buyer's request for repairs or 55
    modifications, this contingency shall be satisfied and Buyer's Reply shall not be necessary. If Seller does not 56
    agree to all of Buyer's repairs or modifications, Buyer shall have an opportunity to reply, as follows: 57

    b. **Buyer's Reply.** If Seller does not agree to all of the repairs or modifications proposed by Buyer, Buyer shall 58
    have _____ days (3 days if not filled in) from either the day Buyer receives Seller's response or, if Seller 59
    fails to timely respond, the day Seller's response period ends, whichever is earlier, to (i) accept the Seller's 60
    response at which time this contingency shall be satisfied; (ii) agree with the Seller on other remedies; or (iii) 61
    disapprove the inspection and terminate the Agreement, in which event, the Earnest Money shall be 62
    refunded to Buyer. 63

    **ATTENTION BUYER:** These time periods for negotiating repairs or modifications shall not repeat. The parties 64
must either reach a written agreement or Buyer must terminate this Agreement by the Buyer's Reply deadline set 65
forth in Paragraph 6(b). Buyer's inaction during Buyer's reply period shall result in waiver of this inspection 66
condition, in which case Seller shall not be obligated to make any repairs or modifications whatsoever and this 67
contingency shall be deemed waived. 68

7. **REPAIRS.** If Seller agrees to make the repairs proposed by Buyer, then repairs shall be accomplished at Seller's 69
expense in a commercially reasonable manner and in accordance with all applicable laws no fewer than 70
_____ days (3 days if not filled in) prior to the Closing Date. In the case of hazardous materials, "repair" 71
means removal or treatment (including but not limited to removal or, at Seller's option, decommissioning of any 72
oil storage tanks) of the hazardous material at Seller's expense as recommended by and under the direction of a 73
professional selected by Seller. Seller's repairs are subject to re-inspection and approval, prior to Closing, by the 74
inspector or specialist who recommended the repair, if Buyer elects to order and pay for such re-inspection. If 75
Buyer agrees to pay for any repairs prior to Closing, the parties are advised to seek the counsel of an attorney to 76
review the terms of that agreement. 77

8. **OIL STORAGE TANKS.** Any inspection regarding oil storage tanks or contamination from such tanks shall be 78
limited solely to determining the presence or non-presence of oil storage tanks on the Property, unless otherwise 79
agreed in writing by Buyer and Seller. 80

9. **ON-SITE SEWAGE DISPOSAL SYSTEMS ADVISORY.** Buyer is advised that on-site sewage disposal systems, 81
including "septic systems," are subject to strict governmental regulation and occasional malfunction and even 82
failure. Buyer is advised to consider conducting an inspection of any on-site sewage system in addition to the 83
inspection of the Property provided by this Form 35 by including an appropriate on-site sewage disposal 84
inspection contingency such as NWMLS Form 22S (Septic Addendum). 85

10. ☒ **NEIGHBORHOOD REVIEW CONTINGENCY.** If the box is checked, Buyer's inspection includes Buyer's 86
subjective satisfaction that the conditions of the neighborhood in which the Property is located are consistent with 87
the Buyer's intended use of the Property (the "Neighborhood Review"). The Neighborhood Review may include 88
Buyer's investigation of the schools, proximity to bus lines, availability of shopping, traffic patterns, noise, parking 89
and investigation of other neighborhood, environmental and safety conditions the Buyer may determine to be 90
relevant in deciding to purchase the Property. If Buyer does not give notice of disapproval of the Neighborhood 91
Review within 3 (3 days if not filled in) of mutual acceptance of the Agreement, then this Neighborhood 92
Review condition shall conclusively be deemed satisfied (waived). If Buyer gives a timely notice of disapproval, then 93
this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 94

02/12/2025

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**Best Choice**
R E A L T Y

**ESCALATION ADDENDUM TO
PURCHASE AND SALE AGREEMENT**

©Copyright 2025
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated **February 12, 2025**    1

between **Renata Timm and or assigns** ("Buyer")   2
    Buyer        Buyer

and **Melanie Smith** ("Seller")   3
    Seller        Seller

concerning **3057    42nd Avenue W**    **Seattle**    **WA**   **98199**   (the "Property").   4
    Address        City        State    Zip

**NOTICE TO BUYER:** Buyer agrees to have the Purchase Price increased if Seller receives an equal or higher offer   5
from another buyer (the "Competing Offer"). This Addendum does not assure that the Competing Offer will have all the   6
same terms as this Agreement. Buyer is cautioned to offer no more than Buyer is willing to pay for the Property. Buyer   7
acknowledges that Seller may disclose the terms of Buyer's offer, including this Addendum, to other potential buyers.   8

1. **PURCHASE PRICE.** If Seller receives a Competing Offer for the Property prior to accepting this offer, with a   9
   Net Price equal to or greater than the Net Price of this offer, then  the purchase price of this offer shall be   10
   increased by **$500.00** ("Escalation Amount") more than the Net Price of the Competing Offer and   11
   adjusted for Credits as set forth in Appendix 1. In no event, however, shall the new Purchase Price of this offer   12
   exceed **$1,499,000.00** ("Maximum Purchase Price").   13

   The term "Net Price" means the stated Purchase Price (or the maximum price if the Competing Offer contains a   14
   price escalation clause) adjusted for any Credits to Buyer or Seller.  For purposes of this Addendum, "Credits"   15
   means credits for closing costs, concessions, and broker compensation in Buyer's offer.   16

2. **COMPETING OFFER.** A Competing Offer must be a complete copy of a bona fide, arm's length, written offer on   17
   NWMLS or similar forms, containing all material terms necessary for an enforceable agreement which (a) requires   18
   the full Purchase Price to be paid in cash at closing; (b) provides for closing no later than _____ days (60 days if   19
   not filled in) from the date of this offer; and (c) is not contingent on the sale of the buyer's property (i.e. no NWMLS   20
   Form 22B or equivalent). A Competing Offer may include other conditions, such as a buyer's pending sale of   21
   property contingency (i.e. NWMLS Form 22Q or equivalent).   22

