The Honorable Christopher M Alston
Chapter 7
Hearing Location: United States Bankruptcy
Court, Courtroom 7206,
700 Stewart Street,
Seattle, WA 98101
Hearing Date: 5/29/25
Hearing Time: 9:30 am
Response Date: 5/22/25

## UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | ) NO. 24-10218-CMA |
| | ) |
| Melanie A Smith aka M A Smith aka M Smith | ) DEBTOR'S HOUSE OFFER OF |
| | ) TIMM DATED 4/9/25 ADDING |
| Debtor | ) MOTHER AND LOWERING |
| | ) PRICE TO $ 1.375M. |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

Best Choice
R E A L T Y

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
Specific Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

1. **Date:** April 09, 2025    **MLS No.:** 2328482    **Offer Expiration Date:** 4/14/2025

2. **Buyer:** Renata Timm    Carrole Rugenstein    Unmarried persons
   Buyer    Buyer    Status

3. **Seller:** Melanie Smith
   Seller    Seller

4. **Property:** Legal Description attached as Exhibit A. Tax Parcel No(s).: 3271800216 , , ,
   3057    42nd Avenue W    Seattle    King    WA    98199
   Address    City    County    State    Zip

5. **Included Items:** ☒ stove(s)/range(s); ☒ refrigerator(s); ☒ washer(s); ☒ dryer(s); ☒ dishwasher(s); ☒ microwave(s); ☐ fireplace insert(s); ☐ wood stove(s); ☐ satellite dish; ☐ security system; ☐ hot tub; ☐ attached camera(s); ☐ attached speaker(s); ☐ attached TV(s); ☐ generator; ☐

6. **Purchase Price:** $ 1,375,000.00    One Million Three Hundred Seventy-Five Thousand    U.S. Dollars

7. **Earnest Money:** $ 13,750.00 U.S. Dollars;    Delivery Date 2 days after mutual acceptance
   To be held by ☐ Buyer Brokerage Firm; ☒ Closing Agent; ☐ In the form of a Promissory Note (included as an Addendum)

8. **Default:** (check only one) ☒ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies

9. **Title Insurance Company:** Chicago Title & Escrow

10. **Closing Agent:** Chicago Escrow
    Company    Individual (optional)

11. **Closing Date:** 5/31/2025 ; **Possession Date:** ☒ on Closing; ☐ Other

12. **Services of Closing Agent for Payment of Utilities:** ☒ Requested (attach NWMLS Form 22K); ☐ Waived

13. **Charges/Assessments Levied Before but Due After Closing:** ☐ assumed by Buyer; ☒ prepaid in full by Seller at Closing

14. **Seller Citizenship (FIRPTA):** Seller ☐ is; ☐ is not a foreign person for purposes of U.S. income taxation

15. **Information Verification Period:** ☒ Expires 5 days after mutual acceptance; ☐ Satisfied/Waived

16. **Agency Disclosure:** Buyer represented by: ☒ Buyer Broker; ☐ Buyer/Listing Broker (limited dual agent); ☐ unrepresented
    Seller represented by: ☒ Listing Broker; ☐ Listing/Buyer Broker (limited dual agent); ☐ unrepresented

17. **Buyer Brokerage Compensation:** % 2.5 ; 2.5% ☐ Addendum for Buyer Credit
    (a) Seller's Offer (if any)    (b) Amount to be Paid by Seller

18. **Addenda:** 22A(Financing)    22D(Optional Clauses)    22J(Lead Disclosure)    22K(Utilities)
    35(Inspection)
    22E FIRPTA

| | | |
|---|---|---|
| *Renata Timm*    04/09/2025 | Seller Signature | Date |
| Buyer Signature | | |
| *Carrole Rugenstein*    04/09/2025 Date | Seller Signature | Date |
| Buyer Signature    Date | | |
| Buyer Address | Seller Signature | Date |
| | Seller Address | |
| City, State, Zip | City, State, Zip | |
| | (206) 283-8615 | |
| Buyer Phone No.    Fax No. | Seller Phone No.    Fax No. |
| renatatimm1@yahoo.com | | |
| Buyer E-mail Address | Seller E-mail Address | |
| **Best Choice Realty LLC**    2735 | **John L. Scott, Inc.**    7315 | |
| Buyer Brokerage Firm    MLS Office No. | Listing Brokerage Firm    MLS Office No. |
| **Sarah Abader**    89030 | **Melanie Smith**    81901 | |
| Buyer Broker (Print)    MLS LAG No. | Listing Broker (Print)    MLS LAG No. |
| **(206) 886-3986**    **(253) 732-1216**    **(253) 277-0364** | **(425) 744-5300**    **(206) 369-3404**    **(425) 744-5355** |
| Firm Phone No.   Broker Phone No.   Firm Fax No. | Firm Phone No.   Broker Phone No.   Firm Fax No. |
| support@bestchoicerealtywa.com | notices.lynnwood@johnlscott.com | |
| Firm Document E-mail Address | Firm Document E-mail Address | |
| sarahabaderre@gmail.com | meljls@aol.com | |
| Buyer Broker E-mail Address | Listing Broker E-mail Address | |
| 107861    18833 | 5889    2131 | |
| Buyer Broker DOL License No.   Firm DOL License No. | Listing Broker DOL License No.   Firm DOL License No. |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

Best Choice
R E A L T Y

Form 22A
Financing Addendum
Rev. 7/23
Page 1 of 3

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated **April 09, 2025** _____ 1

between **Renata Timm** _____ **Carrole Rugenstein** _____ ("Buyer") 2
     Buyer                Buyer

and **Melanie Smith** _____ ("Seller") 3
    Seller              Seller

concerning **3057**    **42nd Avenue W**      **Seattle**     **WA**   **98199** _____ (the "Property"). 4
    Address              City        State    Zip

**1. LOAN APPLICATION.** 5

  **a. Loan Application.** This Agreement is contingent on Buyer obtaining the following type of loan or loans to 6
purchase the Property (the "Loan(s)"): ☒ Conventional First; ☐ Conventional Second; ☐ Bridge; ☐ VA; ☐ FHA; 7
☐ USDA; ☐ Home Equity; ☐ Down Payment Program; ☐ Other _____ 8
(the "Financing Contingency"). In addition to the Loans, Buyer shall make a down payment in the amount of 9
☐ $ _____ ; or ☒ **25** _____ % of the Purchase Price. Buyer shall make application for the Loans 10
to pay the balance of the Purchase Price and pay the application fee, if required, for the subject Property within 11
_____ days (5 days if not filled in) after mutual acceptance of this Agreement. For the purposes of this 12
Addendum, "application" means the submission of Buyer's financial information for the purposes of obtaining an 13
extension of credit including Buyer's name, income, social security number (if required), the Property address, 14
purchase price, and the loan amount. If not waived, the Financing Contingency shall survive the Closing Date. 15

  **b. Waiver of Financing Contingency.** If Buyer (i) fails to make application for financing for the Property within the 16
agreed time; (ii) changes the type of loan at any time without Seller's prior written consent; or (iii) changes the 17
lender without Seller's prior written consent after the agreed upon time to apply for financing expires, then the 18
Financing Contingency shall be deemed waived. Buyer's waiver of the Financing Contingency under this 19
Paragraph 1(b) also constitutes waiver of Paragraph 5 (Appraisal Less Than Sales Price). For purposes of this 20
Addendum, "lender" means either the party to whom the application was submitted or the party funding the loan. 21
Buyer authorizes Listing Broker and Seller to inquire about the status of Buyer's loan approval with lender any 22
time prior to Closing. Buyer will execute an authorization form, if required by lender, to accomplish the same. 23

**2. FINANCING CONTINGENCY.** Select "a" or "b" ("a" if neither is selected). 24

  **a. ☒ Seller's Notice to Perform.** 25

    i. **Notice to Perform.** At any time **21** _____ days (21 days if not filled in) after mutual acceptance, Seller 26
may give "Notice to Perform" requesting that Buyer waive the Financing Contingency and that Seller may 27
give notice to terminate the Agreement at any time 3 days after delivery of that notice if Buyer does not 28
earlier waive the Financing Contingency. NWMLS Form 22AR shall be used for this notice. 29

    ii. **Notice of Termination.** If Buyer has not previously waived the Financing Contingency, Seller may give 30
"Notice of Termination" of this Agreement any time 3 days after delivery of Notice to Perform. If Seller gives 31
Notice of Termination before Buyer has waived the Financing Contingency, this Agreement is terminated 32
and the Earnest Money shall be refunded to Buyer. NWMLS Form 22AR shall be used for this notice. 33

    iii. **Appraisal Less Than Sales Price.** Buyer's waiver of the Financing Contingency under this Paragraph 2(a) 34
☐ will; or ☒ will not (will not, if not filled in) constitute waiver of Paragraph 5 (Appraisal Less Than Sales Price). 35

  **b. ☐ Automatic Waiver of Financing Contingency.** 36

    i. **Waiver.** The Financing Contingency shall conclusively be deemed waived unless within _____ days (21 37
days if not filled in) after mutual acceptance, Buyer gives notice of termination of this Agreement. If Buyer 38
gives timely notice of termination, the Earnest Money shall be refunded to Buyer after Buyer delivers written 39
confirmation from Buyer's lender as required by Paragraph 4. 40

    ii. **Appraisal Less Than Sales Price.** Buyer's waiver of the Financing Contingency under this Paragraph 2(b) 41
☐ will; or ☐ will not (will not, if not filled in) constitute waiver of Paragraph 5 (Appraisal Less Than Sales Price). 42

_RT_ 04/09/2025     _CR_ 04/09/2025     _____    _____
Buyer's Initials   Date     Buyer's Initials   Date     Seller's Initials   Date    Seller's Initials   Date

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**3. LOAN COST PROVISIONS.** Seller shall pay up to ☒ $ 0.00_____; or ☐ _____% of the Purchase Price 43
($0.00 if not filled in), which shall be applied to Buyer's Loan(s) and settlement costs, including prepaids, loan 44
discount, loan fee, interest buy down, financing, closing or other costs allowed by lender. That amount shall include 45
the following costs that lender is prohibited from collecting from Buyer: (a) up to $300.00 for Buyer's Loan(s) and 46
settlement costs for FHA/USDA/VA loans; and (b) unless agreed otherwise below, Buyer's share of the escrow fee 47
for a VA loan. Seller shall pay the costs for (a) and (b), even if the amount agreed upon in this Paragraph 3 is 48
insufficient to pay for those costs. If checked, ☐ Buyer shall pay Buyer's share of the escrow fee for the VA loan 49
(note that VA regulations prohibit Buyer from paying loan and settlement costs exceeding one percent of the amount 50
of the loan). Buyer's waiver of the Financing Contingency shall not change the parties' obligations under this 51
Paragraph 3. 52

**4. EARNEST MONEY.** If Buyer has not waived the Financing Contingency, and is unable to obtain financing by 53
Closing after a good faith effort then, on Buyer's notice, this Agreement shall terminate. The Earnest Money shall 54
be refunded to Buyer after lender confirms in writing (a) the date Buyer's loan application for the Property was 55
made, including a copy of the loan estimate that was provided to Buyer; (b) that Buyer possessed sufficient non-56
contingent funds to close (e.g. down payment, closing costs, etc.); and (c) the reasons Buyer was unable to obtain 57
financing by Closing. If Seller terminates this Agreement, the Earnest Money shall be refunded without need for 58
such confirmation. 59

