The Honorable Christopher M Alston
Chapter 7
Hearing Location: United States Bankruptcy
Court, Courtroom 7206,
700 Stewart Street,
Seattle, WA 98101
Hearing Date: 5/29/25
Hearing Time: 9:30 am
Response Date: 5/22/25

## UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | ) NO. 24-10218-CMA |
| | ) |
| Melanie A Smith aka M A Smith aka M Smith | ) DEBTOR'S HOUSE OFFER OF |
| | ) TIMM AND RUGENSTEIN |
| Debtor | ) OFFER DATED 4/21/25 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

This is the same BUYER as the Timm offer of 2/12/25 ($1.475M) and the same BUYER as the

Timm offer of 4/9/25 ($1.375M) except that on 4/21/25 ($1.375 M)eliminates financing

contingency and extends the offer expiration to 5/19/25.

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

**Best Choice**
R E A L T Y

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
Specific Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

1. **Date:** April 09, 2025     **MLS No.:** 2328482     **Offer Expiration Date:** 5/19/2025

2. **Buyer:** Renata Timm     Carrole Rugenstein     Unmarried persons
   <u>Buyer</u>          <u>Buyer</u>          <u>Status</u>

3. **Seller:** Melanie Smith
   <u>Seller</u>          <u>Seller</u>

4. **Property:** Legal Description attached as Exhibit A. Tax Parcel No(s).: 3271800216 , _____ , _____

   3057     42nd Avenue W          Seattle          King          WA     98199
   <u>Address</u>          <u>City</u>          <u>County</u>          <u>State</u>   <u>Zip</u>

5. **Included Items:** ☒ stove(s)/range(s); ☒ refrigerator(s); ☒ washer(s); ☒ dryer(s); ☒ dishwasher(s); ☒ microwave(s); ☐ fireplace insert(s); ☐ wood stove(s); ☐ satellite dish; ☐ security system; ☐ hot tub; ☐ attached camera(s); ☐ attached speaker(s); ☐ attached TV(s); ☐ generator;

6. **Purchase Price: $** 1,375,000.00     One Million Three Hundred Seventy-Five Thousand _____ U.S. Dollars

7. **Earnest Money: $** 5,000.00 _____ U.S. Dollars;     Delivery Date 2 ____ days after mutual acceptance

   To be held by ☐ Buyer Brokerage Firm; ☒ Closing Agent; ☐ In the form of a Promissory Note (included as an Addendum)

8. **Default:** (check only one) ☒ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies

9. **Title Insurance Company:** Chicago Title & Escrow

10. **Closing Agent:** Chicago Escrow
    <u>Company</u>          <u>Individual (optional)</u>

11. **Closing Date:** 5/31/2025 ____ ; **Possession Date:** ☒ on Closing; ☐ Other

12. **Services of Closing Agent for Payment of Utilities:** ☒ Requested (attach NWMLS Form 22K); ☐ Waived

13. **Charges/Assessments Levied Before but Due After Closing:** ☐ assumed by Buyer; ☒ prepaid in full by Seller at Closing

14. **Seller Citizenship (FIRPTA):** Seller ☐ is; ☒ is not a foreign person for purposes of U.S. income taxation

15. **Information Verification Period:** ☒ Expires 5 ____ days after mutual acceptance; ☐ Satisfied/Waived

16. **Agency Disclosure:** Buyer represented by: ☒ Buyer Broker; ☐ Buyer/Listing Broker (limited dual agent); ☐ unrepresented
    Seller represented by: ☒ Listing Broker; ☐ Listing/Buyer Broker (limited dual agent); ☐ unrepresented

17. **Buyer Brokerage Compensation:** % 2.5         ; 2.5% ☐ Addendum for Buyer Credit
    <u>(a) Seller's Offer (if any)</u>          <u>(b) Amount to be Paid by Seller</u>

18. **Addenda:** 22D(Optional Clauses)     22J(Lead Disclosure)     22K(Utilities)