3. **PURCHASE PRICE ESCALATION.** To escalate the Purchase Price, Seller shall provide notice to Buyer of the   23
   new Purchase Price, together with a copy of the Competing Offer, at the time Seller accepts Buyer's offer. The   24
   new Purchase Price shall be calculated using the Notice of New Purchase Price (Form 35EC) and in accordance   25
   with the formulas attached hereto in Appendix 1. Seller's escalation of this offer shall not be effective unless it is   26
   accompanied by a complete copy of the Competing Offer used to escalate the Purchase Price.   27

4. **NON-QUALIFYING ESCALATION.**  After Seller delivers Notice of New Purchase Price (Form 35EC), the   28
   parties shall use the Escalation Addendum Notice (Form 35EN) for notices required by this section.   29

   a. **Notice to Seller – No Competing Offer.**   30

       i. If Seller fails to provide a Competing Offer to Buyer at the time of mutual acceptance, then Buyer may give   31
          notice to Seller of that fact within _____ days (3 days if not filled in). If Buyer fails to timely give such notice,   32
          then Buyer shall be obligated to purchase at the new Purchase Price calculated by Seller.   33

       ii. If Buyer provides such notice, Seller shall have _____ days (1 day if not filled in) to deliver the Competing   34
          Offer to Buyer. If Seller fails to timely deliver the Competing Offer, Buyer shall be entitled to purchase the   35
          Property at the non-escalated price.   36

**02/12/2025**

Buyer's Initials    Date      Buyer's Initials    Date      Seller's Initials    Date      Seller's Initials    Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

Form 35E
Escalation Addendum
Rev. 1/25
Pages 2 of 3

©Copyright 2025
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**ESCALATION ADDENDUM TO
PURCHASE AND SALE AGREEMENT**

| | | |
|---|---|---|
| **b.** | **Notice to Seller – Non-Qualifying Offer.** | 37 |
| i. | If the offer provided by Seller does not qualify as a Competing Offer under Paragraph 2 of this Addendum, Buyer may deliver notice to Seller of that fact within _____ days (3 days if not filled in) of receipt of the Competing Offer. If Buyer fails to timely give such notice, the offer shall conclusively be deemed to qualify as a Competing Offer under Paragraph 2 of this Addendum. | 38 39 40 41 |
| ii. | If Buyer provides such notice to Seller, Seller shall have _____ days (2 days if not filled in) to give notice of termination of this Agreement. If Seller timely gives such notice, the Earnest Money shall be refunded to Buyer. If Seller does not timely give such notice of termination, then Buyer shall be entitled to purchase the Property at the non-escalated Purchase Price. | 42 43 44 45 |
| **c.** | **Notice to Seller – New Purchase Price.** | 46 |
| i. | If the new Purchase Price calculated by Seller is incorrect, Buyer may deliver notice to Seller of that fact within _____ days (3 days if not filled in) of receipt of the Notice of New Purchase Price (Form 35EC) and the Competing Offer. Buyer's notice shall include Buyer's calculation of the new Purchase Price in the Escalation Addendum Notice (Form 35EN). If Buyer fails to timely give such notice, the new Purchase Price stated in the Notice of New Purchase Price (Form 35EC) shall conclusively be deemed to be correct. | 47 48 49 50 51 |
| ii. | If Buyer provides such notice to Seller, Seller shall have _____ days (2 days if not filled in) to give notice of termination of this Agreement. If Seller timely provides such notice, the Earnest Money shall be refunded to Buyer. If Seller does not timely give notice of termination, then Buyer's calculated new Purchase Price in Buyer's notice shall conclusively be deemed to be correct. | 52 53 54 55 |

02/12/2025

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**ESCALATION ADDENDUM TO
PURCHASE AND SALE AGREEMENT**

©Copyright 2025
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## <u>APPENDIX 1 - Formulas for Calculating New Purchase Price</u>

The formulas below calculate the new Purchase Price after determining the Net Purchase Price of the Competing Offer, the  56
Escalated Purchase Price for this offer, and any limit set by the Maximum Purchase Price for this offer. Seller shall use the Notice of  57
New Purchase Price (Form 35EC) to perform the calculations.  58

**1.  Example of Form 35EC calculation worksheet:**  59

| | | | | | |
|---|---|---|---|---|---|
| A. | **Competing Offer Purchase Price** ............................................... | | $ _____ *A* _____ | | 60 |
| | (or the maximum purchase price of the Competing Offer if it contains an escalation provision) | | | | 61 |
| **Competing Offer's:** | B. | Credits to Buyer ($ amount) .............................................. | - $ _____ *B* _____ | | 62 |
| | C. | Credits to Buyer (% of purchase price) .............................. | - _____ *C* _____ % | | 63 |
| | D. | Credits to Seller ($ amount)............................................... | + $ _____ *D* _____ | | 64 |
| | E. | Credits to Seller (% of purchase price) .............................. | + _____ *E* _____ % | | 65 |
| F. | **Competing Offer Net Purchase Price** ....................................... | | $ _____ *F* _____ | | 66 |
| G. | **Escalation Amount** (enter amount from line 11 of Buyer's Form 35E) ............ ........ | | + $ _____ *G* _____ | | 67 |
| H. | **Escalated Base** (this offer) ......................................................... | | $ _____ *H* _____ | | 68 |
| **This offer's:** | I. | Credits to Buyer ($ amount) .............................................. | + $ _____ *I* _____ | | 69 |
| | J. | Credits to Buyer (% of Competing Offer purchase price)^ .... | + _____ *J* _____ % | | 70 |
| | K. | Credits to Seller ($ amount)............................................... | - $ _____ *K* _____ | | 71 |
| | L. | Credits to Seller (% of Competing Offer purchase price)^....... | - _____ *L* _____ % | | 72 |
| M. | **Escalated Purchase Price** (this offer – prior to Max Purchase limit).. | | $ _____ *M* _____ | | 73 |
| N. | **Maximum Purchase Price** (enter amount from line 13 of Buyer's Form 35E) ............ | | $ _____ *N* _____ | | 74 |
| O. | **Net Price** (this offer – subject to Max Purchase Price limit, if applicable) .................... | | $ _____ *O* _____ | | 75 |
| P. | **New Purchase Price** (this offer) ........................................................ | | $ _____ *P* _____ | | 76 |