**5. APPRAISAL LESS THAN SALE PRICE.** 60

 **a. Notice of Low Appraisal.** If lender's appraised value of the Property is less than the Purchase Price, Buyer 61
may, within 3 days after receipt of a copy of lender's appraisal, give notice of low appraisal, which shall include 62
a copy of lender's appraisal. NWMLS Form 22AN may be used for the notices in this Paragraph 5. 63

 **b. Seller's Response.** Seller shall, within 10 days after Buyer's notice of low appraisal, give notice of: 64

  i. A reappraisal or reconsideration of value, at Seller's expense, by the same appraiser or another appraiser 65
acceptable to lender, in an amount not less than the Purchase Price. Buyer shall promptly seek lender's 66
approval of such reappraisal or reconsideration of value. The parties are advised that lender may elect not 67
to accept a reappraisal or reconsideration of value; 68

  ii. Seller's consent to reduce the Purchase Price to an amount not more than the amount specified in the 69
appraisal or reappraisal by the same appraiser, or an appraisal by another appraiser acceptable to lender, 70
whichever is higher. (This provision is not applicable if this Agreement is conditioned on FHA, VA, or USDA 71
financing. FHA, VA, and USDA financing does not permit the Buyer to be obligated to buy if the Seller reduces 72
the Purchase Price to the appraised value. Buyer, however, has the option to buy at the reduced price.); 73

  iii. Seller's proposal to reduce the Purchase Price to an amount more than the amount specified in the 74
appraisal and for Buyer to pay the necessary additional funds (the amount the reduced Purchase Price 75
exceeds the appraised value) to close the sale; or 76

  iv. Seller's rejection of Buyer's notice of low appraisal. 77

  If Seller timely delivers notice of (i) reappraisal or reconsideration of value; or (ii) consent to reduce the Purchase 78
Price to an amount not more than the amount specified in the appraisal (except for FHA, VA, or USDA 79
financing), and lender accepts Seller's response, then Buyer shall be bound by Seller's response. 80

 **c. Buyer's Reply.** 81

  i. Buyer shall have 3 days from either Seller's notice of rejection of low appraisal or, if Seller fails to respond, 82
the day Seller's response period ends, whichever is earlier, to (a) waive the Financing Contingency (including 83
waiver of this Paragraph 5); or (b) terminate the Agreement, in which event the Earnest Money shall be 84
refunded to Buyer. 85

  ii. If Seller proposes to reduce the Purchase Price to an amount more than the appraised value, Buyer shall 86
have 3 days to (a) accept and represent that Buyer has sufficient funds to close the sale in accordance with 87
this provision; or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 88

  iii. If Seller consents to reduce the Purchase Price to an amount not more than the appraised value for FHA, VA, 89
or USDA financing, Buyer shall have 3 days to (a) give notice that Buyer will buy at the reduced price; or (b) 90
terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 91

| RJ 04/09/2025 | CR 04/09/2025 | | |
|---|---|---|---|
| Buyer's Initials          Date | Buyer's Initials          Date | Seller's Initials          Date | Seller's Initials          Date |

Form 22A
Financing Addendum
Rev. 7/23
Page 3 of 3

**FINANCING ADDENDUM TO PURCHASE & SALE AGREEMENT**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Buyer's inaction during this reply period shall result in termination of the Agreement and return of the Earnest Money to Buyer. The Closing Date shall be extended as necessary to accommodate the foregoing times for notices.

**d. Appraisal, Inspection, and Work Orders.** Seller shall permit appraisals and inspections required by lender, including but not limited to structural, pest, heating, plumbing, roof, electrical, septic, and well inspections. Seller is not obligated to pay for such appraisals or inspections unless otherwise agreed. The parties acknowledge that the lender's appraisal may condition the appraised value of the Property on the completion and approval of work orders prior to Closing ("Appraisal Work Order"). Buyer shall, within 3 days of receiving an Appraisal Work Order, give notice to Seller, which notice shall include a copy of the Appraisal Work Order. If Buyer is unable to obtain financing by Closing due to an incomplete Appraisal Work Order then, on Buyer's notice, this Agreement shall terminate. If Buyer has not waived this Paragraph 5, the Earnest Money shall be refunded to Buyer after providing lender's confirmation in compliance with Paragraph 4, including lender's statement that Buyer was unable to obtain financing by Closing due to an incomplete Appraisal Work Order.

**6. FHA/VA/USDA - APPRAISAL CERTIFICATE.** If this Agreement is contingent on Buyer obtaining FHA, VA, or USDA financing, notwithstanding any other provisions of this Agreement, Buyer is not obligated to complete the purchase of the Property unless Buyer has been given in accordance with HUD/FHA, VA, or USDA requirements a written statement by FHA, VA, USDA or a Direct Endorsement lender, setting forth the appraised value of the Property (excluding closing costs). Seller and Buyer shall execute a document setting forth the prior provision, or similar provision, known as the FHA, VA, or USDA amendatory clause, as required by lender. Buyer shall pay the costs of any appraisal. If the appraised value of the Property is less than the Purchase Price, Buyer may give the notice of low appraisal in Paragraph 5.

**Purpose of Appraisal.** The appraised valuation is arrived at only to determine the maximum mortgage FHA, VA, or USDA will insure. FHA, VA, or USDA do not warrant the value or the condition of the Property. Buyer agrees to satisfy himself/herself that the price and condition of the Property are acceptable.

**7. VA AMENDATORY CLAUSE.** If the Buyer is obtaining VA financing, it is expressly agreed that, notwithstanding any other provisions of this contract, the purchaser shall not incur any penalty by forfeiture of earnest money or otherwise be obligated to complete the purchase of the property described herein, if the contract purchase price or cost exceeds the reasonable value of the property established by the Department of Veterans Affairs. The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs.

**8. EXTENSION OF CLOSING.** If, through no fault of Buyer, lender is required by 12 CFR 1026 to give corrected disclosures to Buyer due to (a) a change in the Annual Percentage Rate ("APR") of Buyer's Loan(s) by .125% or more for a fixed rate loan or .250% or more for an adjustable rate loan; (b) a change in the loan product; or (c) the addition of a prepayment penalty, then upon notice from Buyer, the Closing Date shall be extended for up to 4 days to accommodate the requirements of Regulation Z of the Truth in Lending Act. This Paragraph 8 shall survive Buyer's waiver of this Financing Contingency.



Buyer's Initials / Date    04/09/2025    Buyer's Initials / Date 04/09/2025    Seller's Initials / Date    Seller's Initials / Date

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

# Best Choice
### R E A L T Y

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## OPTIONAL CLAUSES ADDENDUM TO
## PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __April 09, 2025__     1

between **Renata Timm**     **Carrole Rugenstein**     ("Buyer")     2
      Buyer             Buyer

and **Melanie Smith**     ("Seller")     3
      Seller             Seller

concerning **3057**    **42nd Avenue W**     **Seattle**    **WA**   **98199**    (the "Property").     4
      Address             City         State    Zip

## CHECK IF INCLUDED:     5

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Broker and Buyer Broker make no representations    6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of    7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on    8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and    9
encroachments to Buyer's own satisfaction.    10

2. **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA    11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting    12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy:    13

    ❑ **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to    14
apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's    15
additional protection and inflation protection endorsements, if available at no additional cost, rather than    16
the Homeowner's Policy of Title Insurance.    17

    ❑ **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for    18
an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's    19
Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage    20
Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and    21
the cost of any survey required by the title insurer.    22

3. ❑ **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish    23
from the Property prior to Buyer taking possession.    24

4. ❑ **Personal Property.** Unless otherwise agreed, Seller shall remove all personal property from the Property    25
not later than the Possession Date. Any personal property remaining on the Property thereafter shall become    26
the property of Buyer, and may be retained or disposed of as Buyer determines.    27

5. ☑ **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to:    28
☑ public water main; ☑ public sewer main; ❑ septic tank; ❑ well (specify type) _____ ;    29
❑ irrigation water (specify provider) _____ ; ❑ natural gas; ❑ telephone; ☑ electricity;    30
❑ cable (specify provider) _____ ; ❑ internet (specify provider) _____ ;    31
☑ other __oil tank__    32

6. ❑ **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require    33
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish    34
Buyer the information below in writing as soon as available:    35

WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____    36

CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____    37

OTHER INSULATION DATA: _____    38

| | | | |
|---|---|---|---|
| *RJ* 04/09/2025 | *CR* 04/09/2025 | | |
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

Form 22D
Optional Clauses Addendum
Rev. 3/21
Page 2 of 2

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**OPTIONAL CLAUSES ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*Continued*

7. ☐ **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following 39
items of personal property that are included with the sale: ☐ propane tank; ☐ security system; ☐ satellite 40
dish and operating equipment; ☐ other _____ . 41

Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled 42
in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within 43
_____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever 44
is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer 45
shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further 46
obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely 47
notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 48

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 49
other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if 50
available from the Association) within _____ days (10 days if not filled in) of mutual acceptance: 51
    a.  Association rules and regulations, including, but not limited to architectural guidelines; 52
    b.  Association bylaws and covenants, conditions, and restrictions (CC&Rs); 53
    c.  Association meeting minutes from the prior two (2) years; 54
    d.  Association Board of Directors meeting minutes from the prior six (6) months; and 55
    e.  Association financial statements from the prior two (2) years and current operating budget. 56

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not 57
filled in) of receipt of the above documents or the date that the above documents are due, whichever is 58
earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If 59
Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be 60
refunded to Buyer. 61

9. ☐ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association 62
or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for 63
in the association documents. If the association documents do not provide which party pays the fee, the fee 64
shall be paid by ☐ Buyer; ☐ Seller (Seller if not filled in). 65

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 66
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 67
removal of the Excluded Item(s). Excluded Item(s): 68

69
70

11. ☑ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide 71
additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows: 72
    a.  Home warranty provider: _____ 73
    b.  Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together 74
       with any included options, and Buyer shall pay any balance. 75
    c.  Options to be included: _____ 76
       _____ (none, if not filled in). 77
    d.  Other: **Buyer Agent to provide 1 year home warranty at no additional cost to buyer or seller** . 78

12. ☑ **Other.** 79
    **- Subject to court approval.** 80
81
82
    **- Seller is a licensed real estate broker in the state of washington.** 83
84
85

**Buyer to gain access to view the property within 24 hours of acceptance of this offer.**

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| WI | 04/09/2025 | CR | 04/09/2025 | | | | |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**Best Choice**
R E A L T Y

Form 22E
FIRPTA Certification
Rev. 7/19
Page 1 of 1

**FIRPTA CERTIFICATION**

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The Foreign Investment in Real Property Tax Act ("FIRPTA"), 26 U.S.C. 1445, provides that a buyer of a U.S. real property interest must withhold tax if Seller is a foreign person, unless one of the exceptions in the Act applies. The following will inform Buyer and Closing Agent whether tax withholding is required. 1 2 3