    22E FIRPTA

| | | | |
|---|---|---|---|
| *Renata Timm* | 04/21/2025 | | |
| Buyer Signature | Date | Seller Signature | Date |
| *Carrole Rugenstein* | 04/21/2025 | | |
| Buyer Signature | Date | Seller Signature | Date |
| | | | |
| Buyer Address | | Seller Address | |
| | | | |
| City, State, Zip | | City, State, Zip | |
| | | (206) 283-8615 | |
| Buyer Phone No. | Fax No. | Seller Phone No. | Fax No. |
| renatatimm1@yahoo.com | | | |
| Buyer E-mail Address | | Seller E-mail Address | |
| Best Choice Realty LLC | 2735 | John L. Scott, Inc. | 7315 |
| Buyer Brokerage Firm | MLS Office No. | Listing Brokerage Firm | MLS Office No. |
| Sarah Abader | 89030 | Melanie Smith | 81901 |
| Buyer Broker (Print) | MLS LAG No. | Listing Broker (Print) | MLS LAG No. |
| (206) 886-3986 | (253) 732-1216 | (253) 277-0364 | (425) 744-5300 | (206) 369-3404 | (425) 744-5355 |
| Firm Phone No. | Broker Phone No. | Firm Fax No. | Firm Phone No. | Broker Phone No. | Firm Fax No. |
| support@bestchoicerealtywa.com | | notices.lynnwood@johnlscott.com | |
| Firm Document E-mail Address | | Firm Document E-mail Address | |
| sarahabaderre@gmail.com | | meljls@aol.com | |
| Buyer Broker E-mail Address | | Listing Broker E-mail Address | |
| 107861 | 18833 | 5889 | 2131 |
| Buyer Broker DOL License No. | Firm DOL License No. | Listing Broker DOL License No. | Firm DOL License No. |

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**a.** **Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless 1
otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance 2
with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other 3
property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties 4
shall use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take 5
steps to confirm any wire instructions via an independently verified phone number and other appropriate measures. 6

**b.** **Earnest Money.** Buyer shall deliver the Earnest Money by the Delivery Date listed in Specific Term No. 7 (2 days after 7
mutual acceptance if not filled in) to the party holding the Earnest Money (Buyer Brokerage Firm or Closing Agent). If 8
sent by mail, the Earnest Money must arrive at Buyer Brokerage Firm or Closing Agent by the Delivery Date. If the 9
Earnest Money is held by Buyer Brokerage Firm and is over $10,000.00 it shall be deposited into an interest bearing 10
trust account in Buyer Brokerage Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, after 11
deduction of bank charges and fees, will be paid to Buyer. Buyer shall reimburse Buyer Brokerage Firm for bank 12
charges and fees in excess of the interest earned, if any. If the Earnest Money held by Buyer Brokerage Firm is over 13
$10,000.00 Buyer has the option to require Buyer Brokerage Firm to deposit the Earnest Money into the Housing Trust 14
Fund Account, with the interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer 15
does not complete an IRS Form W-9 before Buyer Brokerage Firm must deposit the Earnest Money or the Earnest 16
Money is $10,000.00 or less, the Earnest Money shall be deposited into the Housing Trust Fund Account. Buyer 17
Brokerage Firm may transfer the Earnest Money to Closing Agent at Closing. If all or part of the Earnest Money is to be 18
refunded to Buyer and any such costs remain unpaid, the Buyer Brokerage Firm or Closing Agent may deduct and pay 19
them therefrom. The parties instruct Closing Agent to provide written verification of receipt of the Earnest Money and 20
notice of dishonor of any check to the parties and Brokers at the addresses and/or fax numbers provided herein. 21

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest 22
Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent. 23
If either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest 24
Money. Pursuant to RCW 64.04.220, Closing Agent shall deliver notice of the demand to the other party within 15 days. 25
If the other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse 26
the Earnest Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing 27
Agent timely receives an objection or an inconsistent demand from the other party, Closing Agent shall commence an 28
interpleader action within 60 days of such objection or inconsistent demand, unless the parties provide subsequent 29
consistent instructions to Closing Agent to disburse the earnest money or refrain from commencing an interpleader 30
action for a specified period of time. Pursuant to RCW 4.28.080, the parties consent to service of the summons and 31
complaint for an interpleader action by first class mail, postage prepaid at the party's usual mailing address or the 32
address identified in this Agreement. If the Closing Agent complies with the preceding process, each party shall be 33
deemed to have released Closing Agent from any and all claims or liability related to the disbursal of the Earnest 34
Money. If either party fails to authorize the release of the Earnest Money to the other party when required to do so 35
under this Agreement, that party shall be in breach of this Agreement. For the purposes of this section, the term Closing 36
Agent includes a Buyer Brokerage Firm holding the Earnest Money. The parties authorize the party commencing an 37
interpleader action to deduct up to $750.00 for the costs thereof. The parties acknowledge that RCW 64.04.220 requires 38
the court to award the Closing Agent its reasonable attorneys' fees and costs associated with an interpleader action. 39