**2.  Formulas:**  77

- **Competing Offer Net Purchase Price (F):**  78
  1) Calculate to find the value of: F:  $F = [A * (1 − C + E)] − B + D$  79

- **This offer's Escalated Base (H):**  80
  2) Calculate to find the value of H:  $H = F + G$  81

- **This offer's Escalated Purchase Price (prior to Max Purchase Price) (M):**  82
  1) Calculate to find the value of M:  $(A * J) − (A * L) + H + I − K$  83
  2) ^ For purposes of calculating the New Purchase Price only, all credits to Buyer and Seller (this offer) expressed as  84
     a percentage of the purchase price shall be calculated based on the purchase price of the Competing Offer.  At  85
     closing, the actual amount paid for percentage credits will be different because they will be calculated based on the  86
     New Purchase Price.  87

- **If this offer's Maximum Purchase Price (N) is equal to or greater than this offer's Escalated Purchase Price (M):**  88
  1) This offer's New Purchase Price (P) will be the amount from line (M).  89
  2) This offer's Net Price (O) will be: $O = [M * (1 − J + L)] − I + K$..  90

- **If this offer's Maximum Purchase Price (N) is less than this offer's Escalated Purchase Price (M):**  91
  1) This offer's New Purchase Price (P) will be the same number as the Maximum Purchase Price (N).  92
  2) This offer's Net Price (O) will be: $O = [N * (1 − J + L)] − I + K$.  93

02/12/2025

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

## EXHIBIT "A"

### Legal Description

LOTS 1 AND 2, BLOCK 4, HIAWATHA PARK SECOND ADDITION TO THE CITY OF SEATTLE, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 5 OF PLATS, PAGE 21, IN KING COUNTY, WASHINGTON.

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

*Renata Timm*     02/12/25

Auth entisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

# Best Choice
R E A L T Y

Form 22E
FIRPTA Certification
Rev. 7/19
Page 1 of 1

**FIRPTA CERTIFICATION**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The Foreign Investment in Real Property Tax Act ("FIRPTA"), 26 U.S.C. 1445, provides that a buyer of a U.S. real property interest must withhold tax if Seller is a foreign person, unless one of the exceptions in the Act applies. The following will inform Buyer and Closing Agent whether tax withholding is required.

Note: The above law applies to foreign corporations, partnerships, trusts, estates and other foreign entities, as well as to foreign individuals. If Seller is a corporation, partnership, trust, estate or other entity, the terms "I" and "my" as used below means the corporation or other entity. A "real property interest" includes full or part ownership of land and/or improvements thereon; leaseholds; options to acquire any of the foregoing; and an interest in foreign corporations, partnerships, trusts or other entities holding U.S. real estate.

---

**SELLER CERTIFICATION.** Seller hereby certifies the following:

**PROPERTY.** I am the Seller of real property ☑ at:

| 3057 42nd Avenue W | Seattle | WA 98199 |
|---|---|---|
| Address | City | State Zip |

or ☐ (if no street address) legally described on the attached.

**CITIZENSHIP STATUS.** I ☐ AM ☐ AM NOT a non-resident alien (or a foreign corporation, foreign partnership, foreign trust, foreign estate or other foreign business entity) for purposes of U.S. income taxation.

**TAXPAYER I.D. NUMBER.**
My U.S. taxpayer identification number (e.g. social security number) is _____.
(Tax I.D. number to be provided by Seller at Closing)

**ADDRESS.**
My home address is_____
Address      City      State      Zip

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief it is true, correct and complete. I understand that this Certification may be disclosed to the Internal Revenue Service ("IRS") and that any false statement I have made here could be punished by fine, imprisonment, or both.

_____     _____
Seller            Date      Seller            Date

---

**BUYER CERTIFICATION** (Only applicable if Seller is a non-resident alien).

If Seller is a non-resident alien, and has not obtained a release from the IRS, then Closing Agent must withhold 15% of the amount realized from the sale and pay it to the IRS, unless Buyer certifies that the selected statement below is correct:

☐ **Amount Realized ($300,000 or less) and Family Residence = No Tax.** (a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other consideration to Seller, does not exceed $300,000; and (b) I certify that I or a member of my family* have definite plans to reside on the property for at least 50% of the time that the property is used by any person during each of the first two twelve month periods following the date of this sale. If Buyer certifies these statements, there is no tax.

☐ **Amount Realized (more than $300,000, but not exceeding $1,000,000) and Family Residence = 10% Tax.** (a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other consideration to Seller, exceeds $300,000, but does not exceed $1,000,000; and (b) I certify that I or a member of my family* have definite plans to reside on the property for at least 50% of the time that the property is used by any person during each of the first two twelve month periods following the date of this sale. If Buyer certifies these statements, then Closing Agent must withhold 10% of the amount realized from the sale and pay it to the IRS.

    * (Defined in 11 U.S.C. 267(c)(4). It includes brothers, sisters, spouse, ancestors and lineal descendants).

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief both statements are true, correct and complete. I understand that this Certification may be disclosed to the IRS and that any false statement I have made here could be punished by fine, imprisonment, or both.