Note: The above law applies to foreign corporations, partnerships, trusts, estates and other foreign entities, as well as to foreign individuals. If Seller is a corporation, partnership, trust, estate or other entity, the terms "I" and "my" as used below means the corporation or other entity. A "real property interest" includes full or part ownership of land and/or improvements thereon; leaseholds; options to acquire any of the foregoing; and an interest in foreign corporations, partnerships, trusts or other entities holding U.S. real estate. 4 5 6 7 8

**SELLER CERTIFICATION.** Seller hereby certifies the following: 9

**PROPERTY.** I am the Seller of real property ☑ at: 10

| 3057 | 42nd Avenue W | Seattle | WA | 98199 |
|------|---------------|---------|-----|-------|
| | Address | City | State | Zip |

11

or ☐ (if no street address) legally described on the attached. 12

**CITIZENSHIP STATUS.** I ☐ AM ☐ AM NOT a non-resident alien (or a foreign corporation, foreign partnership, foreign trust, foreign estate or other foreign business entity) for purposes of U.S. income taxation. 13 14

**TAXPAYER I.D. NUMBER.**
My U.S. taxpayer identification number (e.g. social security number) is _____ . 15 16
(Tax I.D. number to be provided by Seller at Closing)

**ADDRESS.**
My home address is_____ 17 18
Address                        City                        State        Zip

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief it is true, correct and complete. I understand that this Certification may be disclosed to the Internal Revenue Service ("IRS") and that any false statement I have made here could be punished by fine, imprisonment, or both. 19 20 21

| _____ | _____ | _____ | _____ |
|------------------|----------|------------------|----------|
| Seller | Date | Seller | Date |

22

**BUYER CERTIFICATION** (Only applicable if Seller is a non-resident alien). 23

If Seller is a non-resident alien, and has not obtained a release from the IRS, then Closing Agent must withhold 15% of the amount realized from the sale and pay it to the IRS, unless Buyer certifies that the selected statement below is correct: 24 25 26

☐ **Amount Realized ($300,000 or less) and Family Residence = No Tax.** (a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other consideration to Seller, does not exceed $300,000; and (b) I certify that I or a member of my family* have definite plans to reside on the property for at least 50% of the time that the property is used by any person during each of the first two twelve month periods following the date of this sale. If Buyer certifies these statements, there is no tax. 27 28 29 30 31

☐ **Amount Realized (more than $300,000, but not exceeding $1,000,000) and Family Residence = 10% Tax.** (a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other consideration to Seller, exceeds $300,000, but does not exceed $1,000,000; and (b) I certify that I or a member of my family* have definite plans to reside on the property for at least 50% of the time that the property is used by any person during each of the first two twelve month periods following the date of this sale. If Buyer certifies these statements, then Closing Agent must withhold 10% of the amount realized from the sale and pay it to the IRS. 32 33 34 35 36 37 38

* (Defined in 11 U.S.C. 267(c)(4). It includes brothers, sisters, spouse, ancestors and lineal descendants). 39

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief both statements are true, correct and complete. I understand that this Certification may be disclosed to the IRS and that any false statement I have made here could be punished by fine, imprisonment, or both. 40 41 42

| _____ | _____ | _____ | _____ |
|------------------|----------|------------------|----------|
| Buyer | Date | Buyer | Date |

43

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**a.** **Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless  1
otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance  2
with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other  3
property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties  4
shall use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take  5
steps to confirm any wire instructions via an independently verified phone number and other appropriate measures.  6

**b.** **Earnest Money.** Buyer shall deliver the Earnest Money by the Delivery Date listed in Specific Term No. 7 (2 days after  7
mutual acceptance if not filled in) to the party holding the Earnest Money (Buyer Brokerage Firm or Closing Agent). If  8
sent by mail, the Earnest Money must arrive at Buyer Brokerage Firm or Closing Agent by the Delivery Date. If the  9
Earnest Money is held by Buyer Brokerage Firm and is over $10,000.00 it shall be deposited into an interest bearing  10
trust account in Buyer Brokerage Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, after  11
deduction of bank charges and fees, will be paid to Buyer. Buyer shall reimburse Buyer Brokerage Firm for bank  12
charges and fees in excess of the interest earned, if any. If the Earnest Money held by Buyer Brokerage Firm is over  13
$10,000.00 Buyer has the option to require Buyer Brokerage Firm to deposit the Earnest Money into the Housing Trust  14
Fund Account, with the interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer  15
does not complete an IRS Form W-9 before Buyer Brokerage Firm must deposit the Earnest Money or the Earnest  16
Money is $10,000.00 or less, the Earnest Money shall be deposited into the Housing Trust Fund Account. Buyer  17
Brokerage Firm may transfer the Earnest Money to Closing Agent at Closing. If all or part of the Earnest Money is to be  18
refunded to Buyer and any such costs remain unpaid, the Buyer Brokerage Firm or Closing Agent may deduct and pay  19
them therefrom. The parties instruct Closing Agent to provide written verification of receipt of the Earnest Money and  20
notice of dishonor of any check to the parties and Brokers at the addresses and/or fax numbers provided herein.  21

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest  22
Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent.  23
If either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest  24
Money. Pursuant to RCW 64.04.220, Closing Agent shall deliver notice of the demand to the other party within 15 days.  25
If the other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse  26
the Earnest Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing  27
Agent timely receives an objection or an inconsistent demand from the other party, Closing Agent shall commence an  28
interpleader action within 60 days of such objection or inconsistent demand, unless the parties provide subsequent  29
consistent instructions to Closing Agent to disburse the earnest money or refrain from commencing an interpleader  30
action for a specified period of time. Pursuant to RCW 4.28.080, the parties consent to service of the summons and  31
complaint for an interpleader action by first class mail, postage prepaid at the party's usual mailing address or the  32
address identified in this Agreement. If the Closing Agent complies with the preceding process, each party shall be  33
deemed to have released Closing Agent from any and all claims or liability related to the disbursal of the Earnest  34
Money. If either party fails to authorize the release of the Earnest Money to the other party when required to do so  35
under this Agreement, that party shall be in breach of this Agreement. For the purposes of this section, the term Closing  36
Agent includes a Buyer Brokerage Firm holding the Earnest Money. The parties authorize the party commencing an  37
interpleader action to deduct up to $750.00 for the costs thereof. The parties acknowledge that RCW 64.04.220 requires  38
the court to award the Closing Agent its reasonable attorneys' fees and costs associated with an interpleader action.  39

**c.** **Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is  40
checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains,  41
drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed  42
television antennas; ventilating, air conditioning and heating fixtures; trash compactor; garbage disposal; fireplace  43
doors, gas logs and gas log lighters; irrigation fixtures; electric garage door openers; water heaters; installed electrical  44
fixtures; lighting fixtures; shrubs, plants and trees planted in the ground; and other fixtures; and all associated operating  45
remote controls and access permissions. Unless otherwise agreed, if any of the above items are leased or encumbered,  46
Seller shall acquire clear title before Closing.  47

**d.** **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing.  48
The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions,  49
presently of record and general to the area; easements and encroachments, not materially affecting the value of or  50
unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not  51
convey or reserve any oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary  52
encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be  53
conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate  54
Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after  55
acquired title.  56

| | | | | | | |
|---|---|---|---|---|---|---|
| _RJ_ | 04/09/2025 | _CR_ | 04/09/2025 | | | |
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authe sitisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**e.** **Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current 57
ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance 58
Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines 59
to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party 60
applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance 61
Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title 62
Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy, together with 63
homeowner's additional protection and inflation protection endorsements, if available. The Title Insurance Company 64
shall send a copy of the preliminary commitment to Seller, Listing Broker, Buyer and Buyer Broker. The preliminary 65
commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and 66
Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be 67
made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, 68
unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described 69
in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance 70
or damages as a consequence of Seller's inability to provide insurable title. 71

**f.** **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls 72
on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, 73
the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when 74
the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale 75
proceeds are available to Seller. Seller shall deliver keys, garage door remotes, and access codes to Buyer on the 76
Closing Date or on the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on 77
the Possession Date. Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the 78
Buyer is provided possession. Seller shall either repair or replace any system or appliance (including, but not limited to 79
plumbing, heat, electrical, and all Included Items) that becomes inoperative or malfunctions prior to Closing with a 80
system or appliance of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of 81
Closing to verify that Seller has maintained the Property and systems/appliances as required by this paragraph. Seller 82
shall not enter into or modify existing leases or rental agreements, service contracts, or other agreements affecting the 83
Property which have terms extending beyond Closing without first obtaining Buyer's consent, which shall not be 84
unreasonably withheld. If possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A 85
(Rental Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After 86
Closing) (or alternative rental agreements) and are advised of the need to contact their respective insurance companies 87
to assure appropriate hazard and liability insurance policies are in place, as applicable. 88

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon 89
monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy 90
the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit, that does not have at least one 91
smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person 92
occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller 93
complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless 94
from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property. 95

**g.** **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 96
like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the 97
cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and 98
costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating 99
party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a 100
Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the 101
purposes of completing a reverse exchange. 102

**h.** **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of the 103
escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, and 104
lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, including credit 105
report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any payments are 106
delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such delinquencies at 107
Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, prior to Closing, 108
Seller obtains a written statement from the supplier as to the quantity and current price and provides such statement to the 109
Closing Agent. Seller shall pay all utility and internet charges, including unbilled charges. Unless waived in Specific Term 110
No. 12, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy unpaid utility 111
charges in accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities providing service 112
to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or equivalent). 113

| | | | |
|---|---|---|---|
| _RJ_ 04/09/2025 | _CR_ 04/09/2025 | | |
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid as agreed in Specific Term No. 13. 114–117

**i. Sale Information.** Listing Broker and Buyer Broker are authorized to report this Agreement (including price and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Broker and/or Buyer Broker, on request, any and all information and copies of documents concerning this sale. 118–122

**j. Seller Citizenship and FIRPTA.** Seller warrants that the identification of Seller's citizenship status for purposes of U.S. income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") and provide the certification to the Closing Agent within 10 days of mutual acceptance. If Seller is a foreign person for purposes of U.S. income taxation, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service. Seller shall pay any fees incurred by Buyer related to such withholding and payment. 123–128

If Seller fails to provide the FIRPTA certification to the Closing Agent within 10 days of mutual acceptance, Buyer may give notice that Buyer may terminate the Agreement at any time 3 days thereafter (the "Right to Terminate Notice"). If Seller has not earlier provided the FIRPTA certification to the Closing Agent, Buyer may give notice of termination of this Agreement (the "Termination Notice") any time following 3 days after delivery of the Right to Terminate Notice. If Buyer gives the Termination Notice before Seller provides the FIRPTA certification to the Closing Agent, this Agreement is terminated and the Earnest Money shall be refunded to Buyer. 129–134

**k. Notices and Delivery of Documents.** Any notice related to this Agreement (including revocations of offers or counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by Buyer Broker, or at the licensed office of Buyer Broker. Documents related to this Agreement, such as NWMLS Form 17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Buyer Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice. 135–142