**c.** **Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is 40
checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, 41
drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed 42
television antennas; ventilating, air conditioning and heating fixtures; trash compactor; garbage disposal; fireplace 43
doors, gas logs and gas log lighters; irrigation fixtures; electric garage door openers; water heaters; installed electrical 44
fixtures; lighting fixtures; shrubs, plants and trees planted in the ground; and other fixtures; and all associated operating 45
remote controls and access permissions. Unless otherwise agreed, if any of the above items are leased or encumbered, 46
Seller shall acquire clear title before Closing. 47

**d.** **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. 48
The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, 49
presently of record and general to the area; easements and encroachments, not materially affecting the value of or 50
unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not 51
convey or reserve any oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary 52
encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be 53
conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate 54
Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after 55
acquired title. 56

| _RJ_ 04/21/2025 | _CR_ 04/21/2025 | | |
|---|---|---|---|
| Buyer's Initials       Date | Buyer's Initials       Date | Seller's Initials       Date | Seller's Initials       Date |

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**e.** **Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current 57
ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance 58
Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines 59
to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party 60
applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance 61
Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title 62
Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy, together with 63
homeowner's additional protection and inflation protection endorsements, if available. The Title Insurance Company 64
shall send a copy of the preliminary commitment to Seller, Listing Broker, Buyer and Buyer Broker. The preliminary 65
commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and 66
Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be 67
made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, 68
unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described 69
in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance 70
or damages as a consequence of Seller's inability to provide insurable title. 71

**f.** **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls 72
on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, 73
the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when 74
the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale 75
proceeds are available to Seller. Seller shall deliver keys, garage door remotes, and access codes to Buyer on the 76
Closing Date or on the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on 77
the Possession Date. Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the 78
Buyer is provided possession. Seller shall either repair or replace any system or appliance (including, but not limited to 79
plumbing, heat, electrical, and all Included Items) that becomes inoperative or malfunctions prior to Closing with a 80
system or appliance of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of 81
Closing to verify that Seller has maintained the Property and systems/appliances as required by this paragraph. Seller 82
shall not enter into or modify existing leases or rental agreements, service contracts, or other agreements affecting the 83
Property which have terms extending beyond Closing without first obtaining Buyer's consent, which shall not be 84
unreasonably withheld. If possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A 85
(Rental Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After 86
Closing) (or alternative rental agreements) and are advised of the need to contact their respective insurance companies 87
to assure appropriate hazard and liability insurance policies are in place, as applicable. 88

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon 89
monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy 90
the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit, that does not have at least one 91
smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person 92
occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller 93
complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless 94
from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property. 95

**g.** **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 96
like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the 97
cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and 98
costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating 99
party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a 100
Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the 101
purposes of completing a reverse exchange. 102

**h.** **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of the 103
escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, and 104
lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, including credit 105
report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any payments are 106
delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such delinquencies at 107
Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, prior to Closing, 108
Seller obtains a written statement from the supplier as to the quantity and current price and provides such statement to the 109
Closing Agent. Seller shall pay all utility and internet charges, including unbilled charges. Unless waived in Specific Term 110
No. 12, Buyer and Seller request the services of Closing Agent in disbursing funds necessary to satisfy unpaid utility 111
charges in accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities providing service 112
to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or equivalent). 113

| _RJ_ 04/21/2025 | _CR_ 04/21/2025 | | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or 114
other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that 115
are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid 116
as agreed in Specific Term No. 13. 117

**i.  Sale Information.** Listing Broker and Buyer Broker are authorized to report this Agreement (including price and all 118
terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone 119
else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, 120
and others related to this Sale, to furnish the Listing Broker and/or Buyer Broker, on request, any and all information 121
and copies of documents concerning this sale. 122

**j.  Seller Citizenship and FIRPTA.** Seller warrants that the identification of Seller's citizenship status for purposes of U.S. 123
income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) 124
under the Foreign Investment in Real Property Tax Act ("FIRPTA") and provide the certification to the Closing Agent 125
within 10 days of mutual acceptance. If Seller is a foreign person for purposes of U.S. income taxation, and this 126
transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount 127
to the Internal Revenue Service. Seller shall pay any fees incurred by Buyer related to such withholding and payment. 128