_____     _____
Buyer            Date      Buyer            Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**Best Choice**
R E A L T Y

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**SELLER:** ___Melanie Smith_____ 1

<sub>Seller</sub>                                              <sub>Seller</sub>

To be used in transfers of improved residential real property, including residential dwellings up to four units, new construction, 2
dwellings in a residential common interest community not subject to a public offering statement, condominiums not subject to a public 3
offering statement, certain timeshares, and manufactured and mobile homes. See RCW Chapter 64.06 for further information. 4

**INSTRUCTIONS TO THE SELLER** 5
Please complete the following form. Do not leave any spaces blank. If the question clearly does not apply to the property check 6
"NA." If the answer is "yes" to any asterisked (*) item(s), please explain on attached sheets. Please refer to the line number(s) of 7
the question(s) when you provide your explanation(s). For your protection you must date and initial each page of this disclosure 8
statement and each attachment. Delivery of the disclosure statement must occur not later than five (5) business days, unless 9
otherwise agreed, after mutual acceptance of a written purchase and sale agreement between Buyer and Seller. 10

**NOTICE TO THE BUYER** 11
THE FOLLOWING DISCLOSURES ARE MADE BY THE SELLER ABOUT THE CONDITION OF THE PROPERTY LOCATED AT 12
___3057___ ___42nd Avenue W_____, CITY ___Seattle_____, 13
STATE ___WA___, ZIP ___98199_____, COUNTY ___King_____ ("THE PROPERTY") OR AS 14
LEGALLY DESCRIBED ON THE ATTACHED EXHIBIT A. 15

SELLER MAKES THE FOLLOWING DISCLOSURES OF EXISTING MATERIAL FACTS OR MATERIAL DEFECTS TO BUYER BASED 16
ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE 17
STATEMENT. UNLESS YOU AND SELLER OTHERWISE AGREE IN WRITING, YOU HAVE THREE (3) BUSINESS DAYS FROM 18
THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO YOU TO RESCIND THE AGREEMENT 19
BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. IF THE 20
SELLER DOES NOT GIVE YOU A COMPLETED DISCLOSURE STATEMENT, THEN YOU MAY WAIVE THE RIGHT TO RESCIND 21
PRIOR TO OR AFTER THE TIME YOU ENTER INTO A PURCHASE AND SALE AGREEMENT. 22

THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE 23
LICENSEE OR OTHER PARTY. THIS INFORMATION IS FOR DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF 24
ANY WRITTEN AGREEMENT BETWEEN BUYER AND SELLER. 25

FOR A MORE COMPREHENSIVE EXAMINATION OF THE SPECIFIC CONDITION OF THIS PROPERTY YOU ARE ADVISED 26
TO OBTAIN AND PAY FOR THE SERVICES OF QUALIFIED EXPERTS TO INSPECT THE PROPERTY, WHICH MAY INCLUDE, 27
WITHOUT LIMITATION, ARCHITECTS, ENGINEERS, LAND SURVEYORS, PLUMBERS, ELECTRICIANS, ROOFERS, 28
BUILDING INSPECTORS, ON-SITE WASTEWATER TREATMENT INSPECTORS, OR STRUCTURAL PEST INSPECTORS. 29
THE PROSPECTIVE BUYER AND SELLER MAY WISH TO OBTAIN PROFESSIONAL ADVICE OR INSPECTIONS OF THE 30
PROPERTY OR TO PROVIDE APPROPRIATE PROVISIONS IN A CONTRACT BETWEEN THEM WITH RESPECT TO ANY 31
ADVICE, INSPECTION, DEFECTS OR WARRANTIES. 32

Seller ❑ is / ❑ is not occupying the Property. 33

**I. SELLER'S DISCLOSURES:** 34
*If you answer "Yes" to a question with an asterisk (*), please explain your answer and attach documents, if available and not 35
otherwise publicly recorded. If necessary, use an attached sheet. 36

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| **1. TITLE** | | | | | 37 38 |
| A. Do you have legal authority to sell the property? If no, please explain. ............❑ | | ❑ | ❑ | ❑ | 39 |
| *B. Is title to the property subject to any of the following? | | | | | 40 |
| (1) First right of refusal ................................................❑ | | ❑ | ❑ | ❑ | 41 |
| (2) Option ....................................................................❑ | | ❑ | ❑ | ❑ | 42 |
| (3) Lease or rental agreement ......................................❑ | | ❑ | ❑ | ❑ | 43 |
| (4) Life estate? ...........................................................❑ | | ❑ | ❑ | ❑ | 44 |
| *C. Are there any encroachments, boundary agreements, or boundary disputes? ..........❑ | | ❑ | ❑ | ❑ | 45 |
| *D. Is there a private road or easement agreement for access to the property? ..........❑ | | ❑ | ❑ | ❑ | 46 |
| *E. Are there any rights-of-way, easements, or access limitations that may affect the Buyer's use of the property? | | ❑ | ❑ | ❑ | 47 48 |
| *F. Are there any written agreements for joint maintenance of an easement or right-of-way?..............❑ | | ❑ | ❑ | ❑ | 49 |
| *G. Is there any study, survey project, or notice that would adversely affect the property? ..................❑ | | ❑ | ❑ | ❑ | 50 |
| *H. Are there any pending or existing assessments against the property? ..........................❑ | | ❑ | ❑ | ❑ | 51 |
| *I. Are there any zoning violations, nonconforming uses, or any unusual restrictions on the property that would affect future construction or remodeling? ..........................❑ | | ❑ | ❑ | ❑ | 52 53 |

_____      _____      _____      _____
SELLER'S INITIALS         Date         SELLER'S INITIALS         Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| | | | | | 54 |
| | | | | | 55 |
| *J. Is there a boundary survey for the property? | ☐ | ☐ | ☐ | ☐ | 56 |
| *K. Are there any covenants, conditions, or restrictions recorded against the property? | ☐ | ☐ | ☐ | ☐ | 57 |

**NOTICE TO BUYER:** Covenants or deed restrictions based on race, creed, sexual orientation, or other protected class were voided by RCW 49.60.224 and are unenforceable. Washington law allows for the illegal language to be struck by bringing an action in superior court or by the free recording of a restrictive covenant modification document. Many county auditor websites provide a short form with instructions on this process.