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Buyer Broker and Buyer Brokerage Firm or both Listing Broker and Listing Brokerage Firm at the e-mail addresses specified on page one of this Agreement; (ii) Buyer Broker or Listing Broker provide written acknowledgment of receipt of the e-mail (an automatic e-mail reply does not constitute written acknowledgment); or (iii) if a party is unrepresented, the e-mail is sent directly to the party's e-mail address specified on page one of this Agreement. At the request of either party, or the Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document. 143–149

**l. Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. When counting backwards from Closing, any period of time measured in days shall start on the day prior to Closing and if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day, moving forward, that is not a Saturday, Sunday or legal holiday (e.g. Monday or Tuesday). If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement. 150–164

**m. Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature. 165–168

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| *RT* | 04/09/2025 | *CR* | 04/09/2025 | | | | |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**n. Assignment**. Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement. 169 170 171

**o. Default**. In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply: 172 173

    **i. Forfeiture of Earnest Money**. That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure. 174 175

    **ii. Seller's Election of Remedies**. Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity. 176 177 178 179

**p. Professional Advice and Attorneys' Fees**. Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses. 180 181 182 183

**q. Offer**. This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, by the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 184 185 186 187

**r. Counteroffer**. Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 188 189 190 191 192 193

**s. Offer and Counteroffer Expiration Date**. If no expiration date is specified for an offer/counteroffer, the offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, unless sooner withdrawn. 194 195 196

**t. Agency Disclosure**. Buyer Brokerage Firm, Buyer Brokerage Firm's Designated Broker, Buyer Broker's Branch Manager (if any) and Buyer Broker's Managing Broker (if any) represent the same party that Buyer Broker represents. Listing Brokerage Firm, Listing Brokerage Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) represent the same party that the Listing Broker represents. All parties acknowledge receipt of the pamphlet entitled "Real Estate Brokerage in Washington." 197 198 199 200 201

**u. Brokerage Firm Compensation**. Seller and Buyer shall pay compensation in accordance with any listing or compensation agreement to which they are a party. The Listing Brokerage Firm's compensation shall be paid as specified in the listing agreement. The compensation offered by Seller to the Buyer Brokerage Firm, if any, is set forth in Specific Term No. 17(a), and if there is any inconsistency between the Buyer Brokerage Firm's compensation offered and the description of the offered compensation stated in Specific Term No. 17(a), the terms shall be as set forth in the published offer. Seller shall pay the Buyer Brokerage Firm compensation set forth in Specific Term No. 17(b). Seller and Buyer hereby consent to Listing Brokerage Firm or Buyer Brokerage Firm receiving compensation from more than one party. Seller and Buyer hereby assign to Listing Brokerage Firm and Buyer Brokerage Firm, as applicable, a portion of their funds in escrow equal to such compensation and irrevocably instruct the Closing Agent to disburse the compensation directly to the Firm(s). In any action by Listing or Buyer Brokerage Firm to enforce this paragraph, the prevailing party is entitled to court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third-party beneficiaries under this Agreement. 202 203 204 205 206 207 208 209 210 211 212 213

**v. Cancellation Rights/Lead-Based Paint**. If a residential dwelling was built on the Property prior to 1978, and Buyer receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter. 214 215 216

**w. Information Verification Period**. Unless satisfied/waived, Buyer shall have the time period set forth in Specific Term No. 15 (10 days after mutual acceptance if not filled in) to verify all information provided from Seller or Listing Brokerage Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within the time period set forth in Specific Term No. 15. If Buyer gives timely notice under this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 217 218 219 220 221

| _RJ_ 04/09/2025 | _CR_ 04/09/2025 | | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**x. Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations under this Agreement and that none of the Brokers has agreed to independently investigate or confirm any matter related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other defects arising after construction, such as drainage, leakage, pest, rot and mold problems. In addition, some properties may contain soil or other contamination that is not readily apparent and may be hazardous. Brokers do not have the expertise to identify or assess defective or hazardous products, materials, or conditions. Buyer is urged to use due diligence to inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of defective or hazardous materials and conditions and evaluate the Property as there may be defects and hazards that may only be revealed by careful inspection. Buyer is advised to investigate whether the Property is suitable for Buyer's intended use and to ensure the water supply is sufficient to meet Buyer's needs. Buyer is advised to investigate the cost of insurance for the Property, including, but not limited to homeowner's, fire, flood, earthquake, landslide, and other available coverage. Buyer acknowledges that local ordinances may restrict short term rentals of the Property. Buyer and Seller acknowledge that home protection plans may be available which may provide additional protection and benefit to Buyer and Seller. Brokers may assist the parties with locating and selecting third-party service providers, such as inspectors or contractors, but Brokers cannot guarantee or be responsible for the services provided by those third parties. The parties shall exercise their own judgment and due diligence regarding third-party service providers.

**y. Fair Housing.** Seller and Buyer acknowledge that local, state, and federal fair housing laws prohibit discrimination based on sex, marital status, sexual orientation, gender identity, race, creed, color, religion, caste, national origin, citizenship or immigration status, families with children status, familial status, honorably discharged veteran or military status, the presence of any sensory, mental, or physical disability, or the use of a support or service animal by a person with a disability.

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| *RJ* | 04/09/2025 | *CR* | 04/09/2025 | | | | |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

Best Choice
R E A L T Y

Form 22J
Lead Based Paint Disclosure
Rev. 7/23
Page 1 of 2

**DISCLOSURE OF INFORMATION ON
LEAD-BASED PAINT AND
LEAD-BASED PAINT HAZARDS**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated **April 09, 2025** _____ 1

between _____ **Renata Timm** _____ **Carrole Rugenstein** _____ ("Buyer") 2
        Buyer                     Buyer

and _____ **Melanie Smith** _____ ("Seller") 3
       Seller                    Seller

concerning **3057**   **42nd Avenue W**    **Seattle**    **WA  98199** ___ (the "Property"). 4
        Address               City        State  Zip

### Lead Warning Statement
5

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is 6
notified that such property may present exposure to lead from lead-based paint that may place young children at 7
risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, 8
including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead 9
poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is 10
required to provide the buyer with any information on lead-based paint hazards from risk assessments or 11
inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk 12
assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. 13

**NOTE:** In the event of pre-closing possession of more than 100 days by Buyer, the term Buyer also means Tenant. 14
 15

### Seller's Disclosure
16

(a) Presence of lead-based paint and/or lead-based paint hazards (check one below): 17

❏ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). 18
 19
 20

❏ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. 21

(b) Records and reports available to the Seller (check one below): 22

❏ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint and/or lead- 23
based paint hazards in the housing (list documents below). 24
 25
 26

❏ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing. 27

Seller has reviewed the information above and certifies, to the best of Seller's knowledge, that the statements made 28
and information provided by Seller are true and accurate. 29

_____ _____    _____ _____ 30
Seller             Date           Seller             Date

*RT* 04/09/2025    *CR* 04/09/2025    _____ _____   _____ _____
Buyer Initials   Date     Buyer Initials   Date     Seller Initials   Date    Seller Initials   Date

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**DISCLOSURE OF INFORMATION ON**
**LEAD-BASED PAINT AND**
**LEAD-BASED PAINT HAZARDS**
*Continued*

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## Buyer's Acknowledgment

(c)  Buyer has received the above Seller's Disclosure and all documents (if any).    31
    *Buyer Initials    Buyer Initials*    32

(d)  Buyer has received the pamphlet *Protect Your Family from Lead in Your Home*.    33
    *Buyer Initials    Buyer Initials*

(e)  Buyer has (check one below):    34

☐  Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint    35
    and/or lead-based paint hazards.    36

☐  Accepted an opportunity to conduct a risk assessment or inspection for the presence of lead-based paint    37
    and/or lead-based paint hazards on the following terms and conditions:    38

This Agreement is conditioned upon a risk assessment or inspection of the Property for the presence of lead-    39
based paint and/or lead-based paint hazards, to be performed by a risk assessor or inspector at Buyer's    40
expense. (Intact lead-based paint that is in good condition is not necessarily a hazard).    41

This contingency shall conclusively be deemed satisfied (waived) unless Buyer gives written notice of    42
disapproval of the risk assessment or inspection to Seller within _____ (10 days if not filled in) after    43
receiving this Disclosure. Buyer's notice must identify the specific existing deficiencies and corrections    44
needed and must include a copy of the inspection and/or risk assessment report.    45

Seller may, at Seller's option, within _____ days (3 days if not filled in) after Seller's receipt of Buyer's    46
disapproval notice, give written notice that Seller will correct the conditions identified by Buyer. If Seller    47
agrees to correct the conditions identified by Buyer, then it shall be accomplished at Seller's expense prior    48
to the Closing Date, and Seller shall provide Buyer with certification from a risk assessor or inspector    49
demonstrating that the condition(s) has been remedied prior to the Closing Date. In lieu of correction, the    50
parties may agree on any other remedy for the disapproved condition(s), including but not limited to    51
adjustments to the Purchase Price. If an agreement on non-repair remedies is secured in writing before the    52
expiration of the time period set forth in this subparagraph, then this contingency shall be deemed satisfied.    53

If Seller does not give notice that Seller will correct the conditions identified in Buyer's risk assessment or    54
inspection, or if the parties cannot reach an agreement on alternative remedies, then Buyer may elect to give    55
notice of termination of this Agreement within _____ days (3 days if not filled in) after expiration of the    56
time limit or delivery of Seller's notice pursuant to the preceding paragraph, whichever occurs first. The    57
Earnest Money shall then be returned to Buyer and the parties shall have no further obligations to each other.    58
Buyer's failure to give a written notice of termination means that Buyer will be required to purchase the    59
Property without Seller having corrected the conditions identified in Buyer's risk assessment or inspection    60
and without any alternative remedy for those conditions.    61

Buyer has reviewed the information above and certifies, to the best of Buyer's knowledge, that the statements made    62
by Buyer are true and accurate.    63

*Renata Timm*                        04/09/25          *Carrole Rugenstein*                  04/09/25
Buyer                                 Date            Buyer                                  Date            64

## Brokers' Acknowledgment    65

Brokers have informed Seller of Seller's obligations under 42 U.S.C. 4852(d) and are aware of their responsibility    66
to ensure compliance.    67

*Sarah Abader*                       04/09/2025        _____            _____
Buyer Broker                          Date            Listing Broker                       Date            68

*RJ* 04/09/2025      *CR* 04/09/2025
Buyer Initials  Date   Buyer Initials  Date      Seller Initials   Date      Seller Initials   Date

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

## Best Choice
R E A L T Y

Form 22K
Identification of Utilities Addendum
Rev. 3/21
Page 1 of 1

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**IDENTIFICATION OF UTILITIES**
**ADDENDUM TO PURCHASE AND SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated _____**April 09, 2025**_____                    1

between **Renata Timm**                          **Carrole Rugenstein**                        ("Buyer")   2
          Buyer                                   Buyer
and **Melanie Smith**                                                                          ("Seller")   3
          Seller                                  Seller
concerning **3057    42nd Avenue W**              **Seattle**          **WA  98199**    (the "Property').   4
          Address                                  City            State    Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds   5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities   6
providing service to the Property and having lien rights are as follows:                                             7