If Seller fails to provide the FIRPTA certification to the Closing Agent within 10 days of mutual acceptance, Buyer may 129
give notice that Buyer may terminate the Agreement at any time 3 days thereafter (the "Right to Terminate Notice"). If 130
Seller has not earlier provided the FIRPTA certification to the Closing Agent, Buyer may give notice of termination of 131
this Agreement (the "Termination Notice") any time following 3 days after delivery of the Right to Terminate Notice. If 132
Buyer gives the Termination Notice before Seller provides the FIRPTA certification to the Closing Agent, this Agreement 133
is terminated and the Earnest Money shall be refunded to Buyer. 134

**k.  Notices and Delivery of Documents.** Any notice related to this Agreement (including revocations of offers or 135
counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered 136
only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer 137
must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by 138
Buyer Broker, or at the licensed office of Buyer Broker. Documents related to this Agreement, such as NWMLS Form 139
17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, 140
and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Buyer Broker and 141
Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice. 142

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or 143
document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Buyer 144
Broker and Buyer Brokerage Firm or both Listing Broker and Listing Brokerage Firm at the e-mail addresses specified 145
on page one of this Agreement; (ii) Buyer Broker or Listing Broker provide written acknowledgment of receipt of the e-mail 146
(an automatic e-mail reply does not constitute written acknowledgment); or (iii) if a party is unrepresented, the e-mail is 147
sent directly to the party's e-mail address specified on page one of this Agreement. At the request of either party, or the 148
Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document. 149

**l.  Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in 150
this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last 151
calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal 152
holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, 153
Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, 154
shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar 155
date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday 156
as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a 157
Saturday, Sunday, legal holiday, or day when the county recording office is closed. When counting backwards from 158
Closing, any period of time measured in days shall start on the day prior to Closing and if the last day is a Saturday, 159
Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day, moving 160
forward, that is not a Saturday, Sunday or legal holiday (e.g. Monday or Tuesday). If the parties agree upon and attach a 161
legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of 162
computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to 163
the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement. 164

**m.  Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and 165
supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall 166
be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in 167
electronic form has the same legal effect and validity as a handwritten signature. 168

| _RJ_ 04/21/2025 | _CR_ 04/21/2025 | | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**n.** **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement. 169 170 171

**o.** **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply: 172 173

    **i.** **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure. 174 175

    **ii.** **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity. 176 177 178 179

**p.** **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses. 180 181 182 183

**q.** **Offer.** This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, by the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 184 185 186 187

**r.** **Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 188 189 190 191 192 193

**s.** **Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, unless sooner withdrawn. 194 195 196

**t.** **Agency Disclosure.** Buyer Brokerage Firm, Buyer Brokerage Firm's Designated Broker, Buyer Broker's Branch Manager (if any) and Buyer Broker's Managing Broker (if any) represent the same party that Buyer Broker represents. Listing Brokerage Firm, Listing Brokerage Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) represent the same party that the Listing Broker represents. All parties acknowledge receipt of the pamphlet entitled "Real Estate Brokerage in Washington." 197 198 199 200 201

**u.** **Brokerage Firm Compensation.** Seller and Buyer shall pay compensation in accordance with any listing or compensation agreement to which they are a party. The Listing Brokerage Firm's compensation shall be paid as specified in the listing agreement. The compensation offered by Seller to the Buyer Brokerage Firm, if any, is set forth in Specific Term No. 17(a), and if there is any inconsistency between the Buyer Brokerage Firm's compensation offered and the description of the offered compensation stated in Specific Term No. 17(a), the terms shall be as set forth in the published offer. Seller shall pay the Buyer Brokerage Firm compensation set forth in Specific Term No. 17(b). Seller and Buyer hereby consent to Listing Brokerage Firm or Buyer Brokerage Firm receiving compensation from more than one party. Seller and Buyer hereby assign to Listing Brokerage Firm and Buyer Brokerage Firm, as applicable, a portion of their funds in escrow equal to such compensation and irrevocably instruct the Closing Agent to disburse the compensation directly to the Firm(s). In any action by Listing or Buyer Brokerage Firm to enforce this paragraph, the prevailing party is entitled to court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third-party beneficiaries under this Agreement. 202 203 204 205 206 207 208 209 210 211 212 213