58
59
60
61
62

**2. WATER**

63

A. Household Water

64

  (1) The source of water for the property is: ☐ Private or publicly owned water system
☐ Private well serving only the subject property   *☐ Other water system

65
66

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
|     *If shared, are there any written agreements? | ☐ | ☐ | ☐ | ☐ | 67 |
|   *(2) Is there an easement (recorded or unrecorded) for access to and/or maintenance of the water source? | ☐ | ☐ | ☐ | ☐ | 68 / 69 |
|   *(3) Are there any problems or repairs needed? | ☐ | ☐ | ☐ | ☐ | 70 |
|   (4) During your ownership, has the source provided an adequate year-round supply of potable water? | ☐ | ☐ | ☐ | ☐ | 71 |
|     If no, please explain: _____ | | | | | 72 |
|   *(5) Are there any water treatment systems for the property? | ☐ | ☐ | ☐ | ☐ | 73 |
|     If yes, are they: ☐ Leased  ☐ Owned | | | | | 74 |
|   *(6) Are there any water rights for the property associated with its domestic water supply, such as a water right permit, certificate, or claim? | ☐ | ☐ | ☐ | ☐ | 75 / 76 |
|     (a) If yes, has the water right permit, certificate, or claim been assigned, transferred, or changed? | ☐ | ☐ | ☐ | ☐ | 77 |
|     *(b) If yes, has all or any portion of the water right not been used for five or more successive years? | ☐ | ☐ | ☐ | ☐ | 78 |
|   *(7) Are there any defects in the operation of the water system (e.g. pipes, tank, pump, etc.)? | ☐ | ☐ | ☐ | ☐ | 79 |

B. Irrigation Water

80

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
|   (1) Are there any irrigation water rights for the property, such as a water right permit, certificate, or claim? | ☐ | ☐ | ☐ | ☐ | 81 / 82 |
|     *(a) If yes, has all or any portion of the water right not been used for five or more successive years? | ☐ | ☐ | ☐ | ☐ | 83 / 84 |
|     *(b) If so, is the certificate available? (If yes, please attach a copy.) | ☐ | ☐ | ☐ | ☐ | 85 |
|     *(c) If so, has the water right permit, certificate, or claim been assigned, transferred, or changed? | ☐ | ☐ | ☐ | ☐ | 86 |
|   *(2) Does the property receive irrigation water from a ditch company, irrigation district, or other entity? | ☐ | ☐ | ☐ | ☐ | 87 |

    If so, please identify the entity that supplies water to the property:

88

_____

89

C. Outdoor Sprinkler System

90

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
|   (1) Is there an outdoor sprinkler system for the property? | ☐ | ☐ | ☐ | ☐ | 91 |
|   *(2) If yes, are there any defects in the system? | ☐ | ☐ | ☐ | ☐ | 92 |
|   *(3) If yes, is the sprinkler system connected to irrigation water? | ☐ | ☐ | ☐ | ☐ | 93 |

**3. SEWER/ON-SITE SEWAGE SYSTEM**

94

A. The property is served by:

95

☐ Public sewer system  ☐ On-site sewage system (including pipes, tanks, drainfields, and all other component parts)
☐ Other disposal system

96
97

  Please describe:_____

98

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| B. If public sewer system service is available to the property, is the house connected to the sewer main? | ☐ | ☐ | ☐ | ☐ | 99 / 100 |
|   If no, please explain:_____ | | | | | 101 |

_____        _____
SELLER'S INITIALS          Date          SELLER'S INITIALS          Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

|  | YES | NO | DON'T KNOW | N/A |  |
|---|---|---|---|---|---|
| *C. Is the property subject to any sewage system fees or charges in addition to those covered in your regularly billed sewer or on-site sewage system maintenance service?............................❑ | | ❑ | ❑ | ❑ | 102 103 104 |
| D. If the property is connected to an on-site sewage system: | | | | | 105 |
| *(1) Was a permit issued for its construction, and was it approved by the local health department or district following its construction?.......................................................❑ | | ❑ | ❑ | ❑ | 106 107 |
| (2) When was it last pumped? _____ | | | | | 108 |
| *(3) Are there any defects in the operation of the on-site sewage system? .....................❑ | | ❑ | ❑ | ❑ | 109 |
| (4) When was it last inspected? _____ | | | ❑ | ❑ | 110 |
| By whom: _____ | | | | | 111 |
| (5) For how many bedrooms was the on-site sewage system approved? _____ bedrooms | | | ❑ | ❑ | 112 |
| E. Are all plumbing fixtures, including laundry drain, connected to the sewer/on-site sewage system?..........................................................................................................❑ | | ❑ | ❑ | ❑ | 113 114 |
| If no, please explain:_____ | | | | | 115 |
| *F. Have there been any changes or repairs to the on-site sewage system? ........................❑ | | ❑ | ❑ | ❑ | 116 |
| G. Is the on-site sewage system, including the drainfield, located entirely within the boundaries of the property? ...........................................................................................❑ | | ❑ | ❑ | ❑ | 117 118 |
| If no, please explain:_____ | | | | | 119 |
| *H. Does the on-site sewage system require monitoring and maintenance services more frequently than once a year?.......................................................................................................❑ | | ❑ | ❑ | ❑ | 120 121 |

NOTICE: IF THIS RESIDENTIAL REAL PROPERTY DISCLOSURE IS BEING COMPLETED FOR NEW CONSTRUCTION WHICH HAS NEVER BEEN OCCUPIED, SELLER IS NOT REQUIRED TO COMPLETE THE QUESTIONS LISTED IN ITEM 4 (STRUCTURAL) OR ITEM 5 (SYSTEMS AND FIXTURES). | 122 123 124 |

**4. STRUCTURAL** | 125 |

|  | YES | NO | DON'T KNOW | N/A |  |
|---|---|---|---|---|---|
| *A. Has the roof leaked within the last 5 years?.....................................................................❑ | | ❑ | ❑ | ❑ | 126 |
| *B. Has the basement flooded or leaked? ..............................................................................❑ | | ❑ | ❑ | ❑ | 127 |
| *C. Have there been any conversions, additions or remodeling? ............................................❑ | | ❑ | ❑ | ❑ | 128 |
| *(1) If yes, were all building permits obtained? ...................................................................❑ | | ❑ | ❑ | ❑ | 129 |
| *(2) If yes, were all final inspections obtained? ..................................................................❑ | | ❑ | ❑ | ❑ | 130 |
| D. Do you know the age of the house? ...................................................................................❑ | | ❑ | ❑ | ❑ | 131 |
| If yes, year of original construction: _____ | | | | | 132 |
| *E. Has there been any settling, slippage, or sliding of the property or its improvements? ...................❑ | | ❑ | ❑ | ❑ | 133 |
| *F. Are there any defects with the following: (If yes, please check applicable items and explain) .........❑ | | ❑ | ❑ | ❑ | 134 |