WATER DISTRICT:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

8
9
10

SEWER DISTRICT:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

11
12
13

IRRIGATION DISTRICT:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

14
15
16

GARBAGE:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

17
18
19

ELECTRICITY:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

20
21
22

GAS:

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

23
24
25

SPECIAL DISTRICT(S):
(local improvement districts or
utility local improvement districts)

| | |
|---|---|
| Name | e-mail or website (optional) |
| Address | |
| City, State, Zip | Fax. No. (optional) |

26
27
28

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1)   29
within _____**5**_____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing   30
Broker or Buyer Broker with the names and addresses of all utility providers having lien rights affecting the Property   31
and (2) Buyer and Seller authorize Listing Broker or Buyer Broker to insert into this Addendum the names and   32
addresses of the utility providers identified by Seller.                                                            33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges   34
(including unbilled charges). Buyer understands that the Listing Broker and Buyer Broker are not responsible for, or   35
to insure payment of, Seller's utility charges.                                                                     36

| _RT_  04/09/2025 | _CR_  04/09/2025 | | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

Best Choice
R E A L T Y

**INSPECTION ADDENDUM TO**
**PURCHASE AND SALE AGREEMENT**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated **April 09, 2025**                                                     1

between **Renata Timm**                          **Carrole Rugenstein**                                   ("Buyer")  2
      Buyer                                          Buyer

and **Melanie Smith**                                                                                      ("Seller")  3
    Seller                                          Seller

concerning **3057    42nd Avenue W**                    **Seattle**              **WA**   **98199**   (the "Property").  4
    Address                                  City                    State     Zip

1. **INSPECTION CONTINGENCY.** This Agreement is conditioned on Buyer's subjective satisfaction with  5
   inspections of the Property and the improvements on the Property. Buyer's inspections may include, at Buyer's  6
   option and without limitation, the structural, mechanical and general condition of the improvements to the  7
   Property, compliance with building and zoning codes, an inspection of the Property for hazardous materials, a  8
   pest inspection, and a soils/stability inspection. Buyer's general home inspection must be performed by Buyer or  9
   a person licensed under RCW 18.280. Buyer may engage specialists (e.g. plumbers, electricians, roofers, etc.)  10
   to conduct further inspections of the Property.  11

   **a.  Sewer Inspection.** Buyer's inspection of the Property ☒ may; ☐ may not (may, if not checked) include an  12
   inspection of the sewer system, which may include a sewer line video inspection and assessment and may  13
   require the inspector to remove toilets or other fixtures to access the sewer line.  14

2. **BUYER'S OBLIGATIONS.** All inspections are to be (a) ordered by Buyer, (b) performed by inspectors of Buyer's  15
   choice, and (c) completed at Buyer's expense. Buyer shall not alter the Property or any improvements on the  16
   Property without first obtaining Seller's permission. Buyer is solely responsible for interviewing and selecting all  17
   inspectors. Buyer shall restore the Property and all improvements on the Property to the same condition they  18
   were in prior to the inspection. Buyer shall be responsible for all damages resulting from any inspection of the  19
   Property performed on Buyer's behalf.  20

3. **BUYER'S NOTICE.** This inspection contingency shall conclusively be deemed waived and Seller shall not be  21
   obligated to make any repairs or modifications unless within **10**     days (10 days if not filled in) after mutual  22
   acceptance of this Agreement (the "Initial Inspection Period"), Buyer gives notice (a) approving the inspection and  23
   waiving this contingency; (b) disapproving the inspection and terminating the Agreement; (c) that Buyer will conduct  24
   additional inspections; or (d) proposing repairs to the property or modifications to the Agreement. If Buyer  25
   disapproves the inspection and terminates the Agreement, the Earnest Money shall be refunded to Buyer. If Buyer  26
   proposes repairs to the property or modifications to the Agreement, including adjustments to the purchase price or  27
   credits for repairs to be performed after Closing, the parties shall negotiate as set forth in Paragraph 6, below. The  28
   parties may use NWMLS Form 35R to give notices required by this Addendum.  29

4. **INSPECTION REPORT.** Buyer shall not provide the inspection report, or portions of the report, to Seller, unless  30
   Seller requests otherwise in writing. Upon Seller's written request, Buyer shall provide to Seller the inspection  31
   report, portions of the report, or the inspector's recommendation for additional inspections, as requested by Seller.  32

   **a.  Waiver of Contingency by Buyer.** If Buyer provides any portion of the inspection report to Seller without  33
   Seller's prior written request or consent, the inspection contingency shall conclusively be deemed waived.  34

   **b.  Seller Request.** The selection of any checkbox below by Seller shall not be considered a counteroffer.  35

      ☐  Seller requests that Buyer provide the inspection report to Seller.  36

      ☐  If Buyer requests repairs or modifications to the Agreement, Seller requests that Buyer provide only the  37
         portions of the inspection report related to the requested repairs or modifications to Seller.  38

      ☐  If Buyer provides notice of additional inspections pursuant to Paragraph 5, Seller requests that Buyer  39
         provide a copy of the inspector's recommendation for additional inspections to Seller.  40

5. **ADDITIONAL TIME FOR INSPECTIONS.** If an inspector so recommends, Buyer shall have additional time to  41
   obtain further evaluation of any item by a specialist at Buyer's option and expense, if, on or before the end of the  42
   Initial Inspection Period, Buyer provides notice that Buyer will seek additional inspections and, upon Seller's  43
   request, a copy of the inspector's recommendation. If Buyer provides timely notice of additional inspections (and,  44
   if requested by Seller, a copy of the inspector's recommendation), Buyer shall have _____ (5 days if not  45

| _RT_ | 04/09/2025 | _CR_ | 04/09/2025 | | | | |
|---|---|---|---|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**INSPECTION ADDENDUM TO
PURCHASE AND SALE AGREEMENT**
*Continued*

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

filled in) after giving the notice to obtain the additional inspection(s) as recommended by the inspector and the 46
Initial Inspection Period shall be so extended. 47

6. **BUYER'S REQUESTS FOR REPAIRS OR MODIFICATIONS.** If Buyer requests repairs or modifications 48
pursuant to Paragraph 3, the parties shall negotiate as set forth in this Paragraph 6. Buyer's initial request and 49
Seller's response made in accordance with the following procedures are irrevocable for the time period provided. 50

   a. **Seller's Response to Request for Repairs or Modifications.** Seller shall have _____ days (3 days 51
   if not filled in) after receipt of Buyer's request for repairs or modifications to give notice that Seller (i) agrees 52
   to the repairs or modifications proposed by Buyer; (ii) agrees to some of the repairs or modifications 53
   proposed by Buyer; (iii) rejects all repairs or modifications proposed by Buyer; or (iv) offers different or 54
   additional repairs or modifications. If Seller agrees to the terms of Buyer's request for repairs or 55
   modifications, this contingency shall be satisfied and Buyer's Reply shall not be necessary. If Seller does not 56
   agree to all of Buyer's repairs or modifications, Buyer shall have an opportunity to reply, as follows: 57

   b. **Buyer's Reply.** If Seller does not agree to all of the repairs or modifications proposed by Buyer, Buyer shall 58
   have _____ days (3 days if not filled in) from either the day Buyer receives Seller's response or, if Seller 59
   fails to timely respond, the day Seller's response period ends, whichever is earlier, to (i) accept the Seller's 60
   response at which time this contingency shall be satisfied; (ii) agree with the Seller on other remedies; or (iii) 61
   disapprove the inspection and terminate the Agreement, in which event, the Earnest Money shall be 62
   refunded to Buyer. 63

   **ATTENTION BUYER:** These time periods for negotiating repairs or modifications shall not repeat. The parties 64
   must either reach a written agreement or Buyer must terminate this Agreement by the Buyer's Reply deadline set 65
   forth in Paragraph 6(b). Buyer's inaction during Buyer's reply period shall result in waiver of this inspection 66
   condition, in which case Seller shall not be obligated to make any repairs or modifications whatsoever and this 67
   contingency shall be deemed waived. 68

7. **REPAIRS.** If Seller agrees to make the repairs proposed by Buyer, then repairs shall be accomplished at Seller's 69
expense in a commercially reasonable manner and in accordance with all applicable laws no fewer than 70
_____ days (3 days if not filled in) prior to the Closing Date. In the case of hazardous materials, "repair" 71
means removal or treatment (including but not limited to removal or, at Seller's option, decommissioning of any 72
oil storage tanks) of the hazardous material at Seller's expense as recommended by and under the direction of a 73
professional selected by Seller. Seller's repairs are subject to re-inspection and approval, prior to Closing, by the 74
inspector or specialist who recommended the repair, if Buyer elects to order and pay for such re-inspection. If 75
Buyer agrees to pay for any repairs prior to Closing, the parties are advised to seek the counsel of an attorney to 76
review the terms of that agreement. 77

8. **OIL STORAGE TANKS.** Any inspection regarding oil storage tanks or contamination from such tanks shall be 78
limited solely to determining the presence or non-presence of oil storage tanks on the Property, unless otherwise 79
agreed in writing by Buyer and Seller. 80

9. **ON-SITE SEWAGE DISPOSAL SYSTEMS ADVISORY.** Buyer is advised that on-site sewage disposal systems, 81
including "septic systems," are subject to strict governmental regulation and occasional malfunction and even 82
failure. Buyer is advised to consider conducting an inspection of any on-site sewage system in addition to the 83
inspection of the Property provided by this Form 35 by including an appropriate on-site sewage disposal 84
inspection contingency such as NWMLS Form 22S (Septic Addendum). 85

10. ☒ **NEIGHBORHOOD REVIEW CONTINGENCY.** If the box is checked, Buyer's inspection includes Buyer's 86
subjective satisfaction that the conditions of the neighborhood in which the Property is located are consistent with 87
the Buyer's intended use of the Property (the "Neighborhood Review"). The Neighborhood Review may include 88
Buyer's investigation of the schools, proximity to bus lines, availability of shopping, traffic patterns, noise, parking 89
and investigation of other neighborhood, environmental and safety conditions the Buyer may determine to be 90
relevant in deciding to purchase the Property. If Buyer does not give notice of disapproval of the Neighborhood 91
Review within 3_____ (3 days if not filled in) of mutual acceptance of the Agreement, then this Neighborhood 92
Review condition shall conclusively be deemed satisfied (waived). If Buyer gives a timely notice of disapproval, then 93
this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 94

| _RJ_ 04/09/2025 | _CR_ 04/09/2025 | | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

# Best Choice
R E A L T Y

**SELLER DISCLOSURE STATEMENT
IMPROVED PROPERTY**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**SELLER:** Melanie Smith                                                                                    1
Seller                                                      Seller

To be used in transfers of improved residential real property, including residential dwellings up to four units, new construction,   2
dwellings in a residential common interest community not subject to a public offering statement, condominiums not subject to a public   3
offering statement, certain timeshares, and manufactured and mobile homes. See RCW Chapter 64.06 for further information.   4

**INSTRUCTIONS TO THE SELLER**                                                                              5
Please complete the following form. Do not leave any spaces blank. If the question clearly does not apply to the property check   6
"NA." If the answer is "yes" to any asterisked (*) item(s), please explain on attached sheets. Please refer to the line number(s) of   7
the question(s) when you provide your explanation(s). For your protection you must date and initial each page of this disclosure   8
statement and each attachment. Delivery of the disclosure statement must occur not later than five (5) business days, unless   9
otherwise agreed, after mutual acceptance of a written purchase and sale agreement between Buyer and Seller.   10