**v.** **Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter. 214 215 216

**w.** **Information Verification Period.** Unless satisfied/waived, Buyer shall have the time period set forth in Specific Term No. 15 (10 days after mutual acceptance if not filled in) to verify all information provided from Seller or Listing Brokerage Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within the time period set forth in Specific Term No. 15. If Buyer gives timely notice under this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 217 218 219 220 221

| _RJ_ | 04/21/2025 | _CR_ | 04/21/2025 | | | | |
|---|---|---|---|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2024
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**x.** **Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations 222
and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. 223
The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations 224
under this Agreement and that none of the Brokers has agreed to independently investigate or confirm any matter 225
related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In 226
addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain 227
building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of 228
lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other 229
defects arising after construction, such as drainage, leakage, pest, rot and mold problems. In addition, some properties 230
may contain soil or other contamination that is not readily apparent and may be hazardous. Brokers do not have the 231
expertise to identify or assess defective or hazardous products, materials, or conditions. Buyer is urged to use due 232
diligence to inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of 233
defective or hazardous materials and conditions and evaluate the Property as there may be defects and hazards that 234
may only be revealed by careful inspection. Buyer is advised to investigate whether the Property is suitable for Buyer's 235
intended use and to ensure the water supply is sufficient to meet Buyer's needs. Buyer is advised to investigate the cost 236
of insurance for the Property, including, but not limited to homeowner's, fire, flood, earthquake, landslide, and other 237
available coverage. Buyer acknowledges that local ordinances may restrict short term rentals of the Property. Buyer and 238
Seller acknowledge that home protection plans may be available which may provide additional protection and benefit to 239
Buyer and Seller. Brokers may assist the parties with locating and selecting third-party service providers, such as 240
inspectors or contractors, but Brokers cannot guarantee or be responsible for the services provided by those third 241
parties. The parties shall exercise their own judgment and due diligence regarding third-party service providers. 242

**y.** **Fair Housing.** Seller and Buyer acknowledge that local, state, and federal fair housing laws prohibit discrimination 243
based on sex, marital status, sexual orientation, gender identity, race, creed, color, religion, caste, national origin, 244
citizenship or immigration status, families with children status, familial status, honorably discharged veteran or military 245
status, the presence of any sensory, mental, or physical disability, or the use of a support or service animal by a person 246
with a disability. 247

| _RJ_ 04/21/2025 | _CR_ 04/21/2025 | | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

# Best Choice
R E A L T Y

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Form 22D
Optional Clauses Addendum
Rev. 3/21
Page 1 of 2

### OPTIONAL CLAUSES ADDENDUM TO
### PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __April 09, 2025__     1

between __Renata Timm__     __Carrole Rugenstein__    ("Buyer")   2
<span style="font-size:smaller">Buyer                 Buyer</span>

and __Melanie Smith__                      ("Seller")   3
<span style="font-size:smaller">Seller                 Seller</span>

concerning __3057   42nd Avenue W__     __Seattle__    __WA__   __98199__   (the "Property").   4
<span style="font-size:smaller">Address               City         State    Zip</span>

**CHECK IF INCLUDED:**    5

1. ☑   **Square Footage/Lot Size/Encroachments.** The Listing Broker and Buyer Broker make no representations   6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of   7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on   8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and   9
encroachments to Buyer's own satisfaction.   10

2.   **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA   11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting   12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy:   13

    ☐   **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to   14
    apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's   15
    additional protection and inflation protection endorsements, if available at no additional cost, rather than   16
    the Homeowner's Policy of Title Insurance.   17

    ☐   **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for   18
    an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's   19
    Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage   20
    Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and   21
    the cost of any survey required by the title insurer.   22

3. ☐   **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish   23
from the Property prior to Buyer taking possession.   24

4. ☐   **Personal Property.** Unless otherwise agreed, Seller shall remove all personal property from the Property   25
not later than the Possession Date. Any personal property remaining on the Property thereafter shall become   26
the property of Buyer, and may be retained or disposed of as Buyer determines.   27

5. ☑   **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to:   28
☑ public water main; ☑ public sewer main; ☐ septic tank; ☐ well (specify type) _____ ;   29
☐ irrigation water (specify provider) _____ ; ☐ natural gas; ☐ telephone; ☑ electricity;   30
☐ cable (specify provider) _____; ☐ internet (specify provider) _____ ;   31
☑ other __oil tank__ .   32

6. ☐   **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require   33
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish   34
Buyer the information below in writing as soon as available:   35

WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____   36

CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____   37

OTHER INSULATION DATA: _____   38

| *RT* 04/21/2025 | *CR* 04/21/2025 | | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**OPTIONAL CLAUSES ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*Continued*

7. ☐ **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following 39
items of personal property that are included with the sale: ☐ propane tank; ☐ security system; ☐ satellite 40
dish and operating equipment; ☐ other _____ . 41

Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled 42
in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within 43
_____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever 44
is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer 45
shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further 46
obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely 47
notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 48

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 49
other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if 50
available from the Association) within _____ days (10 days if not filled in) of mutual acceptance: 51

    a.  Association rules and regulations, including, but not limited to architectural guidelines; 52
    b.  Association bylaws and covenants, conditions, and restrictions (CC&Rs); 53
    c.  Association meeting minutes from the prior two (2) years; 54
    d.  Association Board of Directors meeting minutes from the prior six (6) months; and 55
    e.  Association financial statements from the prior two (2) years and current operating budget. 56

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not 57
filled in) of receipt of the above documents or the date that the above documents are due, whichever is 58
earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If 59
Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be 60
refunded to Buyer. 61

9. ☐ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association 62
or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for 63
in the association documents. If the association documents do not provide which party pays the fee, the fee 64
shall be paid by ☐ Buyer; ☐ Seller (Seller if not filled in). 65

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 66
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 67
removal of the Excluded Item(s). Excluded Item(s): 68

  69
  70

11. ☑ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide 71
additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows: 72

    a.  Home warranty provider: _____ 73

    b.  Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together 74
       with any included options, and Buyer shall pay any balance. 75

    c.  Options to be included: _____ 76
       _____ (none, if not filled in). 77

    d.  Other: <u>Buyer Agent to provide 1 year home warranty at no additional cost to buyer or seller</u> . 78

  79

12. ☑ **Other.** 
    - **Subject to court approval.** 80
    - **Seller is a licensed real estate broker in the state of washington.** 81
  82
  83
  84
  85

| _RJ_ 04/21/2025 | _CR_ 04/21/2025 | | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

# Best Choice
### R E A L T Y

Form 22E
FIRPTA Certification
Rev. 7/19
Page 1 of 1

## FIRPTA CERTIFICATION

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The Foreign Investment in Real Property Tax Act ("FIRPTA"), 26 U.S.C. 1445, provides that a buyer of a U.S. real property interest must withhold tax if Seller is a foreign person, unless one of the exceptions in the Act applies. The following will inform Buyer and Closing Agent whether tax withholding is required. 1 2 3

Note: The above law applies to foreign corporations, partnerships, trusts, estates and other foreign entities, as well as to foreign individuals. If Seller is a corporation, partnership, trust, estate or other entity, the terms "I" and "my" as used below means the corporation or other entity. A "real property interest" includes full or part ownership of land and/or improvements thereon; leaseholds; options to acquire any of the foregoing; and an interest in foreign corporations, partnerships, trusts or other entities holding U.S. real estate. 4 5 6 7 8

---

**SELLER CERTIFICATION.** Seller hereby certifies the following: 9

**PROPERTY.** I am the Seller of real property ☑ at: 10

| 3057 | 42nd Avenue W | Seattle | WA | 98199 | 11 |
| Address | | City | State | Zip | |

or ☐ (if no street address) legally described on the attached. 12

**CITIZENSHIP STATUS.** I ☐ AM ☐ AM NOT a non-resident alien (or a foreign corporation, foreign partnership, foreign trust, foreign estate or other foreign business entity) for purposes of U.S. income taxation. 13 14

**TAXPAYER I.D. NUMBER.** 15
My U.S. taxpayer identification number (e.g. social security number) is _____ . 16
(Tax I.D. number to be provided by Seller at Closing)

**ADDRESS.** 17
My home address is_____ 18
Address                    City                    State    Zip

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief it is true, correct and complete. I understand that this Certification may be disclosed to the Internal Revenue Service ("IRS") and that any false statement I have made here could be punished by fine, imprisonment, or both. 19 20 21

_____        _____ 22
Seller                          Date        Seller                          Date

---

**BUYER CERTIFICATION** (Only applicable if Seller is a non-resident alien). 23

If Seller is a non-resident alien, and has not obtained a release from the IRS, then Closing Agent must withhold 15% of the amount realized from the sale and pay it to the IRS, unless Buyer certifies that the selected statement below is correct: 24 25 26

☐ **Amount Realized ($300,000 or less) and Family Residence = No Tax.** (a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other consideration to Seller, does not exceed $300,000; and (b) I certify that I or a member of my family* have definite plans to reside on the property for at least 50% of the time that the property is used by any person during each of the first two twelve month periods following the date of this sale. If Buyer certifies these statements, there is no tax. 27 28 29 30 31