| ❑ Foundations | ❑ Decks | ❑ Exterior Walls | 135 |
| ❑ Chimneys | ❑ Interior Walls | ❑ Fire Alarms | 136 |
| ❑ Doors | ❑ Windows | ❑ Patio | 137 |
| ❑ Ceilings | ❑ Slab Floors | ❑ Driveways | 138 |
| ❑ Pools | ❑ Hot Tub | ❑ Sauna | 139 |
| ❑ Sidewalks | ❑ Outbuildings | ❑ Fireplaces | 140 |
| ❑ Garage Floors | ❑ Walkways | ❑ Siding | 141 |
| ❑ Wood Stoves | ❑ Elevators | ❑ Incline Elevators | 142 |
| ❑ Stairway Chair Lifts | ❑ Wheelchair Lifts | ❑ Other _____ | 143 |

|  | YES | NO | DON'T KNOW | N/A |  |
|---|---|---|---|---|---|
| *G. Was a structural pest or "whole house" inspection done? ................................................❑ | | ❑ | ❑ | ❑ | 144 |
| If yes, when and by whom was the inspection completed? | | | | | 145 |
| _____ | | | | | 146 |
| H. During your ownership, has the property had any wood destroying organism or pest infestation?..........❑ | | ❑ | ❑ | ❑ | 147 |
| I. Is the attic insulated?........................................................................................................❑ | | ❑ | ❑ | ❑ | 148 |
| J. Is the basement insulated? ..............................................................................................❑ | | ❑ | ❑ | ❑ | 149 |

_____    _____    _____    _____
SELLER'S INITIALS        Date          SELLER'S INITIALS        Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

|  | YES | NO | DON'T KNOW | N/A |  |
|---|---|---|---|---|---|
|  |  |  |  |  | 150 |
| **5. SYSTEMS AND FIXTURES** |  |  |  |  | 151 |
| *A. If any of the following systems or fixtures are included with the transfer, are there any defects? |  |  |  |  | 152 |
| If yes, please explain: _____ |  |  |  |  | 153 |
| Electrical system, including wiring, switches, outlets, and service | ☐ | ☐ | ☐ | ☐ | 154 |
| Plumbing system, including pipes, faucets, fixtures, and toilets | ☐ | ☐ | ☐ | ☐ | 155 |
| Hot water tank | ☐ | ☐ | ☐ | ☐ | 156 |
| Garbage disposal | ☐ | ☐ | ☐ | ☐ | 157 |
| Appliances | ☐ | ☐ | ☐ | ☐ | 158 |
| Sump pump | ☐ | ☐ | ☐ | ☐ | 159 |
| Heating and cooling systems | ☐ | ☐ | ☐ | ☐ | 160 |
| Security system: ☐ Owned  ☐ Leased | ☐ | ☐ | ☐ | ☐ | 161 |
| Other _____ | ☐ | ☐ | ☐ | ☐ | 162 |
| *B. If any of the following fixtures or property is included with the transfer, are they leased? |  |  |  |  | 163 |
| (If yes, please attach copy of lease.) |  |  |  |  | 164 |
| Security System: _____ | ☐ | ☐ | ☐ | ☐ | 165 |
| Tanks (type): _____ | ☐ | ☐ | ☐ | ☐ | 166 |
| Satellite dish: _____ | ☐ | ☐ | ☐ | ☐ | 167 |
| Other: _____ | ☐ | ☐ | ☐ | ☐ | 168 |
| *C. Are any of the following kinds of wood burning appliances present at the property? |  |  |  |  | 169 |
| (1) Woodstove? | ☐ | ☐ | ☐ | ☐ | 170 |
| (2) Fireplace insert? | ☐ | ☐ | ☐ | ☐ | 171 |
| (3) Pellet stove? | ☐ | ☐ | ☐ | ☐ | 172 |
| (4) Fireplace? | ☐ | ☐ | ☐ | ☐ | 173 |
| If yes, are all of the (1) woodstoves or (2) fireplace inserts certified by the U.S. Environmental |  |  |  |  | 174 |
| Protection Agency as clean burning appliances to improve air quality and public health? | ☐ | ☐ | | ☐ | 175 |
| D. Is the property located within a city, county, or district or within a department of natural |  |  |  |  | 176 |
| resources fire protection zone that provides fire protection services? | ☐ | ☐ | ☐ | ☐ | 177 |
| E. Is the property equipped with carbon monoxide alarms?  (Note: Pursuant to RCW 19.27.530, Seller |  |  |  |  | 178 |
| must equip the residence with carbon monoxide alarms as required by the state building code.) | ☐ | ☐ | ☐ | ☐ | 179 |
| F. Is the property equipped with smoke detection devices? | ☐ | ☐ | | ☐ | 180 |
| (Note: Pursuant to RCW 43.44.110, if the property is not equipped with at least one smoke |  |  |  |  | 181 |
| detection device, at least one must be provided by the seller.) |  |  |  |  | 182 |
| G. Does the property currently have internet service? | ☐ | ☐ | ☐ | ☐ | 183 |
| Provider: _____ |  |  |  |  | 184 |
|  |  |  |  |  | 185 |
| **6. HOMEOWNERS' ASSOCIATION/COMMON INTERESTS** |  |  |  |  |  |
| A. Is there a Homeowners' Association? | ☐ | ☐ | ☐ | ☐ | 186 |
| Name of Association and contact information for an officer, director, employee, or other authorized |  |  |  |  | 187 |
| agent, if any, who may provide the association's financial statements, minutes, bylaws, fining policy, |  |  |  |  | 188 |
| and other information that is not publicly available: _____ |  |  |  |  | 189 |
| B. Are there regular periodic assessments? | ☐ | ☐ | ☐ | ☐ | 190 |
| $ _____ per ☐ month ☐ year |  |  |  |  | 191 |
| ☐ Other: _____ |  |  |  |  | 192 |
| *C. Are there any pending special assessments? | ☐ | ☐ | ☐ | ☐ | 193 |
| *D. Are there any shared "common areas" or any joint maintenance agreements (facilities |  |  |  |  | 194 |
| such as walls, fences, landscaping, pools, tennis courts, walkways, or other areas |  |  |  |  | 195 |
| co-owned in undivided interest with others)? | ☐ | ☐ | ☐ | ☐ | 196 |
|  |  |  |  |  | 197 |
| **7. ENVIRONMENTAL** |  |  |  |  |  |
| *A. Have there been any flooding, standing water, or drainage problems on the property |  |  |  |  | 198 |
| that affect the property or access to the property? | ☐ | ☐ | ☐ | ☐ | 199 |
| *B. Does any part of the property contain fill dirt, waste, or other fill material? | ☐ | ☐ | ☐ | ☐ | 200 |
| *C. Is there any material damage to the property from fire, wind, floods, beach movements, |  |  |  |  | 201 |
| earthquake, expansive soils, or landslides? | ☐ | ☐ | ☐ | ☐ | 202 |
| D. Are there any shorelines, wetlands, floodplains, or critical areas on the property? | ☐ | ☐ | ☐ | ☐ | 203 |
| *E. Are there any substances, materials, or products in or on the property that may be environmental |  |  |  |  | 204 |
| concerns, such as asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical |  |  |  |  | 205 |
| storage tanks, or contaminated soil or water? | ☐ | ☐ | ☐ | ☐ | 206 |
| *F. Has the property been used for commercial or industrial purposes? | ☐ | ☐ | ☐ | ☐ | 207 |