**NOTICE TO THE BUYER**                                                                                     11
THE FOLLOWING DISCLOSURES ARE MADE BY THE SELLER ABOUT THE CONDITION OF THE PROPERTY LOCATED AT   12
__3057__          __42nd Avenue W__                                          , CITY __Seattle__   13
STATE __WA__ , ZIP __98199__            , COUNTY __King__                    ("THE PROPERTY") OR AS   14
LEGALLY DESCRIBED ON THE ATTACHED EXHIBIT A.   15

SELLER MAKES THE FOLLOWING DISCLOSURES OF EXISTING MATERIAL FACTS OR MATERIAL DEFECTS TO BUYER BASED   16
ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE   17
STATEMENT. UNLESS YOU AND SELLER OTHERWISE AGREE IN WRITING, YOU HAVE THREE (3) BUSINESS DAYS FROM   18
THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO YOU TO RESCIND THE AGREEMENT   19
BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. IF THE   20
SELLER DOES NOT GIVE YOU A COMPLETED DISCLOSURE STATEMENT, THEN YOU MAY WAIVE THE RIGHT TO RESCIND   21
PRIOR TO OR AFTER THE TIME YOU ENTER INTO A PURCHASE AND SALE AGREEMENT.   22

THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE   23
LICENSEE OR OTHER PARTY. THIS INFORMATION IS FOR DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF   24
ANY WRITTEN AGREEMENT BETWEEN BUYER AND SELLER.   25

FOR A MORE COMPREHENSIVE EXAMINATION OF THE SPECIFIC CONDITION OF THIS PROPERTY YOU ARE ADVISED   26
TO OBTAIN AND PAY FOR THE SERVICES OF QUALIFIED EXPERTS TO INSPECT THE PROPERTY, WHICH MAY INCLUDE,   27
WITHOUT LIMITATION, ARCHITECTS, ENGINEERS, LAND SURVEYORS, PLUMBERS, ELECTRICIANS, ROOFERS,   28
BUILDING INSPECTORS, ON-SITE WASTEWATER TREATMENT INSPECTORS, OR STRUCTURAL PEST INSPECTORS.   29
THE PROSPECTIVE BUYER AND SELLER MAY WISH TO OBTAIN PROFESSIONAL ADVICE OR INSPECTIONS OF THE   30
PROPERTY OR TO PROVIDE APPROPRIATE PROVISIONS IN A CONTRACT BETWEEN THEM WITH RESPECT TO ANY   31
ADVICE, INSPECTION, DEFECTS OR WARRANTIES.   32

**Seller** ☐ **is / ** ☐ **is not occupying the Property.**   33

**I. SELLER'S DISCLOSURES:**   34
*If you answer "Yes" to a question with an asterisk (*), please explain your answer and attach documents, if available and not   35
otherwise publicly recorded. If necessary, use an attached sheet.   36

| | | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|---|
| **1. TITLE** | | | | | | 37 |
| A. | Do you have legal authority to sell the property? If no, please explain. | ☐ | ☐ | ☐ | ☐ | 38, 39 |
| *B. | Is title to the property subject to any of the following? | | | | | 40 |
| | (1) First right of refusal | ☐ | ☐ | ☐ | ☐ | 41 |
| | (2) Option | ☐ | ☐ | ☐ | ☐ | 42 |
| | (3) Lease or rental agreement | ☐ | ☐ | ☐ | ☐ | 43 |
| | (4) Life estate? | ☐ | ☐ | ☐ | ☐ | 44 |
| *C. | Are there any encroachments, boundary agreements, or boundary disputes? | ☐ | ☐ | ☐ | ☐ | 45 |
| *D. | Is there a private road or easement agreement for access to the property? | ☐ | ☐ | ☐ | ☐ | 46 |
| *E. | Are there any rights-of-way, easements, or access limitations that may affect the Buyer's use of the property? | | ☐ | ☐ | ☐ | 47, 48 |
| *F. | Are there any written agreements for joint maintenance of an easement or right-of-way? | ☐ | ☐ | ☐ | ☐ | 49 |
| *G. | Is there any study, survey project, or notice that would adversely affect the property? | ☐ | ☐ | ☐ | ☐ | 50 |
| *H. | Are there any pending or existing assessments against the property? | ☐ | ☐ | ☐ | ☐ | 51 |
| *I. | Are there any zoning violations, nonconforming uses, or any unusual restrictions on the property that would affect future construction or remodeling? | ☐ | ☐ | ☐ | ☐ | 52, 53 |

_____          _____          _____          _____
SELLER'S INITIALS          Date          SELLER'S INITIALS          Date

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**SELLER DISCLOSURE STATEMENT
IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|---|
| *J. | Is there a boundary survey for the property? | ☐ | ☐ | ☐ | ☐ | 54 55 56 |
| *K. | Are there any covenants, conditions, or restrictions recorded against the property? | ☐ | ☐ | ☐ | ☐ | 57 |

NOTICE TO BUYER: Covenants or deed restrictions based on race, creed, sexual orientation, or other protected class were voided by RCW 49.60.224 and are unenforceable. Washington law allows for the illegal language to be struck by bringing an action in superior court or by the free recording of a restrictive covenant modification document. Many county auditor websites provide a short form with instructions on this process. `58 59 60 61 62`

## 2. WATER `63`

A. Household Water `64`

(1) The source of water for the property is: ☐ Private or publicly owned water system `65`
☐ Private well serving only the subject property    *☐ Other water system `66`

| | | | | | |
|---|---|---|---|---|---|
| *If shared, are there any written agreements? ☐ | ☐ | ☐ | ☐ | 67 |

*(2) Is there an easement (recorded or unrecorded) for access to and/or maintenance of the water source? ☐ ☐ ☐ ☐ `68 69`

*(3) Are there any problems or repairs needed? ☐ ☐ ☐ ☐ `70`

(4) During your ownership, has the source provided an adequate year-round supply of potable water? ☐ ☐ ☐ ☐ `71`
If no, please explain: _____ `72`

*(5) Are there any water treatment systems for the property? ☐ ☐ ☐ ☐ `73`
If yes, are they: ☐ Leased  ☐ Owned `74`

*(6) Are there any water rights for the property associated with its domestic water supply, such as a water right permit, certificate, or claim? ☐ ☐ ☐ ☐ `75 76`

(a) If yes, has the water right permit, certificate, or claim been assigned, transferred, or changed? ☐ ☐ ☐ ☐ `77`

*(b) If yes, has all or any portion of the water right not been used for five or more successive years? ☐ ☐ ☐ ☐ `78`

*(7) Are there any defects in the operation of the water system (e.g. pipes, tank, pump, etc.)? ☐ ☐ ☐ ☐ `79`

B. Irrigation Water `80`

(1) Are there any irrigation water rights for the property, such as a water right permit, certificate, or claim? ☐ ☐ ☐ ☐ `81 82`

*(a) If yes, has all or any portion of the water right not been used for five or more successive years? ☐ ☐ ☐ ☐ `83 84`

*(b) If so, is the certificate available? (If yes, please attach a copy.) ☐ ☐ ☐ ☐ `85`

*(c) If so, has the water right permit, certificate, or claim been assigned, transferred, or changed? ☐ ☐ ☐ ☐ `86`

*(2) Does the property receive irrigation water from a ditch company, irrigation district, or other entity? ☐ ☐ ☐ ☐ `87`
If so, please identify the entity that supplies water to the property: `88`
_____ `89`

C. Outdoor Sprinkler System `90`

(1) Is there an outdoor sprinkler system for the property? ☐ ☐ ☐ ☐ `91`

*(2) If yes, are there any defects in the system? ☐ ☐ ☐ ☐ `92`

*(3) If yes, is the sprinkler system connected to irrigation water? ☐ ☐ ☐ ☐ `93`

## 3. SEWER/ON-SITE SEWAGE SYSTEM `94`

A. The property is served by: `95`
☐ Public sewer system  ☐ On-site sewage system (including pipes, tanks, drainfields, and all other component parts) `96`
☐ Other disposal system `97`
Please describe:_____ `98`

B. If public sewer system service is available to the property, is the house connected to the sewer main? ☐ ☐ ☐ ☐ `99 100`
If no, please explain:_____ `101`

_____        _____
SELLER'S INITIALS        Date              SELLER'S INITIALS              Date

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

Form 17
Seller Disclosure Statement
Rev. 8/21
Page 3 of 6

# SELLER DISCLOSURE STATEMENT
## IMPROVED PROPERTY
### (Continued)

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *C. Is the property subject to any sewage system fees or charges in addition to those covered in your regularly billed sewer or on-site sewage system maintenance service?................................❑ | | ❑ | ❑ | ❑ | 102 103 104 |
| D. If the property is connected to an on-site sewage system: | | | | | 105 |
| *(1) Was a permit issued for its construction, and was it approved by the local health department or district following its construction?.........................................❑ | | ❑ | ❑ | ❑ | 106 107 |
| (2) When was it last pumped? _____ | | | | | 108 |
| *(3) Are there any defects in the operation of the on-site sewage system? .....................❑ | | ❑ | ❑ | ❑ | 109 |
| (4) When was it last inspected? _____ | | | ❑ | ❑ | 110 |
| By whom: _____ | | | | | 111 |
| (5) For how many bedrooms was the on-site sewage system approved? _____ bedrooms | | | ❑ | ❑ | 112 |
| E. Are all plumbing fixtures, including laundry drain, connected to the sewer/on-site sewage system? ....................................................................................❑ | | ❑ | ❑ | ❑ | 113 114 |
| If no, please explain:_____ | | | | | 115 |
| *F. Have there been any changes or repairs to the on-site sewage system? ........................❑ | | ❑ | ❑ | ❑ | 116 |
| G. Is the on-site sewage system, including the drainfield, located entirely within the boundaries of the property? ..................................................................❑ | | ❑ | ❑ | ❑ | 117 118 |
| If no, please explain:_____ | | | | | 119 |
| *H. Does the on-site sewage system require monitoring and maintenance services more frequently than once a year? ..................................................................................❑ | | ❑ | ❑ | ❑ | 120 121 |

NOTICE: IF THIS RESIDENTIAL REAL PROPERTY DISCLOSURE IS BEING COMPLETED FOR NEW CONSTRUCTION WHICH HAS NEVER BEEN OCCUPIED, SELLER IS NOT REQUIRED TO COMPLETE THE QUESTIONS LISTED IN ITEM 4 (STRUCTURAL) OR ITEM 5 (SYSTEMS AND FIXTURES).