☐ **Amount Realized (more than $300,000, but not exceeding $1,000,000) and Family Residence = 10% Tax.** (a) I certify that the total price that I am to pay for the property, including liabilities assumed and all other consideration to Seller, exceeds $300,000, but does not exceed $1,000,000; and (b) I certify that I or a member of my family* have definite plans to reside on the property for at least 50% of the time that the property is used by any person during each of the first two twelve month periods following the date of this sale. If Buyer certifies these statements, then Closing Agent must withhold 10% of the amount realized from the sale and pay it to the IRS. 32 33 34 35 36 37 38

* (Defined in 11 U.S.C. 267(c)(4). It includes brothers, sisters, spouse, ancestors and lineal descendants). 39

Under penalties of perjury, I declare that I have examined this Certification and to the best of my knowledge and belief both statements are true, correct and complete. I understand that this Certification may be disclosed to the IRS and that any false statement I have made here could be punished by fine, imprisonment, or both. 40 41 42

_____        _____ 43
Buyer                          Date        Buyer                          Date

Auth∋ntisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

**Best Choice**
R E A L T Y

**DISCLOSURE OF INFORMATION ON
LEAD-BASED PAINT AND
LEAD-BASED PAINT HAZARDS**

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated **April 09, 2025** _____ 1

between _____ Renata Timm _____ Carrole Rugenstein _____ ("Buyer") 2
           Buyer                            Buyer

and _____ Melanie Smith _____ ("Seller") 3
           Seller                            Seller

concerning **3057**   **42nd Avenue W** _____ **Seattle** _____ **WA  98199** ____ (the "Property"). 4
           Address                            City            State   Zip

### Lead Warning Statement

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is 6
notified that such property may present exposure to lead from lead-based paint that may place young children at 7
risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, 8
including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead 9
poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is 10
required to provide the buyer with any information on lead-based paint hazards from risk assessments or 11
inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk 12
assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. 13

**NOTE:** In the event of pre-closing possession of more than 100 days by Buyer, the term Buyer also means Tenant. 14
  15

### Seller's Disclosure 16

(a) Presence of lead-based paint and/or lead-based paint hazards (check one below): 17

    ❑ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). 18
  19
  20

    ❑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. 21

(b) Records and reports available to the Seller (check one below): 22

    ❑ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint and/or lead- 23
    based paint hazards in the housing (list documents below). 24
  25
  26

    ❑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing. 27

Seller has reviewed the information above and certifies, to the best of Seller's knowledge, that the statements made 28
and information provided by Seller are true and accurate. 29

  30

_____    _____    _____    _____
Seller                     Date               Seller                    Date

_RJ_ 04/21/2025      _CR_ 04/21/2025      _____     _____
Buyer Initials    Date        Buyer Initials    Date        Seller Initials    Date       Seller Initials    Date

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

**DISCLOSURE OF INFORMATION ON
LEAD-BASED PAINT AND
LEAD-BASED PAINT HAZARDS**
*Continued*

©Copyright 2023
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**Buyer's Acknowledgment**                                                                     31

  (c) Buyer has received the above Seller's Disclosure and all documents (if any).     32

  (d) Buyer has received the pamphlet *Protect Your Family from Lead in Your Home.*     33

  (e) Buyer has (check one below):                                                      34

    ☒ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint     35
and/or lead-based paint hazards.     36

    ☐ Accepted an opportunity to conduct a risk assessment or inspection for the presence of lead-based paint     37
and/or lead-based paint hazards on the following terms and conditions:     38

This Agreement is conditioned upon a risk assessment or inspection of the Property for the presence of lead-     39
based paint and/or lead-based paint hazards, to be performed by a risk assessor or inspector at Buyer's     40
expense. (Intact lead-based paint that is in good condition is not necessarily a hazard).     41

This contingency shall conclusively be deemed satisfied (waived) unless Buyer gives written notice of     42
disapproval of the risk assessment or inspection to Seller within _____ (10 days if not filled in) after     43
receiving this Disclosure. Buyer's notice must identify the specific existing deficiencies and corrections     44
needed and must include a copy of the inspection and/or risk assessment report.     45

Seller may, at Seller's option, within _____ days (3 days if not filled in) after Seller's receipt of Buyer's     46
disapproval notice, give written notice that Seller will correct the conditions identified by Buyer. If Seller     47
agrees to correct the conditions identified by Buyer, then it shall be accomplished at Seller's expense prior     48
to the Closing Date, and Seller shall provide Buyer with certification from a risk assessor or inspector     49
demonstrating that the condition(s) has been remedied prior to the Closing Date. In lieu of correction, the     50
parties may agree on any other remedy for the disapproved condition(s), including but not limited to     51
adjustments to the Purchase Price. If an agreement on non-repair remedies is secured in writing before the     52
expiration of the time period set forth in this subparagraph, then this contingency shall be deemed satisfied.     53