_____          _____
SELLER'S INITIALS          Date          SELLER'S INITIALS          Date

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| | | | | | 208 |
| | | | | | 209 |
| *G. Is there any soil or groundwater contamination? | ☐ | ☐ | ☐ | ☐ | 210 |
| *H. Are there transmission poles or other electrical utility equipment installed, maintained, or | | | | | 211 |
| buried on the property that do not provide utility service to the structures on the property? | ☐ | ☐ | ☐ | ☐ | 212 |
| *I. Has the property been used as a legal or illegal dumping site? | ☐ | ☐ | ☐ | ☐ | 213 |
| *J. Has the property been used as an illegal drug manufacturing site? | ☐ | ☐ | ☐ | ☐ | 214 |
| *K. Are there any radio towers in the area that cause interference with cellular telephone reception? | ☐ | ☐ | ☐ | ☐ | 215 |

**8. LEAD BASED PAINT** (Applicable if the house was built before 1978). ............................................ ☐  216

    A. Presence of lead-based paint and/or lead-based paint hazards (check one below):  217

        ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing  218
        (explain). _____  219

        ☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.  220

    B. Records and reports available to the Seller (check one below):  221

        ☐ Seller has provided the purchaser with all available records and reports pertaining to  222
        lead-based paint and/or lead-based paint hazards in the housing (list documents below).  223

        _____  224

        ☐ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.  225

**9. MANUFACTURED AND MOBILE HOMES**  226

    If the property includes a manufactured or mobile home,  227

| *A. Did you make any alterations to the home? | ☐ | ☐ | ☐ | ☐ | 228 |
|---|---|---|---|---|---|
| If yes, please describe the alterations: _____ | | | | | 229 |
| *B. Did any previous owner make any alterations to the home? | ☐ | ☐ | ☐ | ☐ | 230 |
| *C. If alterations were made, were permits or variances for these alterations obtained? | ☐ | ☐ | ☐ | ☐ | 231 |

**10. FULL DISCLOSURE BY SELLERS**  232

    A. Other conditions or defects:  233

       *Are there any other existing material defects affecting the property that a prospective  234

| buyer should know about? | ☐ | ☐ | ☐ | ☐ | 235 |
|---|---|---|---|---|---|

    B. Verification  236

    The foregoing answers and attached explanations (if any) are complete and correct to the best of Seller's knowledge and  237
Seller has received a copy hereof. Seller agrees to defend, indemnify and hold real estate licensees harmless from and  238
against any and all claims that the above information is inaccurate. Seller authorizes real estate licensees, if any, to deliver a  239
copy of this disclosure statement to other real estate licensees and all prospective buyers of the property.  240

241

_____    _____  _____    _____
Seller                       Date           Seller                       Date

If the answer is "Yes" to any asterisked (*) items, please explain below (use additional sheets if necessary). Please refer to the line  242
number(s) of the question(s).  243

244
245
246
247
248
249
250
251
252
253
254
255
256

Authentisign ID: FD7933CE-ABE9-EF11-88F8-002248264582

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## II. NOTICES TO THE BUYER                                                                      257

**1. SEX OFFENDER REGISTRATION**                                                                 258
INFORMATION REGARDING REGISTERED SEX OFFENDERS MAY BE OBTAINED FROM LOCAL LAW ENFORCEMENT          259
AGENCIES. THIS NOTICE IS INTENDED ONLY TO INFORM YOU OF WHERE TO OBTAIN THIS INFORMATION AND IS NOT   260
AN INDICATION OF THE PRESENCE OF REGISTERED SEX OFFENDERS.                                          261

**2. PROXIMITY TO FARMING/WORKING FOREST**                                                       262
THIS NOTICE IS TO INFORM YOU THAT THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE MAY LIE IN     263
CLOSE PROXIMITY TO A FARM OR WORKING FOREST. THE OPERATION OF A FARM OR WORKING FOREST              264
INVOLVES USUAL AND CUSTOMARY AGRICULTURAL PRACTICES OR FOREST PRACTICES, WHICH ARE PROTECTED        265
UNDER RCW 7.48.305, THE WASHINGTON RIGHT TO FARM ACT.                                              266

**3. OIL TANK INSURANCE**                                                                        267
THIS NOTICE IS TO INFORM YOU THAT IF THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE UTILIZES    268
AN OIL TANK FOR HEATING PURPOSES, NO COST INSURANCE MAY BE AVAILABLE FROM THE POLLUTION LIABILITY   269
INSURANCE AGENCY.                                                                                  270