**4. STRUCTURAL**

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *A. Has the roof leaked within the last 5 years?...........................................................❑ | | ❑ | ❑ | ❑ | 126 |
| *B. Has the basement flooded or leaked? ......................................................................❑ | | ❑ | ❑ | ❑ | 127 |
| *C. Have there been any conversions, additions or remodeling? ...........................................❑ | | ❑ | ❑ | ❑ | 128 |
| *(1) If yes, were all building permits obtained? ..............................................................❑ | | ❑ | ❑ | ❑ | 129 |
| *(2) If yes, were all final inspections obtained? .............................................................❑ | | ❑ | ❑ | ❑ | 130 |
| D. Do you know the age of the house? ......................................................................❑ | | ❑ | ❑ | ❑ | 131 |
| If yes, year of original construction: _____ | | | | | 132 |
| *E. Has there been any settling, slippage, or sliding of the property or its improvements? ..................❑ | | ❑ | ❑ | ❑ | 133 |
| *F. Are there any defects with the following: (If yes, please check applicable items and explain) ..........❑ | | ❑ | ❑ | ❑ | 134 |

| ❑ Foundations | ❑ Decks | ❑ Exterior Walls | 135 |
|---|---|---|---|
| ❑ Chimneys | ❑ Interior Walls | ❑ Fire Alarms | 136 |
| ❑ Doors | ❑ Windows | ❑ Patio | 137 |
| ❑ Ceilings | ❑ Slab Floors | ❑ Driveways | 138 |
| ❑ Pools | ❑ Hot Tub | ❑ Sauna | 139 |
| ❑ Sidewalks | ❑ Outbuildings | ❑ Fireplaces | 140 |
| ❑ Garage Floors | ❑ Walkways | ❑ Siding | 141 |
| ❑ Wood Stoves | ❑ Elevators | ❑ Incline Elevators | 142 |

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

# SELLER DISCLOSURE STATEMENT
## IMPROVED PROPERTY
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|---|
| *C. | Is the property subject to any sewage system fees or charges in addition to those covered in your regularly billed sewer or on-site sewage system maintenance service?............................ | ☐ | ☐ | ☐ | ☐ | 102 103 104 |
| D. | If the property is connected to an on-site sewage system: | | | | | 105 |
| *(1) | Was a permit issued for its construction, and was it approved by the local health department following its construction?............................................. | ☐ | ☐ | ☐ | ☐ | 106 107 |
| (2) | When was it last pumped? _____ | | | | | 108 |
| *(3) | Are there any defects in the operation of the on-site sewage system? ...................................... | ☐ | ☐ | ☐ | ☐ | 109 |
| (4) | When was it last inspected? _____ | | | ☐ | ☐ | 110 |
| | By whom: _____ | | | | | 111 |
| (5) | For how many bedrooms was the on-site sewage system approved? _____ bedrooms | | | ☐ | ☐ | 112 |
| E. | Are all plumbing fixtures, including laundry drain, connected to the sewer/on-site sewage system? ................................................................................................. | ☐ | ☐ | ☐ | ☐ | 113 114 |
| | If no, please explain:_____ | | | | | 115 |
| *F. | Have there been any changes or repairs to the on-site sewage system? ........................................ | ☐ | ☐ | ☐ | ☐ | 116 |
| G. | Is the on-site sewage system, including the drainfield, located entirely within the boundaries of the property? ................................................................................. | ☐ | ☐ | ☐ | ☐ | 117 118 |
| | If no, please explain:_____ | | | | | 119 |
| *H. | Does the on-site sewage system require monitoring and maintenance services more frequently than once a year? ............................................................................................ | ☐ | ☐ | ☐ | ☐ | 120 121 |

NOTICE: IF THIS RESIDENTIAL REAL PROPERTY DISCLOSURE IS BEING COMPLETED FOR NEW CONSTRUCTION WHICH HAS NEVER BEEN OCCUPIED, SELLER IS NOT REQUIRED TO COMPLETE THE QUESTIONS LISTED IN ITEM 4 (STRUCTURAL) OR ITEM 5 (SYSTEMS AND FIXTURES).

**4. STRUCTURAL**

| | | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|---|
| *A. | Has the roof leaked within the last 5 years? ....................................................................... | ☐ | ☐ | ☐ | ☐ | 126 |
| *B. | Has the basement flooded or leaked? ............................................................................... | ☐ | ☐ | ☐ | ☐ | 127 |
| *C. | Have there been any conversions, additions or remodeling? ....................................................... | ☐ | ☐ | ☐ | ☐ | 128 |
| *(1) | If yes, were all building permits obtained? ...................................................................... | ☐ | ☐ | ☐ | ☐ | 129 |
| *(2) | If yes, were all final inspections obtained? ..................................................................... | ☐ | ☐ | ☐ | ☐ | 130 |
| D. | Do you know the age of the house? ................................................................................. | ☐ | ☐ | ☐ | ☐ | 131 |
| | If yes, year of original construction: _____ | | | | | 132 |
| *E. | Has there been any settling, slippage, or sliding of the property or its improvements? .................. | ☐ | ☐ | ☐ | ☐ | 133 |
| *F. | Are there any defects with the following: (If yes, please check applicable items and explain) ......... | ☐ | ☐ | ☐ | ☐ | 134 |

- ☐ Foundations
- ☐ Chimneys
- ☐ Doors
- ☐ Ceilings
- ☐ Pools
- ☐ Sidewalks
- ☐ Garage Floors
- ☐ Wood Stoves
- ☐ Stairway Chair Lifts

- ☐ Decks
- ☐ Interior Walls
- ☐ Windows
- ☐ Slab Floors
- ☐ Hot Tub
- ☐ Outbuildings
- ☐ Walkways
- ☐ Elevators
- ☐ Wheelchair Lifts

- ☐ Exterior Walls
- ☐ Fire Alarms
- ☐ Patio
- ☐ Driveways
- ☐ Sauna
- ☐ Fireplaces
- ☐ Siding
- ☐ Incline Elevators
- ☐ Other _____

(lines 135-143)

| | | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|---|
| *G. | Was a structural pest or "whole house" inspection done? ....................................................... | ☐ | ☐ | ☐ | ☐ | 144 |
| | If yes, when and by whom was the inspection completed? | | | | | 145 |
| | _____ | | | | | 146 |
| H. | During your ownership, has the property had any wood destroying organism or pest infestation?.......... | ☐ | ☐ | ☐ | ☐ | 147 |
| I. | Is the attic insulated?............................................................................................. | ☐ | ☐ | ☐ | ☐ | 148 |
| J. | Is the basement insulated? ........................................................................................ | ☐ | ☐ | ☐ | ☐ | 149 |

_____     _____
SELLER'S INITIALS     Date     SELLER'S INITIALS     Date

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| **5. SYSTEMS AND FIXTURES** | | | | | 150 |
|   *A. If any of the following systems or fixtures are included with the transfer, are there any defects? | | | | | 151 |
|     If yes, please explain: _____ | | | | | 152 / 153 |
|     Electrical system, including wiring, switches, outlets, and service | ❑ | ❑ | ❑ | ❑ | 154 |
|     Plumbing system, including pipes, faucets, fixtures, and toilets | ❑ | ❑ | ❑ | ❑ | 155 |
|     Hot water tank | ❑ | ❑ | ❑ | ❑ | 156 |
|     Garbage disposal | ❑ | ❑ | ❑ | ❑ | 157 |
|     Appliances | ❑ | ❑ | ❑ | ❑ | 158 |
|     Sump pump | ❑ | ❑ | ❑ | ❑ | 159 |
|     Heating and cooling systems | ❑ | ❑ | ❑ | ❑ | 160 |
|     Security system: ❑ Owned ❑ Leased | ❑ | ❑ | ❑ | ❑ | 161 |
|     Other _____ | ❑ | ❑ | ❑ | ❑ | 162 |
|   *B. If any of the following fixtures or property is included with the transfer, are they leased? | | | | | 163 |
|     (If yes, please attach copy of lease.) | | | | | 164 |
|     Security System: _____ | ❑ | ❑ | ❑ | ❑ | 165 |
|     Tanks (type): _____ | ❑ | ❑ | ❑ | ❑ | 166 |
|     Satellite dish: _____ | ❑ | ❑ | ❑ | ❑ | 167 |
|     Other: _____ | ❑ | ❑ | ❑ | ❑ | 168 |
|   *C. Are any of the following kinds of wood burning appliances present at the property? | | | | | 169 |
|     (1) Woodstove? | ❑ | ❑ | ❑ | ❑ | 170 |
|     (2) Fireplace insert? | ❑ | ❑ | ❑ | ❑ | 171 |
|     (3) Pellet stove? | ❑ | ❑ | ❑ | ❑ | 172 |
|     (4) Fireplace? | ❑ | ❑ | ❑ | ❑ | 173 |
|     If yes, are all of the (1) woodstoves or (2) fireplace inserts certified by the U.S. Environmental | | | | | 174 |
|     Protection Agency as clean burning appliances to improve air quality and public health? | ❑ | ❑ | ❑ | ❑ | 175 |
|   D. Is the property located within a city, county, or district or within a department of natural | | | | | 176 |
|     resources fire protection zone that provides fire protection services? | ❑ | ❑ | ❑ | ❑ | 177 |
|   E. Is the property equipped with carbon monoxide alarms? (Note: Pursuant to RCW 19.27.530, Seller | | | | | 178 |
|     must equip the residence with carbon monoxide alarms as required by the state building code.) | ❑ | ❑ | ❑ | ❑ | 179 |
|   F. Is the property equipped with smoke detection devices? | ❑ | ❑ | ❑ | ❑ | 180 |
|     (Note: Pursuant to RCW 43.44.110, if the property is not equipped with at least one smoke | | | | | 181 |
|     detection device, at least one must be provided by the seller.) | | | | | 182 |
|   G. Does the property currently have internet service? | ❑ | ❑ | ❑ | ❑ | 183 |
|     Provider: _____ | | | | | 184 |
| **6. HOMEOWNERS' ASSOCIATION/COMMON INTERESTS** | | | | | 185 |
|   A. Is there a Homeowners' Association? | ❑ | ❑ | ❑ | ❑ | 186 |
|     Name of Association and contact information for an officer, director, employee, or other authorized | | | | | 187 |
|     agent, if any, who may provide the association's financial statements, minutes, bylaws, fining policy, | | | | | 188 |
|     and other information that is not publicly available: _____ | | | | | 189 |
|   B. Are there regular periodic assessments? | ❑ | ❑ | ❑ | ❑ | 190 |
|     $_____ per ❑ month ❑ year | | | | | 191 |
|     ❑ Other: _____ | | | | | 192 |
|   *C. Are there any pending special assessments? | ❑ | ❑ | ❑ | ❑ | 193 |
|   *D. Are there any shared "common areas" or any joint maintenance agreements (facilities | | | | | 194 |
|     such as walls, fences, landscaping, pools, tennis courts, walkways, or other areas | | | | | 195 |
|     co-owned in undivided interest with others)? | ❑ | ❑ | ❑ | ❑ | 196 |
| **7. ENVIRONMENTAL** | | | | | 197 |
|   *A. Have there been any flooding, standing water, or drainage problems on the property | | | | | 198 |
|     that affect the property or access to the property? | ❑ | ❑ | ❑ | ❑ | 199 |
|   *B. Does any part of the property contain fill dirt, waste, or other fill material? | ❑ | ❑ | ❑ | ❑ | 200 |
|   *C. Is there any material damage to the property from fire, wind, floods, beach movements, | | | | | 201 |
|     earthquake, expansive soils, or landslides? | ❑ | ❑ | ❑ | ❑ | 202 |
|   D. Are there any shorelines, wetlands, floodplains, or critical areas on the property? | ❑ | ❑ | ❑ | ❑ | 203 |
|   *E. Are there any substances, materials, or products in or on the property that may be environmental | | | | | 204 |
|     concerns, such as asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical | | | | | 205 |
|     storage tanks, or contaminated soil or water? | ❑ | ❑ | ❑ | ❑ | 206 |
|   *F. Has the property been used for commercial or industrial purposes? | ❑ | ❑ | ❑ | ❑ | 207 |