If Seller does not give notice that Seller will correct the conditions identified in Buyer's risk assessment or     54
inspection, or if the parties cannot reach an agreement on alternative remedies, then Buyer may elect to give     55
notice of termination of this Agreement within _____ days (3 days if not filled in) after expiration of the     56
time limit or delivery of Seller's notice pursuant to the preceding paragraph, whichever occurs first. The     57
Earnest Money shall then be returned to Buyer and the parties shall have no further obligations to each other.     58
Buyer's failure to give a written notice of termination means that Buyer will be required to purchase the     59
Property without Seller having corrected the conditions identified in Buyer's risk assessment or inspection     60
and without any alternative remedy for those conditions.     61

Buyer has reviewed the information above and certifies, to the best of Buyer's knowledge, that the statements made     62
by Buyer are true and accurate.     63

*Renata Timm*    04/21/2025          *Carrole Rugenstein*    04/21/2025
Buyer            Date          Buyer            Date     64

**Brokers' Acknowledgment**     65

Brokers have informed Seller of Seller's obligations under 42 U.S.C. 4852(d) and are aware of their responsibility     66
to ensure compliance.     67

*Sarah Abader*    04/18/2025
Buyer Broker         Date          Listing Broker         Date     68

*RT* 04/21/2025    *CR* 04/21/2025
Buyer Initials  Date    Buyer Initials  Date    Seller Initials  Date    Seller Initials  Date

Authentisign ID: 5BF58565-AD1C-F011-8B3D-00224822F75A

Form 22K
Identification of Utilities Addendum
Rev. 3/21
Page 1 of 1

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## IDENTIFICATION OF UTILITIES
## ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated   **April 09, 2025**                          1

between **Renata Timm**                          **Carrole Rugenstein**                          ("Buyer")   2
       Buyer                           Buyer

and **Melanie Smith**                                                              ("Seller")   3
    Seller                     Seller

concerning **3057    42nd Avenue W**       **Seattle**       **WA  98199**   (the "Property").   4
            Address                        City           State  Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds   5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities   6
providing service to the Property and having lien rights are as follows:   7

WATER DISTRICT:   8

| Name | e-mail or website (optional) |   9
| Address | |  10
| City, State, Zip | Fax. No. (optional) |  11

SEWER DISTRICT:

| Name | e-mail or website (optional) |  12
| Address | |  13
| City, State, Zip | Fax. No. (optional) |  14

IRRIGATION DISTRICT:

| Name | e-mail or website (optional) |  15
| Address | |  16
| City, State, Zip | Fax. No. (optional) |  17

GARBAGE:

| Name | e-mail or website (optional) |  18
| Address | |  19
| City, State, Zip | Fax. No. (optional) |  20

ELECTRICITY:

| Name | e-mail or website (optional) |  21
| Address | |  22
| City, State, Zip | Fax. No. (optional) |  23

GAS:

| Name | e-mail or website (optional) |  24
| Address | |  25
| City, State, Zip | Fax. No. (optional) |  26

SPECIAL DISTRICT(S):
(local improvement districts or
utility local improvement districts)

| Name | e-mail or website (optional) |  27
| Address | |  28
| City, State, Zip | Fax. No. (optional) |

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1)   29
within _____**5**_____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing   30
Broker or Buyer Broker with the names and addresses of all utility providers having lien rights affecting the Property   31
and (2) Buyer and Seller authorize Listing Broker or Buyer Broker to insert into this Addendum the names and   32
addresses of the utility providers identified by Seller.   33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges   34
(including unbilled charges). Buyer understands that the Listing Broker and Buyer Broker are not responsible for, or   35
to insure payment of, Seller's utility charges.   36

| _RJ_  04/21/2025 | _CR_  04/21/2025 | | |
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

## EXHIBIT "A"

### Legal Description

LOTS 1 AND 2, BLOCK 4, HIAWATHA PARK SECOND ADDITION TO THE CITY OF SEATTLE, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 5 OF PLATS, PAGE 21, IN KING COUNTY, WASHINGTON.

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

*Renata Timm*    04/21/25         *Carrole Rugenstein*    04/21/25