## III. BUYER'S ACKNOWLEDGEMENT                                                                   271

**1. BUYER HEREBY ACKNOWLEDGES THAT:**                                                            272

A.  Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by   273
    utilizing diligent attention and observation.                                                  274

B.  The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and   275
    not by any real estate licensee or other party.                                               276

C.  Buyer acknowledges that, pursuant to RCW 64.06.050(2), real estate licensees are not liable for inaccurate information   277
    provided by Seller, except to the extent that real estate licensees know of such inaccurate information.   278

D.  This information is for disclosure only and is not intended to be a part of the written agreement between the Buyer and Seller.   279

E.  Buyer (which term includes all persons signing the "Buyer's acceptance" portion of this disclosure statement below) has   280
    received a copy of this Disclosure Statement (including attachments, if any) bearing Seller's signature(s).   281

F.  If the house was built prior to 1978, Buyer acknowledges receipt of the pamphlet *Protect Your Family From Lead in Your Home*.   282

DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT ARE PROVIDED BY SELLER BASED ON SELLER'S         283
ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE. UNLESS BUYER         284
AND SELLER OTHERWISE AGREE IN WRITING, BUYER SHALL HAVE THREE (3) BUSINESS DAYS FROM THE DAY        285
SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO RESCIND THE AGREEMENT BY            286
DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. YOU     287
MAY WAIVE THE RIGHT TO RESCIND PRIOR TO OR AFTER THE TIME YOU ENTER INTO A SALE AGREEMENT.         288

BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT AND ACKNOWLEDGES           289
THAT THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE          290
LICENSEE OR OTHER PARTY.                                                                           291

                                                                                                  292
_____     _____              293
Buyer                          Date          Buyer                          Date

**2. BUYER'S WAIVER OF RIGHT TO REVOKE OFFER**                                                    294
Buyer has read and reviewed the Seller's responses to this Seller Disclosure Statement. Buyer approves this statement and   295
waives Buyer's right to revoke Buyer's offer based on this disclosure.                             296

                                                                                                  297
_____     _____              298
Buyer                          Date          Buyer                          Date

**3. BUYER'S WAIVER OF RIGHT TO RECEIVE COMPLETED SELLER DISCLOSURE STATEMENT**                   299
Buyer has been advised of Buyer's right to receive a completed Seller Disclosure Statement. Buyer waives that right.   300
However, if the answer to any of the questions in the section entitled "Environmental" would be "yes," Buyer may not waive   301
the receipt of the "Environmental" section of the Seller Disclosure Statement.                    302

                                                                                                  303
_____     _____              304
Buyer                          Date          Buyer                          Date

_____         _____
SELLER'S INITIALS        Date            SELLER'S INITIALS        Date

 

# loanDepot
NMLS#174457

**THE Helton** *Group*

Prequalification Letter

Your actual rate, payment, and costs could be higher. Get an official Loan Estimate before choosing a loan.

**Renata Timm**

I am pleased to inform you that based upon a review of the income and assets you have provided, and your credit report and digital underwriting results, you have been conditionally approved for a home loan with the following criteria:

| **$1,375,000.00** | **$1,031,250.00** | **$0.00** |
|---|---|---|
| Purchase Price | Loan Amount | Seller Paid Closing Costs |

| | | | |
|---|---|---|---|
| **Loan Product:** | Conventional | **Credit:** | Documented |
| **Occupancy:** | Primary | **Income:** | Documented |
| **Loan-to-Value:** | 75.00% | **Assets:** | Documented |
| **Issued Date:** | 4/9/25 | | |
| **Valid Until:** | 7/2/25 | | |

This is not an offer or commitment to lend nor does it guarantee a final loan approval. A final loan approval is subject to a written application, executed sales contract, clear title, satisfactory appraisal, verification of the information you have provided and full underwriting review by a loanDepot underwriter of the complete loan package.

**If you have any questions on this letter, please feel free to contact Jered at 541-255-1003**

Sincerely,

**Jered Helton**
NMLS #172989
Producing Area Manager
(541) 255-1003

**Brad Wheeler**
NMLS #473297
Loan Consultant
(541) 521-8409

1700 Valley River Drive, Suite 200,
Eugene, OR 97401
jhelton@loandepot.com
bwheeler@loandepot.com
www.theheltongroup.com

**THE Helton** *Group*

loanDepot.com, LLC. NMLS #174457 (www.nmlsconsumeraccess.org). For more licensing, please visit www.loandepot.com/licensing.



  Prequalification Letter

Your actual rate, payment, and costs could be higher. Get an official Loan Estimate before choosing a loan.

Renata Timm

I am pleased to inform you that based upon a review of the income and assets you have provided, and your credit report and digital underwriting results, you have been conditionally approved for a home loan with the following criteria:

| $1,375,000.00 | $1,031,250.00 | $0.00 |
|---|---|---|
| Purchase Price | Loan Amount | Seller Paid Closing Costs |

| | | | |
|---|---|---|---|
| **Loan Product:** | Conventional | **Credit:** | Documented |
| **Occupancy:** | Primary | **Income:** | Documented |
| **Loan-to-Value:** | 75.00% | **Assets:** | Documented |
| **Issued Date:** | 4/9/25 | | |
| **Valid Until:** | 7/2/25 | | |

This is not an offer or commitment to lend nor does it guarantee a final loan approval. A final loan approval is subject to a written application, executed sales contract, clear title, satisfactory appraisal, verification of the information you have provided and full underwriting review by a loanDepot underwriter of the complete loan package.

**If you have any questions on this letter, please feel free to contact Jered at 541-255-1003**

Sincerely,

**Jered Helton**
NMLS #172989
Producing Area Manager
(541) 255-1003

**Brad Wheeler**
NMLS #473297
Loan Consultant
(541) 521-8409

1700 Valley River Drive, Suite 200,
Eugene, OR 97401
jhelton@loandepot.com
bwheeler@loandepot.com
www.theheltongroup.com