_____  _____    _____  _____
SELLER'S INITIALS    Date       SELLER'S INITIALS    Date

Form 17
Seller Disclosure Statement
Rev. 8/21
Page 5 of 6

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

|  | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *G. Is there any soil or groundwater contamination? | ☐ | ☐ | ☐ | ☐ | 208 / 209 / 210 |
| *H. Are there transmission poles or other electrical utility equipment installed, maintained, or buried on the property that do not provide utility service to the structures on the property? | ☐ | ☐ | ☐ | ☐ | 211 / 212 |
| *I. Has the property been used as a legal or illegal dumping site? | ☐ | ☐ | ☐ | ☐ | 213 |
| *J. Has the property been used as an illegal drug manufacturing site? | ☐ | ☐ | ☐ | ☐ | 214 |
| *K. Are there any radio towers in the area that cause interference with cellular telephone reception? | ☐ | ☐ | ☐ | ☐ | 215 |

**8. LEAD BASED PAINT** (Applicable if the house was built before 1978). .................................................. ☐   216

  A. Presence of lead-based paint and/or lead-based paint hazards (check one below):   217

    ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). _____   218 / 219

    ☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.   220

  B. Records and reports available to the Seller (check one below):   221

    ☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).   222 / 223

    _____   224

    ☐ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.   225

**9. MANUFACTURED AND MOBILE HOMES**   226

If the property includes a manufactured or mobile home,   227

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *A. Did you make any alterations to the home? | ☐ | ☐ | ☐ | ☐ | 228 |
| If yes, please describe the alterations: _____ | | | | | 229 |
| *B. Did any previous owner make any alterations to the home? | ☐ | ☐ | ☐ | ☐ | 230 |
| *C. If alterations were made, were permits or variances for these alterations obtained? | ☐ | ☐ | ☐ | ☐ | 231 |

**10. FULL DISCLOSURE BY SELLERS**   232

  A. Other conditions or defects:   233
    *Are there any other existing material defects affecting the property that a prospective buyer should know about?    ☐   ☐   ☐   ☐   234 / 235

  B. Verification
  The foregoing answers and attached explanations (if any) are complete and correct to the best of Seller's knowledge and Seller has received a copy hereof. Seller agrees to defend, indemnify and hold real estate licensees harmless from and against any and all claims that the above information is inaccurate. Seller authorizes real estate licensees, if any, to deliver a copy of this disclosure statement to other real estate licensees and all prospective buyers of the property.   236 / 237 / 238 / 239 / 240

  241

_____    _____    _____    _____
Seller                        Date        Seller                        Date

If the answer is "Yes" to any asterisked (*) items, please explain below (use additional sheets if necessary). Please refer to the line number(s) of the question(s).   242 / 243

244
245
246
247
248
249
250
251
252
253
254
255
256

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**

*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *G. Is there any soil or groundwater contamination? | ❑ | ❑ | ❑ | ❑ | 208 209 210 |
| *H. Are there transmission poles or other electrical utility equipment installed, maintained, or buried on the property that do not provide utility service to the structures on the property? | ❑ | ❑ | ❑ | ❑ | 211 212 |
| *I. Has the property been used as a legal or illegal dumping site? | ❑ | ❑ | ❑ | ❑ | 213 |
| *J. Has the property been used as an illegal drug manufacturing site? | ❑ | ❑ | ❑ | ❑ | 214 |
| *K. Are there any radio towers in the area that cause interference with cellular telephone reception? | ❑ | ❑ | ❑ | ❑ | 215 |

**8. LEAD BASED PAINT** (Applicable if the house was built before 1978). ..................................................... ❑ 216

A. Presence of lead-based paint and/or lead-based paint hazards (check one below): 217

   ❑  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). _____ 218

219

   ❑  Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. 220

B. Records and reports available to the Seller (check one below): 221

   ❑  Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below). 222 223

_____ 224

   ❑  Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing. 225

**9. MANUFACTURED AND MOBILE HOMES** 226

If the property includes a manufactured or mobile home, 227

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *A. Did you make any alterations to the home? | ❑ | ❑ | ❑ | ❑ | 228 |
| If yes, please describe the alterations: _____ | | | | | 229 |
| *B. Did any previous owner make any alterations to the home? | ❑ | ❑ | ❑ | ❑ | 230 |
| *C. If alterations were made, were permits or variances for these alterations obtained? | ❑ | ❑ | ❑ | ❑ | 231 |

**10. FULL DISCLOSURE BY SELLERS** 232

A. Other conditions or defects: 233

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *Are there any other existing material defects affecting the property that a prospective buyer should know about? | ❑ | ❑ | ❑ | ❑ | 234 235 |

B. Verification 236

The foregoing answers and attached explanations (if any) are complete and correct to the best of Seller's knowledge and Seller has received a copy hereof. Seller agrees to defend, indemnify and hold real estate licensees harmless from and against any and all claims that the above information is inaccurate. Seller authorizes real estate licensees, if any, to deliver a copy of this disclosure statement to other real estate licensees and all prospective buyers of the property. 237 238 239 240

241

_____   _____   _____   _____
Seller                    Date          Seller                   Date

If the answer is "Yes" to any asterisked (*) items, please explain below (use additional sheets if necessary). Please refer to the line number(s) of the question(s). 242 243

244
245
246
247
248
249
250
251
252
253
254
255
256

Authentisign ID: 506CA44C-9315-F011-8B3D-00224822F75A

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## II. NOTICES TO THE BUYER

### 1. SEX OFFENDER REGISTRATION
INFORMATION REGARDING REGISTERED SEX OFFENDERS MAY BE OBTAINED FROM LOCAL LAW ENFORCEMENT AGENCIES. THIS NOTICE IS INTENDED ONLY TO INFORM YOU OF WHERE TO OBTAIN THIS INFORMATION AND IS NOT AN INDICATION OF THE PRESENCE OF REGISTERED SEX OFFENDERS.

### 2. PROXIMITY TO FARMING/WORKING FOREST
THIS NOTICE IS TO INFORM YOU THAT THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE MAY LIE IN CLOSE PROXIMITY TO A FARM OR WORKING FOREST. THE OPERATION OF A FARM OR WORKING FOREST INVOLVES USUAL AND CUSTOMARY AGRICULTURAL PRACTICES OR FOREST PRACTICES, WHICH ARE PROTECTED UNDER RCW 7.48.305, THE WASHINGTON RIGHT TO FARM ACT.

### 3. OIL TANK INSURANCE
THIS NOTICE IS TO INFORM YOU THAT IF THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE UTILIZES AN OIL TANK FOR HEATING PURPOSES, NO COST INSURANCE MAY BE AVAILABLE FROM THE POLLUTION LIABILITY INSURANCE AGENCY.

## III. BUYER'S ACKNOWLEDGEMENT

### 1. BUYER HEREBY ACKNOWLEDGES THAT:

A. Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by utilizing diligent attention and observation.

B. The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and not by any real estate licensee or other party.

C. Buyer acknowledges that, pursuant to RCW 64.06.050(2), real estate licensees are not liable for inaccurate information provided by Seller, except to the extent that real estate licensees know of such inaccurate information.

D. This information is for disclosure only and is not intended to be a part of the written agreement between the Buyer and Seller.

E. Buyer (which term includes all persons signing the "Buyer's acceptance" portion of this disclosure statement below) has received a copy of this Disclosure Statement (including attachments, if any) bearing Seller's signature(s).

F. If the house was built prior to 1978, Buyer acknowledges receipt of the pamphlet *Protect Your Family From Lead in Your Home.*

DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT ARE PROVIDED BY SELLER BASED ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE. UNLESS BUYER AND SELLER OTHERWISE AGREE IN WRITING, BUYER SHALL HAVE THREE (3) BUSINESS DAYS FROM THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO RESCIND THE AGREEMENT BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. YOU MAY WAIVE THE RIGHT TO RESCIND PRIOR TO OR AFTER THE TIME YOU ENTER INTO A SALE AGREEMENT.

BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT AND ACKNOWLEDGES THAT THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE LICENSEE OR OTHER PARTY.

_____     _____
Buyer                               Date     Buyer                               Date

### 2. BUYER'S WAIVER OF RIGHT TO REVOKE OFFER
Buyer has read and reviewed the Seller's responses to this Seller Disclosure Statement. Buyer approves this statement and waives Buyer's right to revoke Buyer's offer based on this disclosure.

_____     _____
Buyer                               Date     Buyer                               Date

### 3. BUYER'S WAIVER OF RIGHT TO RECEIVE COMPLETED SELLER DISCLOSURE STATEMENT
Buyer has been advised of Buyer's right to receive a completed Seller Disclosure Statement. Buyer waives that right. However, if the answer to any of the questions in the section entitled "Environmental" would be "yes," Buyer may not waive the receipt of the "Environmental" section of the Seller Disclosure Statement.

_____     _____
Buyer                               Date     Buyer                               Date

_____     _____
SELLER'S INITIALS            Date     SELLER'S INITIALS            Date

    Prequalification Letter

Your actual rate, payment, and costs could be higher. Get an official Loan Estimate before choosing a loan.

## Renata Timm

I am pleased to inform you that based upon a review of the income and assets you have provided, and your credit report and digital underwriting results, you have been conditionally approved for a home loan with the following criteria:

| $1,375,000.00 | $1,031,250.00 | $0.00 |
|---|---|---|
| Purchase Price | Loan Amount | Seller Paid Closing Costs |

| | | | |
|---|---|---|---|
| **Loan Product:** | Conventional | **Credit:** | Documented |
| **Occupancy:** | Primary | **Income:** | Documented |
| **Loan-to-Value:** | 75.00% | **Assets:** | Documented |
| **Issued Date:** | 4/9/25 | | |
| **Valid Until:** | 7/2/25 | | |

This is not an offer or commitment to lend nor does it guarantee a final loan approval. A final loan approval is subject to a written application, executed sales contract, clear title, satisfactory appraisal, verification of the information you have provided and full underwriting review by a loanDepot underwriter of the complete loan package.

**If you have any questions on this letter, please feel free to contact Jered at 541-255-1003**

Sincerely,

**Jered Helton**
NMLS #172989
Producing Area Manager
(541) 255-1003

**Brad Wheeler**
NMLS #473297
Loan Consultant
(541) 521-8409

1700 Valley River Drive, Suite 200,
Eugene, OR 97401
jhelton@loandepot.com
bwheeler@loandepot.com
www.theheltongroup.com




loanDepot.com LLC NMLS #174457 (www.nmlsconsumeraccess.org)
For more licensing details visit www.loanDepot.com/licensing